Nathan J. Hochman, SBN 139137
Brianna Leigh Abrams, SBN 239474
MORGAN, LEWIS & BOCKIUS LLP
The Water Garden
Suite 2050 North
1601 Cloverfield Boulevard
Santa Monica, CA  90404-4082
Tel:   +1.310.255.9025
Fax:   +1.310.907.2025
e-mail:  nathan.hochman@morganlewis.com
e-mail: brianna.abrams@morganlewis.com

Attorneys for Defendant
LEROY BACA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 16-66(A) - PA |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION OF DEFENDANT LEROY BACA TO RECUSE BRANDON FOX FROM SERVING AS A PROSECUTOR AND A WITNESS AT TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS** |
| LEROY BACA, | |
| Defendant. | |
| | Hearing date: October 31, 2016<br>Time: 3:00 P.M.<br>Courtroom:  15 |

To the Clerk of the Court, and all parties and their counsel of record,

PLEASE TAKE NOTICE THAT on October 31, 2016 at 3:00 p.m. or as soon

thereafter as counsel may be heard, in Courtroom 15 of the United States District

Court at 312 North Spring Street, Los Angeles, California, Defendant LEROY

BACA, by and through his counsel of record, will and hereby does move the Court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

to recuse the Government's lead prosecutor, Brandon Fox, from serving as both a prosecutor and a witness at Mr. Baca's upcoming trial set for December 6, 2016. Mr. Baca intends to exercise his rights under the Sixth Amendment to call Mr. Fox as a necessary witness in his defense of the false statement violations charged in Count 3 of the First Superseding Indictment.  All the alleged false statements pertain to answers Mr. Baca gave in response to questions asked of him by Mr. Fox in an April 12, 2013 interview.  Mr. Fox was the primary person on behalf of the Government who negotiated with Mr. Baca's attorneys the ground rules of that interview; he signed the non-target letter and negotiated its terms; he decided not to have the interview videotaped, only audiotaped; he asked the majority of the questions during the interview; he provided Mr. Baca with the admonishments during the interview but failed to inform Mr. Baca of the consequences of providing false statements during the unsworn interview; and he was in the best position as the question-asker to evaluate Mr. Baca's physical demeanor during the audiotaped interview, including physical manifestations of Mr. Baca's being confused, distracted, lucid, tired, or alert.

///

///

///

///

///

1

This motion is based on the files and records of the case, the attached Memorandum

2

3

of Points and Authorities, Declaration of Nathan J. Hochman and exhibits, and any

4

such argument as the Court may hear on the motion.

5

Respectfully submitted,

6

7

Dated:          September 26, 2016          MORGAN, LEWIS & BOCKIUS LLP

8

9

By//s// Nathan J. Hochman

10

Nathan J. Hochman
Brianna L. Abrams
Attorneys for Defendant Baca

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

CR 16-66(A) - PA

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  BACKGROUND ....................................................................................... 2

    A.   Procedural Background ................................................................... 2

    B.   Mr. Fox's Involvement With The Investigation Of Mr. Baca And Establishment Of The Ground Rules For The April 12, 2013 Interview ................................................................................... 3

    C.   Mr. Fox's Knowledge Of The Conflict Of Interest Presented By Mr. Baca's Representation By The Jones Day Law Firm ................... 4

    D.   Mr. Fox's Unique Role During Mr. Baca's April 12, 2013 Interview ......................................................................................... 6

III. ARGUMENT .......................................................................................... 8

    A.   Mr. Fox Is A Necessary Witness Regarding The Procedures He Followed Prior To The Baca Interview ............................................ 12

    B.   Mr. Fox Is A Necessary Witness Regarding His Conduct During The Baca Interview ....................................................................... 13

IV.  CONCLUSION ...................................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

i

CR 16-66(A) - PA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Delaware v. Fensterer,*
    474 U.S. 15 (1985) ...................................................................... 9

*Howard v. Walker,*
    406 F.3d 114 (2d Cir. 2005) ........................................................ 8

*Lockhart v. Terhue,*
    250 F.3d 1223 (9th Cir. 2001) ..................................................... 5

*Maryland v. Craig,*
    497 U.S. 836 (1990) ..................................................................... 9

*United States v. Frega,*
    179 F.3d 793 (9th Cir. 1999) ...................................................... 10

*United States v. Lorenzo,*
    995 F.2d 1448 (9th Cir. 1993) .................................................... 11

*United States v. Nixon,*
    418 U.S. 683 (1974) ..................................................................... 8

*United States v. Prantil,*
    764 F.2d 548 (9th Cir. 1985) ............................................... 2, 9, 10

*United States v. Wheat,*
    813 F.2d 1399 (9th Cir. 1987) ..................................................... 5

STATUTES

18 U.S.C. § 1001(a)(2) .................................................................. 2

Mr. Baca's Representation By The Jones Day Law ........................ 4

Overt Act 11 ................................................................................... 4

OTHER AUTHORITIES

Sixth Amendment ................................................................... passim

MORGAN, LEWIS &
    BOCKIUS LLP
  ATTORNEYS AT LAW
    SANTA MONICA

DB2/ 30658444.5

ii

CR 16-66(A) - PA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 12, 2013, the Government conducted an interview with Mr. Baca to elicit his memory of events that occurred **20 months before** in August and September 2011 involving the FBI's undercover investigation in the Men's Central Jail ("MCJ").  Assistant United States Attorney Brandon Fox, the lead prosecutor in this case,  negotiated the terms for that interview (e.g., location, time, topics, non-target letter) with Mr. Baca's counsel.  While the interview was ostensibly labelled an FBI interview of Mr. Baca, Mr. Fox asked the majority of the qeustions during the over 4.5-hour interview that covered more than 200 pages of transcript.  Mr. Fox elected not to have the interview videotaped, but to have it only audiotaped. Mr. Fox decided not to have Mr. Baca sworn in as witness and testify under penalty of perjury during the interview, which was in lieu of Mr. Baca's appearing before the grand jury.  Mr. Fox chose to only offer Mr. Baca a non-target letter stating that Mr. Baca was not a target of the Government's investigation, instead of a proffer or immunity letter.  Mr. Fox opted to not obtain a waiver of conflict of inteest on the record from Mr. Baca or his counsel despite knowing that Mr. Baca's lawyers had represented other Los Angeles Sherrif's Department ("LASD") members whose interests directly conflicted with Mr. Baca's.  And Mr. Fox elected not to admonish Mr. Baca, as he had done with other LASD members he had interviewed, that making any false statements during the unsworn interview could constitute federal crimes.

As the primary questioner, Mr. Fox was in a unique position to observe Mr. Baca's physical reactions and demeanor to his questions: whether Mr. Baca appeared confused, lucid, or tired; whether his eyes, shoulders or head drooped; whether he was making direct eye contact or looking away; whether he was sitting straight up, or fidgeting; whether he had his arms crossed in front of him or had his hands calmly on the table, or gesticulated with his hands to make points.  The

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

1

CR 16-66(A) - PA

1   uniqueness of Mr. Fox's position as the questioner was especially pronounced as

2   Mr. Fox observed numerous times that Mr. Baca was not answering his questions;

3   the physical aspects of Mr. Baca (which a videotape would have revealed had it

4   been used) in such instances are crucial to understanding if the symptoms from Mr.

5   Baca's Alzheimer's disease, particularly those involving impairment of memory,

6   were influencing his answers.

7         Since Mr. Baca is entitled under the Sixth Amendment to present and

8   confront the witnesses he deems most salient to present this key evidence relating to

9   the April 12, 2013 interview, since this interview contains all five false statements

10  alleged in Count 3, and since Mr. Fox is a necessary, unique, and important witness

11  for the jury to understand the context behind and circumstances of the interview and

12  false statements, the Court must allow Mr. Baca his constitutional right to call Mr.

13  Fox as a witness at trial.

14        If Mr. Baca is permitted to call Mr. Fox as a witness, then under the law of

15  the Ninth Circuit, Mr. Fox cannot be both a witness and a prosecutor in the same

16  trial.  Thus, the Court must disqualify Mr. Fox from trying the case on behalf of the

17  Government.  *See United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985).

18        Counsel for Mr. Baca has raised these issues with the Government

19  concerning the defense's intent to call Mr. Fox as a necessary witness and requested

20  that Mr. Fox recuse himself from the prosecution trial team.  The Government

21  refused this request, thus necessitating the current motion.

22  **II.    BACKGROUND**

23        **A.    Procedural Background**

24        On February 10, 2016, Mr. Baca was charged in a single-count Information

25  with making  a false statement in violation of 18 U.S.C. § 1001(a)(2). *See* ECF No.

26  1. This Information charged Mr. Baca with making three false statements to the FBI

27  and U.S. Attorney's Office during an April 12, 2013 interview.  On that same day,

28  Mr. Baca entered a plea of guilty pursuant to a binding plea agreement to the

1  Information, admitting to having made one of the three false statements charged.
2  *See* ECF No. 5.

3       On July 18, 2016, at the scheduled sentencing hearing, the Court declined to
4  accept Mr. Baca's binding guilty plea agreement, and continued the sentencing to
5  August 1, 2016. *See* ECF No. 62. At the rescheduled sentencing hearing on August
6  1. 2016, Mr. Baca withdrew his guilty plea, and trial was set. *See* ECF No. 68. The
7  Government filed a First Superseding Indictment on August 5, 2016 that now
8  alleged five false statements that Mr. Baca allegedly made during the April 12,
9  2013 interview. *See* ECF No. 70. Mr. Baca entered a plea of not guilty on August
10  12, 2016. *See* ECF No. 81.

**B.  Mr. Fox's Involvement With The Investigation Of Mr. Baca And Establishment Of The Ground Rules For The April 12, 2013 Interview**

13       Mr. Fox has been the lead prosecutor assigned to the Baca investigation from
14  the outset. *See, e.g.*, Declaration of Nathan Hochman ("Hochman Decl.") at ¶ 3. He
15  served as the main point of contact for communications with Mr. Baca's counsel at
16  the Jones Day law firm (Beong Kim and Brian Hershman). Prior to the April 12,
17  2013 interview, Jones Day had also been counsel for various LASD members and
18  officials including Captain Tom Carey. *See id.* at ¶ 4. Leading up to the April 12,
19  2013 interview, Mr. Fox led negotiations to establish all ground rules for the
20  conduct of Mr. Baca's interview. *Id.* at ¶ 5. Those ground rules established the
21  time limit for the interview, the location, and the attendees, as well as the topics to
22  be covered. *Id.* at ¶ 6. Mr. Fox also established the terms and conditions under
23  which the interview would be conducted, including that Mr. Baca would receive a
24  non-target letter stating that Mr. Baca was not then a target of the investigation, (*see
25  id.* at ¶ 7), that Mr. Baca would not receive a proffer or immunity letter, that the
26  interview would be in lieu of Mr. Baca's having to appear before the grand jury as a
27  sworn witness, that the interview would be unsworn and not subject to the penalty
28  of perjury, and that the interview would be audiotaped, not videotaped.

### C.   Mr. Fox's Knowledge Of The Conflict Of Interest Presented By Mr. Baca's Representation By The Jones Day Law Firm

Mr. Fox knew, or may be presumed to know, the implications of the inherent conflict of interest for the Jones Day law firm in their representation of Mr. Baca during the April 12, 2013 interview.  The same Jones Day attorneys who represented Mr. Baca during the April 12, 2013 interview also represented other individual members of the LASD, including LASD Captain Tom Carey.  *See id*. at ¶ 4.  In particular, Jones Day attorney Beong Kim represented Mr. Carey during his December 28, 2012 interview – **more than four months before** Mr. Baca's April 12, 2013 interview – during which Mr. Carey made certain statements that directly implicated Mr. Baca in the obstruction of the FBI's investigation.[1]  *Id*.  Notably, Mr. Carey made these statements after he was provided a proffer letter from the Government giving him certain immunity from prosecution for any statements he made during the course of the interview, a letter Mr. Baca never received.

Mr. Fox was present for Mr. Carey's interview, and thus was aware of: (1) Mr. Carey's statements against Mr. Baca's interests (e.g., Mr. Carey was directly

---

[1] In that December 28, 2012 Carey interview, Mr. Carey stated: "BACA held a meeting with TANAKA, CAREY, and LEAVINS.  Sergeant [MARCIELA] LONG (LONG) and CRAIG may have also been there.  BACA said he tried to obtain information from the FBI with no avail.  BACA instructed ICIB to try and interview MARX and said, "Just don't put handcuffs on her."  That statement, provided more than 4 months before the April 12, 2013 Baca interview, forms the basis for Overt Act 11 of the Count 1 conspiracy charge against Mr. Baca ("On or about September 22, 2011, defendant BACA and co-conspirators Tanaka, Carey and Leavins met to discuss approaching Special Agent LM outside of her residence.") and the fourth false statement allegation in Count 3 ("Defendant BACA falsely stated that he was not aware until he received a phone call from Assistant Director in Charge of the FBI in Los Angeles on September 26, 2011, that LASD officials were going to approach Special Agent LM to try to talk to her, to threaten to charge her, or to threaten to arrest her.  In fact, as defendant BACA knew at the time he made the statement, he had been aware that LASD officials were going to approach FBI Special Agent LM before they did so.").

implicating Mr. Baca in the crime of obstruction of justice); and (2) that Mr. Carey was represented by Mr. Kim, the same Jones Day attorney who represented Mr. Baca during his April 12, 2013 interview.  Despite Mr. Fox's knowledge of these facts, he allowed Mr. Baca's interview to proceed without obtaining a waiver of conflict of interest from Mr. Baca to have the Jones Day lawyers represent him as well as Mr. Carey and other LASD members or an acknowledgement by the Jones Day lawyers that there was not, in fact, a conflict.  Such a failure to elicit a conflict waiver in a situation where one law firm represents at least two parties with potentially or actually diametrically opposite interests flies in the face of the routine practice of the U.S. Attorney's Office in this district in how it deals with similar conflicts of interest during an investigation.[2]  *See* Hochman Decl. at ¶ 8.

---

[2] For instance, counsel for Mr. Baca is aware that the U.S. Attorney's Office for the Central District of California regularly sends defense counsel a letter with the following language when potential conflicts of interest – like the ones at issue with Mr. Baca and the Jones Day law firm – arise:
 "We [the U.S. Attorney's Office for the Central District of California] are concerned that the above facts pose a potential conflict of interest in your law firm's representation of [client] in this criminal matter going forward.  We are also cognizant of the government's obligation to avoid any interference with [client's] right to the counsel of his choice under the Sixth Amendment.  We note, however, that the Sixth Amendment right to counsel of one's choice can be limited by conflicts of interest.  *See, e.g., United States v. Wheat*, 813 F.2d 1399, 1402 (9th Cir. 1987) ("[T]he Sixth Amendment also guarantees each criminal defendant the right to assistance of counsel unhindered by a conflict of interest.").  For these reasons, we first raise with you our concerns regarding potential conflicts of interest and request that you provide us with information sufficient to demonstrate either that there are no conflicts of interest or that [client] has been fully advised regarding potential conflicts of interest and has, after consultation with independent counsel, knowingly and intelligently waived his right to conflict-free counsel.  *Lockhart v. Terhue*, 250 F.3d 1223, 1229 (9th Cir. 2001)."  *See* Hochman Decl. at ¶ 8.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

5

CR 16-66(A) - PA

**D.    Mr. Fox's Unique Role During Mr. Baca's April 12, 2013 Interview**

On April 12, 2013, Mr. Baca, who was 70 years old at the time, was interviewed by Mr. Fox, the Government's lead prosecutor at trial in this case, at the Jones Day office for more than 4.5-hours from 1:57 pm to 6:43 pm.  *See* Hochman Decl. at ¶ 9. In attendance at that interview were Mr. Fox along with two other prosecutors (Liz Rhodes and Margaret Carter), two FBI agents (Jason Dalton and David Dahle), and Mr. Baca's Jones Day attorneys (Beong Kim and Brian Hershman). While the interview was ostensibly captioned "INTERVIEW OF LEROY BACA conducted by Special Agent Jason Dalton," Mr. Fox, in fact, asked the majority of the questions, not Agent Dalton.

During the interview, Mr. Fox played a unique role in several major respects. First, Mr. Fox decided to only audiotape the interview rather than videotape it. This is a very important decision since, as explained below, an audiotape does not provide a visual record of Mr. Baca and his physical condition and demeanor during the questions and answers that occurred over the four-and-one-half hour interview.  Had Mr. Fox elected to videotape the interview, the necessity of his testimony on this point would be less important since the videotape would be able to show whether Mr. Baca showed signs of tiredness, confusion, or lucidity; wheth he looked straight ahead, sideways, or away; whether he gesticulated with his hands or used his hands to support his head; whether his head, shoulders or eyes were drooping or alert; and whether he was fidgeting, calm, or aggressive.

Second, Mr. Fox is uniquely situated to testify as to why he failed at the beginning of the interview, in contrast to other interviews he conducted in the investigation, to admonish Mr. Baca that although he was not under oath, he could be prosecuted for any false statement made to the FBI and U.S. Attorney's Office. For example, when Mr. Fox interviewed Alexander Yim on December 7, 2012 in a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

6

CR 16-66(A) - PA

1    recorded interview, Mr. Fox admonished him that the same rules that applied in the

2    grand jury setting applied to the interview; that if he wasn't truthful, it could be

3    viewed as obstruction of justice; and that if he wasn't truthful, it could also be

4    viewed as possible Section 1001 false statements to the Federal Government. *See*

5    Hochman Decl. at ¶ 10.  In comparison, Mr. Fox only told Mr. Baca at the outset of

6    his interview that he was not a target at that point as stated in the non-target letter

7    Mr. Fox signed and provided to Mr. Baca's attorney immediately prior to the

8    interview, that that did not mean his status forever was going to be a non-target; and

9    that as an example, if he were to tell Mr. Fox that he "killed JFK," that that could

10   change his status as a target.  *See* Hochman Decl. at ¶ 9.  At no point during the

11   entire interview did Mr. Fox provide Mr. Baca with the Section 1001 false

12   statement or obstruction of justice admonishments.

13          Third, since part of Mr. Baca's defense to Count 3 will rely on the

14   impairment of his memory as a result of his Alzheimer's disease to remember in

15   April 2013 what occurred twenty months before in August and September 2011, the

16   visual aspects of Mr. Baca's interview are paramount as well as the words used.  As

17   stated above, based on Mr. Fox's decision not to videotape the interview and his

18   role as the primary questioner, Mr. Fox was in a unique position to observe Mr.

19   Baca's physical actions and reactions to Mr. Fox's questions, as well as Mr. Baca's

20   demeanor.  Such physical actions, reactions and demeanor that Mr. Fox was

21   uniquely positioned to observe include but are not limited to whether Mr. Baca's

22   face or body showed signs of confusion, lucidity, or tiredness at different points in

23   the interview, particularly during the series of questions that Mr. Fox asked that

24   form the five false statement violations. Mr. Fox, who was staring directly at Mr.

25   Baca as the primary questioner, can testify if Mr. Baca was looking him in the eye

26   when he answered particular questions or looking away, sideways, up or down;

27   whether Mr. Baca's shoulders, face, or body slumped at particular times or Mr.

28   Baca stayed alert and sat ramrod throughout the interview; whether Mr. Baca's

1    hands or body demonstrated a confrontational or aggressive stance or a more calm,

2    cooperative demeanor.  During Mr. Fox's questioning of Mr. Baca, numerous times

3    Mr. Baca's answers were meandering, nonresponsive and unfocused.  Mr. Fox's

4    observations of Mr. Baca's physical manifestations during the questioning are very

5    important to establish Mr. Baca's difficulty with remembering events that occurred

6    more than twenty months before as the interview went on for hour after hour after

7    hour.

8    **III.    ARGUMENT**

9         Mr. Baca respectfully requests that the Court recuse Mr. Fox from

10   prosecuting the case at trial because Mr. Fox is a necessary witness that Mr. Baca

11   intends to call as part of his defense to the false statements charged in Count 3.  In

12   order for Mr. Baca to present a defense of his choosing to the Government's

13   charges, Mr. Baca must be afforded the opportunity to call Mr. Fox as a necessary

14   witness and examine him before the jury regarding his substantial and unique

15   involvement in the circumstances giving rise to the alleged five false statements

16   from the April 12, 2013 interview.

17        More than forty years ago, the Supreme Court addressed the importance of

18   ensuring that a defendant has the ability to exercise his Sixth Amendment rights to

19   call and confront witnesses at his criminal trial:

20            The need to develop all relevant facts in the adversary
21            system is both fundamental and comprehensive. The ends
              of criminal justice would be defeated if judgments were to
22            be founded on a partial or speculative presentation of the
              facts. The very integrity of the judicial system and public
23            confidence in the system depend on full disclosure of all
              the facts, within the framework of the rules of evidence.
24            To ensure that justice is done, it is imperative to the
25            function of courts that compulsory process be available
              for the production of evidence needed either by the
26            prosecution or by the defense.
27

28   *United States v. Nixon*, 418 U.S. 683, 709 (1974).

Cross-examination is the "greatest legal engine ever invented for the discovery of truth." *Howard v. Walker*, 406 F.3d 114, 128 (2d Cir. 2005) (quoting *California v. Green*, 399 U.S. 149, 158 (1970)).  What the "crucible" of cross-examination requires is "rigorous testing . . . a clashing of forces or ideas, thus carrying with it the notion of adversariness." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The defendant must be allowed to thoroughly "test 'the recollection and sift' the conscience of the witnesses" against him. *Id.* (quoting *Mattox v. United States*, 156 U.S. 237, 242-43 (1895)); *see also Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) ("The Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.").  Allowing Mr. Fox to remain involved with the prosecution of this case – indeed, as the lead prosecutor of this case – would unfairly violate Mr. Baca's Sixth Amendment  rights because Mr. Baca will be prevented from calling and examining Mr. Fox regarding his significant and unique involvement with the circumstances prior to and during the April 12, 2013 interview.

If the Court permits Mr. Fox to be called as a defense witness, then the advocate-witness rule mandates Mr. Fox's recusal from the prosecution trial team. That rule prohibits an attorney "from appearing as both a witness and an advocate in the same litigation." *Prantil*, 764 F.2d at 552-53.  The rule is necessary to ensure that juries "ground their decisions on the facts of a case and not on the integrity or credibility of the advocates." *Id.* The advocate-witness rule "expresses an institutional concern, especially pronounced when the Government is a litigant, that public confidence in our criminal justice system not be eroded by even the appearance of impropriety." *Id.* at 553 (citing Model Code of Professional Responsibility EC 5-9, 5-10).  Barring testimony by the participating prosecutor "eliminates the risk that a testifying prosecutor will not be a fully objective witness

given his position as an advocate for the Government." *Id*. (citation omitted). The rule prevents the "prestige and prominence of the prosecutor's office from being attributed to testimony by a testifying prosecutor." *Id*. Moreover, the rule obviates the possibility of jury confusion from the dual role of the prosecutor, particularly during closing argument, "wherein the trier-of-fact is asked to segregate the exhortations of the advocate from the testimonial accounts of the witness." *Id*.

A defendant seeking to recuse a prosecutor and compel his/her testimony must first demonstrate a "compelling need" for the prosecutor's testimony. *Id*. at 551. A defendant also has an "obligation to exhaust other available sources of evidence" before being allowed to call the participating prosecutor as a witness. *Id*. The defendant also has an obligation to show that the prosecutor's testimony would be material. *United States v. Wells*, Crim. No. 94-0191-R, 1994 WL 421471, at *5-6 (S.D. Cal. July 5, 1994). Likewise, the defendant must identify a "defense theory for which the testimony in question is relevant." *Id*. (citation omitted). The Court has "substantial latitude" in deciding whether counsel must be "disqualified" in a criminal case. *United States v. Frega*, 179 F.3d 793, 799 (9th Cir. 1999) (citation omitted).

In *Prantil*, the defendant properly demonstrated a conflict of interest requiring the disqualification of the prosecutor because the prosecutor "was both a witness to and a participant in the factual events at issue," and was "a witness to, and indeed a participant in, some aspect of all of the events alleged in the indictment." *Id*. at 551-52. Moreover, because the only other available witness to the statements made to the prosecutor by the defendant was an FBI agent who heard some, but not all, of the statements at issue, the defendant had demonstrated a "compelling need" to call the prosecutor as a witness. *Id*. The Ninth Circuit thus found that the defendant showed the prosecutor to be a necessary witness at trial, and thus the district court erred in preventing the defendant from calling the

prosecutor to testify and further by refusing to bar the prosecutor from participating in the prosecution.   *Id.* at 554.

Similar circumstances are present here, and Mr. Baca respectfully requests that the Court order the recusal of Mr. Fox because he is a necessary trial witness. *Cf.*, *United States v. Lorenzo*, 995 F.2d 1448, 1452-53 (9th Cir. 1993) (where certain members of a U.S. Attorney's Office testified during a criminal trial, it was not error for the case to be prosecuted by another member of the same office where that prosecutor was not a member of the office at the time of the factual events at issue, and further was "walled off" from the fact witness-attorneys).  Mr. Fox should be recused because he is a necessary witness to testify regarding (1) the procedures Mr. Fox chose to utilize before the interview giving rise to the alleged Count 3 false statements; (2) Mr. Fox's conduct during the course of Mr. Baca's interview; and (3) Mr. Fox's observations of Mr. Baca's demeanor and physical aspects of his responses to questions involving Mr. Baca's memory during the course of the interview, which is necessary due to the failure to videotape the interview.

Mr. Fox had a unique role in the circumstances leading up to the April 12, 2013 interview and those occurring during the interview, and no other witness can provide similar admissible testimony to all the facts upon which Mr. Fox will be examined.  For instance, Mr. Fox exchanged the emails and had the phone calls with Mr. Baca's lawyers setting up the interview; Mr. Fox made the key decisions as the primary questioner during the interview; and Mr. Fox was uniquely situated to view Mr. Baca's demeanor throughout the interview in response to Mr. Fox's questions, particularly those that constitute Count 3's five false statements.  No other prosecutor or FBI agent can be called to provide admissible, nonhearsay testimony concerning all these circumstances underlying the April 12, 2013 interview.

### A.    Mr. Fox Is A Necessary Witness Regarding The Procedures He Followed Prior To The Baca Interview

Mr. Fox should be recused from the prosecution in this case for the independent reason that he is a necessary witness to testify regarding the circumstances leading up to the interview.  The steps taken by Mr. Fox leading up to the interview are worthy of significant probing during the trial.  Only Mr. Fox – the lead prosecutor and negotiator with Mr. Baca's counsel and the person ultimately responsible for putting in place the procedures controlling the interview – is capable of providing admissible testimony regarding these procedures and decisions prior to Mr. Baca's interview.

Specifically, Mr. Baca has the right to question Mr. Fox regarding, among other topics, the following:

- The location of the interview.
- The length of the interview.
- The time of day for the interview.
- The topics to be covered in the interview.
- The decision to conduct an unsworn interview, rather than have Mr. Baca make an appearance in front of a grand jury.
- The decision to have Mr. Fox ask the majority of questions during an FBI interview, including the questions that resulted in the allegedly five false statements at issue in this case.
- The decision to offer Mr. Baca a non-target letter, which Mr. Fox signed on behalf of the Government, and the terms contained therein.
- The decision not to provide Mr. Baca with an offer of full immunity, or limited-use ("Queen for a Day") immunity or a proffer letter in connection with the interview.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

12

CR 16-66(A) - PA

- The decision *not* to allow Mr. Baca to review a transcript of his interview after the interview, check it for accuracy, and address any errors he may have found, similar to how civil deponents are given the opportunity to make changes to their deposition transcripts.

The Sixth Amendment affords Mr. Baca the right to call all witnesses who may have information pertaining to the circumsntance leading up to the April 12, 2013 interview, and particularly those most knowledgeable, like Mr. Fox, about such circumstances.  Even if Mr. Fox's only role had been negotiating the ground rules and terms and conditions underlying the April 12, 2013 interview, that significant role would justify Mr. Baca's calling him as a necessary witness. However, Mr. Fox's role was much more than just that of the pre-interview Government negotiator

### B.    Mr. Fox Is A Necessary Witness Regarding His Conduct During The Baca Interview

In addition to his role as the pre-interview Government negotiator, Mr. Fox is a necessary witness because of his primary role during Mr. Baca's interview.  As discussed above, Mr. Fox played a unique and pivotal role in four areas, to which no other prosecutor or FBI agent could testify.

First,  Mr. Fox's decision to only audiotape the interview rather than videotape it had important ramifications since the audiotape does not provide a visual record of Mr. Baca and his physical condition and demeanor during the questions and answers that occurred over the four-and-one-half hour interview. Since most interviews in the investigation were not even audiotaped, Mr. Fox is in the best position to explain why this particular interview was audiotaped at all and not videotaped.

Second, Mr. Fox is uniquely positioned to testify as to why he failed at the beginning of the interview, in contrast to other interviews he conducted in the investigation, to admonish Mr. Baca that although Mr. Baca was not under oath, he

could be prosecuted for any false statement to the FBI and U.S. Attorney's Office. Mr. Fox's practice was to provide such an admonition (*e.g.*, the December 7, 2012 interview of Alexander Yim that Mr. Fox conducted and in which he provided a full admonition of the consequences of providing a false statement to the Government in an unsworn recorded interview). Why Mr. Fox failed to provide this admonition and only told Mr. Baca that his non-target status could change if he "killed JFK" are questions only Mr. Fox can answer, not any other prosecutor or FBI agent.

Third, only Mr. Fox can explain why he did not inform Mr. Baca about the manifest conflict of interest of his attorneys in representing him and other LASD members who provided statements directly against Mr. Baca's interests (e.g., the Tom Carey December 28, 2012 interview attended by Mr. Carey's Jones Day lawyer and Mr. Fox). The U.S. Attorney's Office for the Central District of California routinely requires a law firm with clients whose interests conflict to state that such conflict does not exist or that the clients have waived the conflict after receiving counsel from an independent attorney. Here, Mr. Fox did not follow that procedure and elected to interview Mr. Baca without advising him of the conflict. Only Mr. Fox, not some other prosecutor or FBI agent, can testify as to why such a decision was made.

Fourth, since part of Mr. Baca's defense to Count 3 will rely on the impairment of his memory as a result of his Alzheimer's disease to remember in April 2013 what occurred twenty months before in August and September 2011, Mr. Fox's role as the primary questioner placed him in a unique position to observe Mr. Baca's physical demeanor in response to Mr. Fox's questions. Such observations include whether Mr. Baca's face or body showed signs of confusion, lucidity, or tiredness at different points in the interview, particularly during the series of questions that Mr. Fox asked that form the five false statement violations. As noted above, Mr. Fox, who was staring directly at Mr. Baca as the primary questioner, is in the best position to testify (better than any other prosecutor or FBI

1   agent) if Mr. Baca was looking him in the eye when he answered particular

2   questions or looking away, sideways, up or down; whether Mr. Baca's shoulders,

3   face, or body slumped at particular times or Mr. Baca stayed alert and sat ramrod

4   throughout the interview; whether Mr. Baca's hands or body demonstrated a

5   confrontational or aggressive stance or a more calm, cooperative demeanor, etc.

6   Mr. Fox was also in the best position to assess Mr. Baca's physical manifestations

7   when Mr. Baca lost focus and offered meandering and nonresponsive answers that

8   caused Mr. Fox to ask follow-up questions for clarification.

9          While others present at the interview may be able to offer snippets of

10   observations of Mr. Baca's demeanor, only Mr. Fox will be able to offer the

11   complete picture of the circumstances leading up to the Baca interview, Mr. Fox's

12   key decisions and conduct at the interview, and Mr. Baca's physical demeanor

13   during the interview.

14          Since the government has been represented by three experienced prosecutors

15   -- Brandon Fox, Lizabeth Rhodes, and Eddie Jauregui -- the government will suffer

16   little prejudice should Mr. Fox be recused.  Ms. Rhodes has been assigned to the

17   investigation since 2011 and has participated in the numerous trials of LASD

18   members preceding this case over the past two years.  Mr. Jauregui similarly has

19   extensive experience, having participated in the *United States v. Tanaka* trial

20          Accordingly, Mr. Baca is entitled under the Sixth Amendment to call and

21   confront Mr. Fox in defense of the Count 3 false statements; consequently, the

22   Court must therefore recuse Mr. Fox from the prosecution trial team.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**IV.    CONCLUSION**

      For all these reasons, Mr. Baca respectfully requests that the Court recuse Mr. Fox from prosecuting the case at trial.

Dated:      September 26, 2016      MORGAN, LEWIS & BOCKIUS LLP


By *//s// Nathan J. Hochman*
      Nathan J. Hochman
      Brianna L. Abrams
      Attorneys for Defendant Baca

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SANTA MONICA

DB2/ 30658444.5

16

CR 16-66(A) - PA