1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3           HONORABLE PERCY ANDERSON

4        UNITED STATES DISTRICT JUDGE PRESIDING

5                   - - -

6
United States of America,          )
7                    PLAINTIFF,     )
                                    )
8    VS.                            )   NO. CR 16-66 PA
                                    )
9    Leroy Baca,                    )
                     DEFENDANT,     )
10   _____)

11

12

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             LOS ANGELES, CALIFORNIA

15           MONDAY, NOVEMBER 30, 2016

16

17

18    _____

19           KATIE E. THIBODEAUX, CSR 9858
             U.S. Official Court Reporter
20           312 North Spring Street, #436
             Los Angeles, California 90012
21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR THE GOVERNMENT:

 4    BRANDON D. FOX
      -and- EDDIE JAUREGUI
 5    -and- LIZABETH RHODES
      AUSA - Office of the US Attorney
 6    312 North Spring Street 12th Floor
      Los Angeles, CA 90012
 7

 8

 9    FOR DEFENDANT:

10         MORGAN LEWIS AND BOCKIUS LLP
           BY:  NATHAN J. HOCHMAN
11         -and- TITOS DIAMANTATOS
           1601 Cloverfield Boulevard
12         Suite 2050 North
           Santa Monica, CA  90404
13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 31, 2016

 2                          2:57 P.M.

 3                          - - - - -

 4

 5

 6          THE CLERK:  Calling Item No. 3, CR 16-66, U.S.A.

 7     versus Leroy Baca.

 8          MR. FOX:  Good afternoon, your Honor.  Brandon

 9     Fox, Eddie Jauregui and Lizabeth Rhodes on behalf of the

10     United States.

11          THE COURT:  Afternoon.

12          MR. HOCHMAN:  Good afternoon, your Honor.  Nathan

13     Hochman and Tinos Diamantatos along with the defendant

14     who is present on bond, your Honor.

15          THE COURT:  Good afternoon.

16              All right.  I have a couple of preliminary

17     questions before we address these motions.

18              What is the government's estimate as to how

19     long it is going to take to put on its case in chief?

20          MR. FOX:  Your Honor, I think that we will be done

21     the end of the second week of trial.  So we think that

22     about seven to eight trial days is probably accurate.

23          THE COURT:  And what is the defense's estimate?

24          MR. HOCHMAN:  Your Honor, depending on whether or

25     not Mr. Baca testifies, probably two to four days.  So
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    basically a week if the court is doing four days in a

2    week.

3           THE COURT:  All right.  I believe there was a

4    doctor who was appointed to conduct a competency

5    examination.

6           MR. FOX:  Yes, your Honor.

7           THE COURT:  And I believe they were ordered to

8    file a report.  When that report is completed, it should

9    be filed under seal unless somebody has an objection.

10          MR. HOCHMAN:  No objection, your Honor.

11          MR. FOX:  We will do that, your Honor.

12          THE COURT:  All right.  I understand we have some

13   motions that have been filed by the defense.

14              Why don't we take up first the motion to

15   disqualify Mr. Fox.  This is sort of like a motion that

16   the coach of the Buffalo Bills would want to make to

17   disqualify Tom Brady.

18          MR. HOCHMAN:  Yeah, your Honor.

19          THE COURT:  Or Bill Belichick.

20          MR. HOCHMAN:  If the Buffalo Bills had a Sixth

21   Amendment right, constitutional right to call whoever

22   they wanted as a quarterback of the Patriots and were to

23   actually use as a referee is probably a better way of

24   looking at it or a witness for their football game and it

25   was Mr. Brady and Mr. Brady injected himself into the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   process that led to the allegations to begin with.

2          THE COURT:  That would be dependent upon whether

3   Mr. Brady had anything admissible and relevant --

4          MR. HOCHMAN:  That's correct, your Honor.

5          THE COURT:  -- to the trial.

6          MR. HOCHMAN:  Actually, there is two levels of the

7   analysis, your Honor.  And I want to make clear that we

8   do have, we do intend, if the court were to allow us to

9   do it, to exercise our Sixth Amendment right to call

10  Mr. Fox, and what we would call him to testify about is a

11  variety of things, your Honor.

12         THE COURT:  What is the standard that the Ninth

13  Circuit has decided that you must meet before you can

14  call a participating prosecutor as a witness in a case?

15         MR. HOCHMAN:  So the standard, there is probably

16  two main aspects of that, your Honor.  One is you have to

17  show a compelling need to call the prosecutor and, two,

18  you have to show that you have exhausted alternative

19  avenues to get in that type of testimony besides calling

20  the prosecutor, your Honor.

21         THE COURT:  And you have to show that the

22  testimony that the witness is going to offer is both

23  admissible and relevant.

24         MR. HOCHMAN:  Yes, your Honor.

25         THE COURT:  Correct?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. HOCHMAN:  That's correct.

 2          THE COURT:  Okay.  And, in this case, were there

 3   any other sources of possible testimony that you want to

 4   elicit from Mr. Fox?

 5          MR. HOCHMAN:  Sources of -- you mean, other people

 6   who could testify to what Mr. Fox would testify to, your

 7   Honor?

 8          THE COURT:  As to what you are seeking to have

 9   Mr. Fox testify about.  Was there anybody else at that

10   interview?

11          MR. HOCHMAN:  Well, again, we are not just asking

12   to call Mr. Fox just for the purpose of telling what he

13   saw at the interview, your Honor.

14          THE COURT:  My question was, was there anybody

15   else at that interview?

16          MR. HOCHMAN:  Yes, your Honor.

17          THE COURT:  And who was that?

18          MR. HOCHMAN:  On the government's side, there was

19   Ms. Rhodes who is at counsel table.  There was a former

20   prosecutor now turned defense attorney named Margaret

21   Carter, your Honor.

22          THE COURT:  Uh-huh.

23          MR. HOCHMAN:  There were two FBI agents,

24   Mr. Dahle, Mr. Dalton, and then there was Mr. Baca

25   obviously.  And then there was -- Mr. Baca had
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    two attorneys present at that time.

2            THE COURT:  One of whom was a former assistant.

3            MR. HOCHMAN:  Two of were former assistants, your

4    Honor.

5            THE COURT:  Two of whom were former assistants.

6            MR. HOCHMAN:  That's correct, your Honor.

7            THE COURT:  Uh-huh.

8            MR. HOCHMAN:  And let me sort of deal with the

9    other people, and then I will deal with the topics that I

10   believe Mr. Fox is uniquely qualified to testify about

11   concerning relevant and admissible evidence.

12               With respect to Ms. Rhodes --

13           THE COURT:  Well, one of the things that you want

14   to elicit from Mr. Fox allegedly are the negotiations

15   that led up to the resulting location where the interview

16   was held.

17           MR. HOCHMAN:  Amongst other things, your Honor.

18           THE COURT:  Well, yes, among other things, but

19   that is one of them; right?

20           MR. HOCHMAN:  That would be a very minor point,

21   but, yes, your Honor.

22           THE COURT:  Okay.  So we can throw that one away

23   because that is not coming in?

24           MR. HOCHMAN:  Well, I think, your Honor, if the --

25           THE COURT:  You said it was minor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. HOCHMAN:  Minor but not irrelevant.

 2              THE COURT:  Seems to be.  Who cares where the

 3    interview took place?

 4              MR. HOCHMAN:  If the interview took place inside

 5    of a jail, would that be relevant, your Honor?  I believe

 6    it would.

 7              THE COURT:  It took place at, I think, at his

 8    lawyer's offices, and why is that relevant?

 9              MR. HOCHMAN:  Well, again, your Honor, it goes to,

10    we would argue is that the context that the jury needs to

11    evaluate the five charged false statements is absolutely

12    crucial.  And every aspect of that context is relevant,

13    your Honor, because the jury needs to evaluate when --

14    because they are not going to be seeing a videotape of

15    Mr. Baca uttering the statements.  They need to evaluate

16    and the courts allow them to get as much context as

17    possible in order to determine whether or not the

18    statements were knowingly and willfully made, whether or

19    not they were false, whether or not they were material.

20              And the courts don't limit -- if you read the

21    case law, your Honor, they don't give you a limit.

22              THE COURT:  Are you suggesting that I haven't read

23    the case law?

24              MR. HOCHMAN:  No.  No, your Honor.  When one reads

25    the case law, not yourself, myself or Mr. Fox, when
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   everyone reads the case law, the courts do not put a --

2   they don't give you a laundry list of what they consider

3   to be context and say everything else that is not on the

4   laundry list is in context.  They use the broad word

5   context, and they allow, obviously, for each case to be

6   determined as to what constitutes that context, your

7   Honor.

8          THE COURT:  Uh-huh.

9          MR. HOCHMAN:  So with respect to --

10         THE COURT:  But you want to get at the

11  negotiations that led to the location of where this

12  interview was going to be held.  That is what you said in

13  your papers anyway.

14         MR. HOCHMAN:  What I want to get at with respect

15  to negotiations, your Honor, there are much more I would

16  believe salient points although that is part of the

17  context.  There are other salient points.

18             For instance, the length of the interview, the

19  fact that it isn't a 15-minute interview that involves

20  five questions.

21         THE COURT:  And none of those people that were

22  there could talk about the length of the interview?

23         MR. HOCHMAN:  They couldn't probably talk about --

24         THE COURT:  Including the FBI agents who are

25  trained?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        MR. HOCHMAN:  Well, let me give you, your Honor,
 2   let me just jump to an example of something that an FBI
 3   agent couldn't testify to.
 4        THE COURT:  Well, just answer my question first.
 5   None of the other people that were there at that
 6   interview can talk about the length of the interview?
 7        MR. HOCHMAN:  They can talk about how long the
 8   interview actually lasted.  They couldn't talk about how
 9   long it was anticipated or agreed to last going into the
10   interview, your Honor.
11        THE COURT:  Oh.  His lawyers couldn't talk about
12   how long the interview was, how much time they allotted
13   for this interview?
14        MR. HOCHMAN:  Let me directly address that
15   question on whether or not we should be forced to call
16   our lawyers instead of Mr. Fox.  If we call our lawyers,
17   your Honor, they will be immediately impeached.
18        THE COURT:  I am not forcing you to do anything.
19   The only thing is the law says you have to show a
20   compelling need.
21        MR. HOCHMAN:  Certainly.
22        THE COURT:  You have to show that there are no
23   other sources for this information that you are seeking.
24        MR. HOCHMAN:  If we call our own lawyers, Mr. Fox
25   will immediately cross-examine them, and to the extent
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   they have anything useful to say for the defense, the

2   argument to the jury will be, of course, they said that.

3   Of course.  They are his lawyers.  They are obligated to

4   zealously advocate on his behalf.

5          THE COURT:  What about Maggie Carter?

6          MR. HOCHMAN:  Maggie Carter, now a former

7   prosecutor.  She is a former prosecutor.  She was

8   involved in decisions through potentially 2015 but not in

9   any of the decisions after that.  And she is now a

10  defense attorney at O'Melveny and Myers, your Honor.  And

11  she has many cases against this very office.

12            So, again, your Honor, what I am looking for

13  the witness that has no bias certainly for Mr. Baca or

14  for the defense in general.  Mr. Fox fits that bill to a

15  T.

16         THE COURT:  So does Ms. Carter.

17         MR. HOCHMAN:  Well, not to a T, your Honor.

18         THE COURT:  I don't even know what that means, but

19  okay.

20         MR. HOCHMAN:  Well, Ms. Carter has impeachment,

21  potential impeachment that Mr. Fox doesn't have.

22         MR. FOX:  Your Honor, just to address that point,

23  we will stipulate that we will not cross-examine her on

24  the fact that she works for O'Melveny and Myers as a

25  white collar crime defense attorney.  So we can just put

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    that on the record right now.

 2         MR. HOCHMAN:  And, again, your Honor, what

 3    Ms. Carter knows and doesn't know, I can't determine.

 4    Why?  Because I reached out to Ms. Carter to see if she

 5    would talk to me in order to ask her these questions

 6    because it would be almost some level of poor due

 7    diligence on my part if I didn't attempt and then speak

 8    with a witness I want to put on the stand, particularly,

 9    one that could, that may or --

10         THE COURT:  So Mr. Fox agreed to talk to you?

11         MR. HOCHMAN:  Well, for Mr. Fox, I have the actual

12    evidence.  I have the letters that Mr. Fox sent to

13    Mr. Baca's counsel.  I have the questions, the

14    five questions.  They are the only questions that have

15    been charged that Mr. Fox, not Ms. Carter, personally

16    asked.

17         I have Mr. Fox making certain other decisions

18    that I don't know if Ms. Carter is involved with, but I

19    absolutely know Mr. Fox was.  And she won't talk to me,

20    your Honor.  So I can't determine ahead of time if

21    Ms. Carter actually is a witness that I could substitute

22    in for Mr. Fox because she could do everything that

23    Mr. Fox otherwise could do.

24         There is no 302 for Ms. Carter.  For that

25    matter, there is no 302 for Ms. Rhodes as to what each
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    one of them if interviewed by an FBI agent would say with

2    respect to the topics that I have raised.  But I do know

3    stuff about Mr. Fox because he asked the five questions.

4    That is part of the argument, your Honor.

5        THE COURT:  And everybody was there to hear those

6    questions that were asked; right?

7        MR. HOCHMAN:  If the only question was was a

8    question asked and a question answered, that's correct,

9    your Honor.  But there is much more to that.  And we

10   would, again, we would argue amongst other things that

11   Mr. Fox was in the best position not only to observe

12   someone asking their question, but if you look at the way

13   he asked questions, your Honor, he actually isn't reading

14   from a script.  It is not like Mr. Fox had a script.  And

15   he is just marching through it one question after the

16   other.  If he were, we probably wouldn't need Mr. Fox

17   because his observations and others might be the same.

18            When one actually reads the transcript, and I

19   don't know if your Honor has read -- I don't know if we

20   have even presented you the full transcript of the

21   interview.  But when one reads that transcript, you will

22   see that Mr. Fox is, sometimes he is frustrated with the

23   answer.  He changes the question.  He asks questions in

24   different parts of the interview that relate to the same

25   topic.  Why that all happened, whether or not it forms

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    the context for the ultimate answers that Mr. Fox and the

2    government believes are false, Mr. Fox is in the best

3    position to know, your Honor.

4           Certainly, Ms. Carter asked a few questions,

5    but none of the five that are at issue here.  Mr. Dahle,

6    I think, asked maybe one or two questions.  Mr. Dalton

7    asked a couple but none of the issues here.  I don't

8    believe -- Ms. Rhodes may have asked one or two.  But the

9    overwhelming majority of the questions and most

10   importantly the five questions they have decided to

11   charge as false statements were all asked by Mr. Fox.

12          And therein lies the issue, your Honor.  The

13   government put Mr. Fox in that interview to ask the

14   five key questions.  The government then went ahead and

15   chose to only charge the questions that Mr. Fox asked.

16   They could have charged many of the other questions if

17   they wanted to that other people asked, but they chose

18   the Mr. Fox questions.  And then the government made

19   Mr. Fox the lead prosecutor.

20          The government made three independent choices.

21   We are just asking the court to respect Mr. Baca's choice

22   which is grounded in the Sixth Amendment to call the

23   person that the government put in charge of the questions

24   and put in charge of the actual charging -- the questions

25   that are asked when they charged false statements.  That

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    was the government's decision, and they put Mr. Fox front

2    and forward as the person who would be most -- the jury

3    would most expect you would want to call if you have

4    these questions.

5           For instance, let me give you another example,

6    your Honor.  In many cases, and there is even an example

7    in this situation where they had someone interviewed, and

8    even sometimes in the grand jury, we found one instance

9    of this.  You show the transcript to a witness afterwards

10   and you say do you have any corrections to do it.

11   Obviously, in civil cases it is done all the time, and,

12   again, in this situation, there is at least one incidence

13   of it being done.

14          And what happens, obviously, is that you then

15   go through the transcript, you see if your answers are

16   accurate based on thinking about them, and then you

17   report to back to the prosecutor, this is accurate, this

18   is not accurate, et cetera, et cetera.  The question of

19   whether or not that was actually offered to Mr. Baca --

20       THE COURT:  I'm sorry.  Are you saying that, for

21   example, when you go through a deposition testimony, you

22   go through it and decide whether or not what you said --

23   you think about whether or not that was accurate, and

24   then you change your deposition testimony?  Is that what

25   you are saying?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. HOCHMAN:  What I am saying, your Honor, is in
 2     a deposition testimony which is you are informed, they
 3     show you the transcript afterwards.  They tell you that
 4     your answer stands.  But if you want to make some
 5     additional changes, if for some reason, you answered a
 6     question and you believe after reviewing it that the
 7     answer was not a hundred percent accurate, complete, et
 8     cetera, et cetera, they give you a sheet in which you can
 9     identify --
10          THE COURT:  I am familiar with that.  I have gone
11     through that.
12          MR. HOCHMAN:  That is what I am saying, your
13     Honor.  It wasn't done in this case.  Now, why wasn't it
14     done in this case?  I will ask Mr. Fox.  I can't ask the
15     FBI agents.  Ms. Carter is gone.
16          THE COURT:  Ms. Carter is not gone.  She is right
17     up the street.
18          MR. HOCHMAN:  She is gone by the time this case is
19     charged in February of 2016, your Honor, by the time they
20     decide these five statements are going to be criminal
21     violations.  And Ms. Rhodes, obviously, will be on the
22     trial team as well and presumably suffers from the same
23     type of issue if we were to call Ms. Rhodes instead of
24     Mr. Fox.
25              So that is one set of issues, your Honor.  The
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    other set of issues is this:  Let's assume that the court

2    denies the motion.  Now, Mr. Fox is giving the closing

3    argument.  He has to use the word I.  He can try and use

4    the word the government, the government asked this

5    question and the government asked that question.  The

6    transcript says Mr. Fox.

7              So the jury knows that when Mr. Fox is

8    arguing, and let's assume we have not been allowed to put

9    him on the stand and cross-examine him.  He is

10   effectively testifying, your Honor.  That is United

11   States versus Prantil.  And Prantil says that --

12         THE COURT:  That is a far different case, isn't

13   it?

14         MR. HOCHMAN:  Well, actually --

15         THE COURT:  The answer to that is yes.

16         MR. HOCHMAN:  Well, the facts are different, your

17   Honor.  The standards --

18         THE COURT:  Yes.  The facts are very different.

19         MR. HOCHMAN:  The standards for which the Ninth

20   Circuit articulates concerning the advocate witness rule

21   I believe are generic statements that would apply to this

22   situation.  And one of the admonitions that the Ninth

23   Circuit in that case gives is that particular jury

24   confusion can happen at closing argument where they can

25   give testimonial weight to what the prosecutor is saying

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    when he has basically not actually taken the witness

2    stand and been subject to cross-examination.

3            And that will absolutely happen here.  Mr. Fox

4    would have to say, as I asked this question, Mr. Baca

5    gave me this answer.  And that question was clear.  It

6    was obvious.  The answer flows naturally.  It is a false

7    statement in light of the clear question that was asked

8    by the government which obviously Mr. Fox is the one who

9    asked it, all five times.

10           There is no way around that, your Honor, that

11   he has to talk in the first person about the entire

12   episode and the entire false statements.  So if the court

13   is not inclined to let us call him as a witness, what we

14   would ask to remedy that potential jury confusion is the

15   court allow someone other than Mr. Fox to be giving the

16   closing argument for the government's team.

17       THE COURT:  That is like Ryan wanting Garoppolo to

18   be the quarterback when the Bills are -- when they are

19   facing the Buffalo Bills.

20       MR. HOCHMAN:  Your Honor, unfortunately, I don't

21   want to get into the football analogy because I just

22   tried it a moment ago, and lining up the exact analogy, I

23   don't want to create a situation where I am not being

24   responsive to the court's question.

25           What I believe is the situation here that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    Prantil does talk about is the high degree of potential
 2    for jury confusion, particularly during closing
 3    statements where the prosecutor would have to use the I
 4    voice even if he didn't actually say the word I and he
 5    just talked about the government asking the questions
 6    because the transcripts will be clear, and the recording
 7    is clear that it was Mr. Fox who actually asked the
 8    question.
 9            And the jury will certainly know Mr. Fox's
10    voice and will hear an audio recording of Mr. Fox asking
11    question after question after question.  So even if
12    Mr. Fox tries valiantly to put it in the third person or
13    the passive voice, it would be impossible, your Honor.
14    And that will create jury confusion because the jury will
15    assume --
16         THE COURT:  Excuse me, sir.  Did you raise this
17    particular argument in your initial motion?
18         MR. HOCHMAN:  In the initial motion, no, your
19    Honor.
20         THE COURT:  You raised it for the first time in
21    the reply.
22         MR. HOCHMAN:  In response to what the government
23    brought up, yes, your Honor.
24         THE COURT:  You raised this argument for the first
25    time in the reply; correct?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. HOCHMAN:  That's correct, your Honor.

 2              THE COURT:  And isn't there a general rule about

 3      raising new issues in a reply for the first time?

 4              MR. HOCHMAN:  Well, your Honor, the initial motion

 5      was to ask the court to recuse Mr. Fox from testifying

 6      entirely.  The government then made a response and listed

 7      the various reasons why it believed that should not

 8      happen.  I offered an alternative that if the court were

 9      to deny that initial relief that we sought, given the

10      government's arguments, that we would seek this potential

11      way to obviate the jury confusion.  And I certainly

12      brought up the concept of jury confusion in closing

13      argument in the initial motion.  I cited U.S. v. Prantil

14      on that point, your Honor.

15              THE COURT:  But you didn't ask for this type of

16      relief in your initial motion, did you?

17              MR. HOCHMAN:  Your Honor --

18              THE COURT:  The answer to that is no.

19              MR. HOCHMAN:  No, your Honor.  I did not ask for

20      this type of alternative relief in the initial motion.

21      It didn't actually, to be quite candid, your Honor, it

22      didn't actually occur to me until I was preparing the

23      reply.  And then I thought I read back on U.S. v.

24      Prantil, read those words about jury confusion during

25      closing argument and then thought to myself --
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  Well, you knew that when you filed
 2   your motion; right?
 3          MR. HOCHMAN:  If I thought in that direction, your
 4   Honor --
 5          THE COURT:  Well, you just said that you raised
 6   this idea of jury confusion in the initial motion, didn't
 7   you?
 8          MR. HOCHMAN:  Yes, your Honor.  I mean, could I
 9   have known about it back then?  Yes, I could have, your
10   Honor.  Did I know about it?  No, I didn't think about it
11   in this way, your Honor.
12          THE COURT:  You didn't think about the relief.
13          MR. HOCHMAN:  I didn't think about the alternative
14   relief, your Honor.  I certainly thought that my initial
15   motion was very strong as to the various reasons why the
16   court should grant it and recuse Mr. Fox entirely from
17   the prosecution team.  And then I read the government's
18   response.  And I evaluated, if the court were to go with
19   some or all their arguments, how would I then potentially
20   avoid or ask the court to avoid jury confusion
21   particularly in closing argument.  And it is at that
22   point in that evaluation, your Honor, I raised the
23   alternative relief.
24              With that, your Honor, unless the court has
25   any further questions, I would submit on that motion.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  So the areas that you want to ask

 2   Mr. Fox to testify about including the location for the

 3   interview, ground rules for the interview, the

 4   admonishment the defendant received, the terms of the

 5   nontarget letter and the potential conflict under which

 6   Mr. Baca's attorneys were operating under at the time.

 7          MR. HOCHMAN:  With respect to the questions that

 8   preceded the interview, yes, your Honor.  Then there is

 9   questions that I would ask him of stuff that occurred

10   during the interview.

11          THE COURT:  I see.  But what happened -- these are

12   the sources of the information that you placed in the

13   motion.

14          MR. HOCHMAN:  Yes.  Well, I actually divided it in

15   different temporal times, your Honor.  There were

16   questions I would ask preceding the actual interview, and

17   then there is questions I would ask of what occurred

18   during the interview, your Honor.

19               And, again, the questions that I would ask

20   during the interview of Mr. Fox pertain to a variety of

21   things that he asked about, your Honor.  So, for

22   instance, the admonition actually is given during the

23   interview, your Honor, not before it.  And the

24   admonition, as I point out that Mr. Fox gave Mr. Baca was

25   that you have received a nontarget letter, but I want you
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    to know what that means.  And he basically says if you

2    have shot JFK which is his only example --

3          THE COURT:  There were a number of people who were

4    present when that admonishment was given, not only

5    Mr. Fox; correct?

6          MR. HOCHMAN:  Correct.  But no one else would know

7    besides Mr. Fox why he gave that admonition and not the

8    other admonitions he had given to other witnesses.

9          THE COURT:  And that is relevant and admissible to

10   this jury trying to decide if your client obstructed

11   justice?

12         MR. HOCHMAN:  It is relevant and admissible to the

13   bias of Mr. Fox.  The bias of Mr. Fox is always relevant

14   and admissible if you allow him to be a witness.  So,

15   yes, your Honor, it would be relevant and admissible

16   testimony.

17         THE COURT:  I see.

18         MR. HOCHMAN:  It would certainly hit both of those

19   elements, your Honor.

20         THE COURT:  All right.  Let me hear from the

21   government.

22         MR. FOX:  Your Honor, I just want to pick up on

23   that last point.  This is the first time Mr. Hochman has

24   said anything about the bias of Mr. Fox.  That was

25   nowhere in his motion.  Not in his reply.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1          We alluded to the fact that he made a public

 2   statement about how I could not be fair, but he has never

 3   elaborated on that.  And I am not even sure what

 4   relevance that would be at trial to the extent that I had

 5   a bias against Mr. Baca which, of course, I do not have.

 6          I am prosecuting the case for somebody who I

 7   believe, based on the evidence that we have to date, has

 8   committed a crime.  You hit on all the issues, your

 9   Honor.  I don't want to belabor them too much.  I will

10   just talk about them in bullet point fashion.

11          As you pointed out, there is no compelling

12   need for this testimony, any testimony by me.  Everything

13   that happened is on tape, and Mr. Hochman completely

14   glosses over that.  Everything is on audiotape.  We will

15   play the audiotape for the jury.  The jury can make its

16   own determinations about whether a question is clear or

17   not, whether an answer is taken out of context.

18          That is absolutely going to be up to the jury

19   to decide.  So, no matter what, if I do argue in closing

20   arguments or rebuttal, no matter what I would argue about

21   the questions or the answers, there would be no jury

22   confusion.  It wouldn't be testimonial.  It would be

23   about what happened on the tape and the jury, what their

24   determinations were about what happened on the tape.

25          In terms of this submitting the transcript to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    Mr. Baca for him to correct, again, this is all on tape.

2    The transcript itself is not evidence.  It doesn't matter

3    whether the transcript itself was correct.  What matters

4    is what Mr. Baca said on tape.  So the evidence is going

5    to be the tape.  The transcript is just going to be used

6    to assist the jury.  The transcript itself does not

7    matter.

8            There are so many witnesses available to

9    Mr. Hochman -- Ms. Carter, Special Agent Dahle, Special

10   Agent Dalton, Byong Su Kim, Brian Hirschman.  With

11   respect to Special Agent Dahle and Dalton, they certainly

12   have more training than we do with about whether somebody

13   is lying to them or whether somebody is indicating that

14   they cannot remember something, whether that is due to a

15   condition.  AUSA's do not have special training in that

16   manner.

17           And the only other thing that I want to say,

18   your Honor, is that Mr. Hochman said Ms. Carter cannot be

19   a witness because she was not around regarding decisions

20   that occurred in 2015 or after 2015.  He has not put

21   anything in his motion or in his reply that I saw that

22   relate to anything that happened after 2015.

23           Forgot to mention one thing, your Honor.  All

24   these issues that he puts in on Pages 12 and 13 of his

25   motion and on Pages 7 and 8 of his reply, these are all

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    discussed on the audio recording themselves.  The

2    location of the interview is on there.  The length of the

3    interview, it is very clear there were discussions based

4    on the audiotape about how long the interview would go.

5    The time of day is clear from the interview.

6            The topics to be covered is actually discussed

7    on the audiotape.  I say to Mr. Kim and Mr. Hirschman --

8    I'm sorry -- say to Mr. Baca, I am sure your attorneys

9    have talked to you about this, but there are certain

10   subject matters we want to cover and I discussed that.

11           So all of these statements are on audiotape,

12   and in terms of our decisions or negotiations, those are

13   not admissible evidence.  These are not material to the

14   defense whatsoever.  So we ask your Honor to deny this

15   motion.

16           THE COURT:  Thank you.

17           MR. FOX:  Thank you.

18           MR. HOCHMAN:  May I respond very briefly, your

19   Honor?

20           THE COURT:  Yes.

21           MR. HOCHMAN:  One of the other aspects of the

22   motion, your Honor, that is important, and I believe,

23   again, Mr. Fox will be in the best position, and, quite

24   honestly, because I can't and have been prevented because

25   they have turned down the interview request to speak to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    Special Agent Dahle, Special Agent Dalton --

 2         THE COURT:  Just like any other witness; right?

 3    Because witnesses don't belong to any particular lawyer.

 4         MR. HOCHMAN:  Of course, but, your Honor, if I was

 5    able to speak to Special Agent Dahle, for instance, and I

 6    asked him, were you -- when Mr. Fox was asking these

 7    five questions, were you paying attention, did you

 8    observe Mr. Baca, are you aware of whatever ground rules

 9    the court believes are admissible going into the

10    interview.  Are you aware of whether or not Mr. Baca was

11    offered an opportunity afterwards to review the

12    transcript and make any corrections.

13         If Mr. Dahle says, yeah, I was aware of all

14    this and I am a percipient witness to everything, then I

15    think Mr. Fox and the government would make a good point

16    that I could call Mr. Dahle for every purpose.

17         A, I don't believe it is true that he would be

18    a percipient witness to all this.  So I believe that, and

19    I am anticipating for this trial, when I ask many of

20    these questions, your Honor, his answer is going to be

21    either I don't know, or if he does know the answer, it is

22    hearsay because he will know it because Mr. Fox,

23    Ms. Rhodes or somebody else told him and not because he

24    is a percipient witness.

25         So that is my fear here, your Honor, is that
```

1    they are going to put in Agent Dahle.  He is not going to

2    be able to give the full panoply of the answers in an

3    admissible testimony.  And then I will be in a position,

4    your Honor, of coming back to your Honor and saying,

5    look, in light of where we are, I believe Mr. Fox needs

6    to be called to answer the following questions.

7           And I am just trying to anticipate that, your

8    Honor, ahead of time which is the purpose of the motion

9    rather than waiting until we are in the middle of trial

10   and then handing you United States versus Prantil and

11   related cases and saying, your Honor, we got to declare a

12   mistrial because I have got to call Mr. Fox now.

13          That was my goal in raising this now because I

14   could have waited, your Honor, to see how it played out,

15   but I decided let's raise it ahead of time, bring it to

16   the court's attention.  And, hopefully, we don't have

17   that situation, but I won't know, your Honor, how it

18   actually plays out until we are in the middle of the

19   trial.  And therein lies my dilemma.

20          And then if we have that situation where the

21   court allows me to call Mr. Fox, there will be a mistrial

22   request made and the law seems pretty clear at that point

23   that the court would probably have to grant that.

24   Obviously, it would be litigated, but the chance of that

25   being granted in the middle of trial goes up

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    dramatically.  And that is why I brought it up ahead of

2    time, your Honor.

3           THE COURT:  Okay.

4           MR. HOCHMAN:  Do you want me to turn to the next

5    motion, your Honor?

6           THE COURT:  No.  I am going to rule on this

7    motion.

8           MR. HOCHMAN:  Okay.

9           THE COURT:  I think the law is pretty clear that a

10   defendant must exhaust other available sources of

11   evidence before the court should sustain a defendant's

12   burden to call a participating prosecutor as a witness.

13   The defendant must demonstrate a compelling need before a

14   participating prosecutor will be permitted to testify.

15          The defendant has not satisfied his burden to

16   establish that he has a compelling need for Mr. Fox's

17   testimony.  In addition to Mr. Fox, there were some other

18   five witnesses who attended this interview including

19   two FBI agents and two attorneys who were representing

20   the defendant at the time, the defendant himself.

21          Any of these five witnesses who were not

22   members of the prosecution team are available to testify

23   about the defendant's demeanor during the interview.  The

24   fact that these witnesses have refused to permit defense

25   counsel or defense counsel's request to submit to an

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  interview does not mean that they are unavailable to

2  testify at trial.

3          In addition, most of the areas that the

4  defendant seeks to have Mr. Fox testify about including

5  the negotiations that resulted in the location and ground

6  rules for the interview, the admonishment that the

7  defendant received, the terms of the nontarget letter,

8  the potential conflict of interest under which the

9  defendant's attorneys may have been operating under at

10  the time do not appear to this court to be relevant to

11  any issue the court or the jury will be called upon to

12  decide in this case.

13          Nor does the defendant explain how the

14  testimony concerning the manner the interview was

15  recorded is relevant or admissible and not prejudicial.

16  At the time of the interview, the defendant was still the

17  sheriff of Los Angeles County, and because the defendant

18  has shown no compelling need to present inadmissible

19  evidence, the testimony of Mr. Fox on these topics does

20  not support his disqualification from the prosecution

21  team.

22          Instead, as the defendant's counsel stated in

23  an interview published the same day that this motion was

24  filed, the defendant seeks a fair trial with a fair

25  judge, a fair prosecutor and a fair jury.  This motion

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

 1    appears to be aimed at eliminating a member of the

 2    prosecution team rather than securing the testimony of a

 3    witness.

 4              In his reply, the defendant argues that even

 5    if the court denies this motion, the court should

 6    nevertheless preclude Mr. Fox from delivering the

 7    government's closing argument because Mr. Fox might make

 8    statements that blur the line between an advocate and a

 9    witness.

10              This argument wasn't developed or requested or

11    this relief wasn't requested in the motion, and because

12    this issue was raised for the first time in the reply,

13    the government really hasn't had an opportunity to

14    respond to it.  And the general rule, of course, is that

15    you can't raise a new issue for the first time in the

16    reply.  At least on this record, this court will not tell

17    the government how to try its case or select the member

18    of the prosecution team to deliver the closing argument.

19              And, thus, the motion to disqualify Mr. Fox is

20    denied.

21              Okay.  Let's turn to the motion for change of

22    venue.

23         MR. HOCHMAN:  Your Honor, the motion for change of

24    venue is --

25              THE COURT:  You know, I find this motion, I find

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   it kind of ironic that you are raising a motion to change
 2   venue for pretrial publicity when, in fact, you gave an
 3   interview the same day that this motion was filed to a
 4   member of the press, but go ahead.
 5        MR. HOCHMAN:  Your Honor, the basis of this motion
 6   is not actually anything to do with the motion itself.
 7   The basis of the motion is as follows:  Is whether or not
 8   the court should presume prejudice or wait to see if
 9   there is actual prejudice with the potential jurors that
10   will be adjudicating this case.
11            In looking at the situation with presumed
12   prejudice, the Supreme Court for almost 50 years now has
13   laid down a standard that is a difficult standard and a
14   high standard as well it should be, your Honor, on when
15   you can actually presume.
16        THE COURT:  Well, doesn't Skilling really address
17   this motion, the Skilling decision by the Supreme Court?
18        MR. HOCHMAN:  It certainly addresses the standard,
19   your Honor, for when you should presume prejudice.
20   Absolutely.
21        THE COURT:  Well, doesn't it really kind of
22   foreclose this motion?
23        MR. HOCHMAN:  I don't believe so, your Honor.
24        THE COURT:  Well, in that case, that trial was
25   held in Houston; correct?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. HOCHMAN:  It was.

 2          THE COURT:  And the court said that one of the

 3   things that we really ought to emphasize is the size and

 4   composition of the jury, of the eligible jurors.

 5          MR. HOCHMAN:  That is one of the factors, your

 6   Honor.

 7          THE COURT:  That is one of the main factors.

 8          MR. HOCHMAN:  Yes.  But what they didn't have in

 9   Skilling which we have in this case is Mr. Skilling never

10   confessed his guilt.

11          THE COURT:  I thought it was a codefendant who did

12   shortly before the trial; correct?

13          MR. HOCHMAN:  Well, again, what the Supreme Court

14   was addressing --

15          THE COURT:  Excuse me.  Was there a codefendant

16   who plead guilty shortly before the Skilling trial?

17          MR. HOCHMAN:  There was a codefendant that pled

18   guilty.

19          THE COURT:  Pled guilty shortly before the trial?

20          MR. HOCHMAN:  Correct.  But the codefendant wasn't

21   Mr. Skilling.  In other words, the argument was not

22   presented to the Supreme Court, and, in fact, the other

23   Supreme Court decisions recognize this fact that when you

24   have the most prejudicial type of information -- and this

25   is right from Skilling -- which is a confession of guilt,
```

1    your Honor, and that confession of guilt is what has been

2    saturating the community, then that takes it at a

3    different level, your Honor.

4            The analogy of Skilling would have been if

5    Mr. Skilling himself had said publicly or to the world or

6    to a court, I did it, or, I did some part of the crime,

7    and that gets broadcast around Houston on TV, radio,

8    social media and print, and then they are trying to

9    determine whether or not the saturation that the media

10   has done of that statement, that confession of guilt was

11   such that you can presume prejudice.

12           Going all the way back to Rideau, your Honor,

13   Rideau versus Louisiana, if you recall the facts that the

14   government explicates in their opposition, there is a

15   150,000 people in that town of Rideau, Louisiana.  They

16   broadcast an interview where the defendant, in essence,

17   confessed to the variety of crimes he was on trial for.

18   But the town had 150,000 people.  The evidence was

19   that --

20        THE COURT:  As opposed to the Central District

21   which has 7-and-a-half million.

22        MR. HOCHMAN:  Correct, your Honor.  But here is

23   where the point is.  They never showed that all 150,000

24   people were exposed to that particular broadcast.

25           In fact, they either had 50,000, 20,000 or

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    30,000 that were exposed to the broadcast.  I would

2    venture to say since they needed 14 or 12 plus whatever

3    alternates for the jury that of the 50,000 or so people

4    who weren't exposed to the broadcast, they might have

5    been able to find some by doing some jury voir dire, your

6    Honor.

7            But the U.S. Supreme Court said that even

8    though we can potentially look at voir dire, in fact, the

9    court didn't even look at the voir dire transcripts in

10   there.  It said in this type of situation where you have

11   a confession that has been -- and that confession has

12   saturated the public, though not a hundred percent, maybe

13   33 percent, 50 percent, we are just going to presume

14   prejudice, and if we have to do a balancing between the

15   defendant's right to a fair trial with an impartial jury

16   versus keeping it in a particular jurisdiction, in that

17   case, certainly, they were willing to weigh and overturn

18   a conviction and say it should have been moved, your

19   Honor.

20           Here, the evidence we have presented shows

21   that saturation has occurred.  Can we show that every Los

22   Angeleno --

23       THE COURT:  No, sir.  It really shows that there

24   were a lot of media sources out there, but it really

25   doesn't show how many of those individuals who may have

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   been exposed actually reviewed anything about this

2   defendant.

3         MR. HOCHMAN:  Well, it shows how many people the

4   article reached on a particular day, your Honor, in both

5   TV, print, social media and radio.  It cannot nor did the

6   Supreme Court of the Ninth Circuit require you to show

7   how many people it actually reached.

8         THE COURT:  I am just trying to make sure that I

9   understand when you talk about saturation --

10        MR. HOCHMAN:  Yes.

11        THE COURT:  -- it has nothing to do with this

12   defendant.  It has to do with just those media sources;

13   correct?  It doesn't have anything do with how many of

14   those people actually read anything having to do with

15   this defendant.

16        MR. HOCHMAN:  It -- well, the issue is certainly

17   everything to do with this defendant.  I am not saying --

18        THE COURT:  No.

19        MR. HOCHMAN:  -- that a story about James Sexton

20   is the one we are referring to.  This is a story about

21   Leroy Baca, sheriff, who plead guilty and confessed his

22   guilt.

23        THE COURT:  The statistics that you have provided

24   to the court --

25        MR. HOCHMAN:  Yes, your Honor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  -- do not show any particular number
 2   of viewers that, for example, read or heard about a story
 3   involving your client or Mr. Sexton or anybody else.
 4          MR. HOCHMAN:  Well, what they show, your Honor, is
 5   that when a story about my client, and, in particular,
 6   the stories I am focusing on my client confessing his
 7   guilt.  When those stories appeared in these various
 8   media, let's say TV media, how many people in Los Angeles
 9   County that particular story would have reached that day.
10          Does the court -- does any of the case law
11   require me to then follow-up and see and actually conduct
12   an enormous poll to see if that particular story reached
13   a particular person or persons?  No.  The Supreme Court
14   and the Ninth Circuit do not require statistics of actual
15   viewing.  They require statistics of saturation, the
16   story getting out into the community.
17          The example going back to Rideau, the first
18   case dealing with this, is that the video was broadcast
19   on TV.  Actually, it was mostly TV and radio.  This was
20   the 1960's.  They had no evidence whatsoever as to who
21   actually saw it.  All they could say is that they had the
22   TV numbers as to how many people in the community had the
23   ability to see it.  And that is the number that the
24   Supreme Court used.  We are using the same type of
25   methodology, your Honor, to show saturation.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  You don't think there was, according
 2   to that logic, you don't think that there was media
 3   saturation in connection with the Skilling case in
 4   Houston considering the failure of Enron?
 5          MR. HOCHMAN:  Not about his confession because he
 6   never confessed, and I really believe, your Honor, that
 7   is the trigger point here.
 8          THE COURT:  And you don't think that the fact that
 9   a codefendant confessed would have any affect on the
10   Supreme Court's analysis?
11          MR. HOCHMAN:  Well, again --
12          THE COURT:  Assuming you are correct.
13          MR. HOCHMAN:  The codefendant confessed to the
14   codefendant's culpability.  He didn't say Mr. Skilling
15   did it.  He said he did it.
16              And so, again, the confession is what the
17   Supreme Court itself has focused on and said you can't
18   get that out of your mind.  The whole notion of presuming
19   prejudice is that we can't -- I mean, basically, it is
20   saying and the Ninth Circuit has said this in Croft, we
21   can't trust the jurors.
22              If they say it is out of their mind, that the
23   confession is not something that you can get out of your
24   mind and say I can be fair and impartial notwithstanding
25   the fact that I may have been exposed to this confession.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    And that is the whole basis of this notion that the law

2    has developed of presumption of prejudice.

3              And, obviously, the second part of that is

4    actual prejudice.  If we get to the point where we have

5    impaneled a venire, and we ask them either via

6    questionnaires or whatnot, have you come in contact with

7    information like this and you can't be fair and

8    impartial, that is actual prejudice if they all say or a

9    very large percentage of them say, yeah, I can't be fair

10   and impartial, I have seen the stories.

11             But when the Supreme Court created this other

12   doctrine of presumption of prejudice is in a situation

13   like, I believe, this where you have had thousands of

14   stories about Mr. Baca's guilt since approximately

15   February of 2016.  So relatively recent.  We believe

16   those stories are going to continue.  We know the media

17   is in the courtroom today.

18             We believe those stories are going to continue

19   all the way through the trial or up probably to the day

20   of the trial.  And the stories always repeat the same

21   thing.  Mr. Baca plead guilty.  Mr. Baca withdraw his

22   plea, and, now, Mr. Baca is going to trial.

23        THE COURT:  All of which is factual.

24        MR. HOCHMAN:  All of which is factual, but it is

25   the confession of guilt, your Honor, that the Supreme

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    Court has said we have to be particularly sensitive to
 2    because that is something that they can't put out of
 3    their head.  If it was Mr. Baca is going to trial and
 4    Mr. Baca plead guilty, then so be it.
 5         THE COURT:  Well, you can explore that as part of
 6    the actual prejudice assuming we seat a jury; correct?
 7         MR. HOCHMAN:  That would be the actual prejudice
 8    analysis.
 9         THE COURT:  What you are trying to show now is
10    that there is some sort of presumptive or presumed
11    prejudice that is attached.
12         MR. HOCHMAN:  That's correct, your Honor.  And in
13    part to respond to the court's argument about Houston and
14    Skilling, I refer the court to the California state case,
15    the Powell case that dealt with the Rodney King incident
16    because, in that case, if you recall, the lower court --
17         THE COURT:  This is not the Rodney King case.
18    There is no tape.  There is no inflammatory evidence that
19    the jury has seen or potential jury has seen, and, in
20    fact, what the Supreme Court said was that given a large
21    diverse pool of potential jurors, the suggestion that 12
22    impartial individuals could not be impaneled is hard to
23    sustain.  Correct?
24         MR. HOCHMAN:  A Supreme Court case has said that,
25    your Honor.  That's correct.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  The Skilling case said that.
 2          MR. HOCHMAN:  The Skilling case said that, your
 3   Honor.
 4          THE COURT:  And because this district's pool is
 5   even larger and more diverse, that factor weighs strongly
 6   against a presumption of prejudice.
 7          MR. HOCHMAN:  Well --
 8          THE COURT:  And, in fact, the Supreme Court has
 9   held that the presumption of prejudice is rare; correct?
10          MR. HOCHMAN:  That's correct, your Honor, because
11   it will be a rare situation where you have a defendant
12   confess to a crime and then go to trial on that very
13   confession.  That is a relatively rare situation, your
14   Honor.  Most of the time where there is a confession,
15   there is a plea.  I would argue to say without,
16   anecdotally, 95 percent or more cases where there is a
17   confession, there is most likely a plea and you won't
18   have a trial.
19          So this, I believe this is that rare case that
20   Skilling was talking about, that Rideau was talking
21   about.  And what Powell was talking about is the notion
22   of L.A. County, and the court in that case made an
23   observation, the observation was if the argument always
24   is that L.A. County is so big that you can -- that you
25   will always be able to find people who don't suffer from
```

```
 1    the prejudice, then there should never be a venue motion

 2    in L.A. County.  But the court actually --

 3         THE COURT:  In that case you had the tape; right?

 4         MR. HOCHMAN:  But no confession.

 5         THE COURT:  You had the tape; right?

 6         MR. HOCHMAN:  Correct.

 7         THE COURT:  The tape was shown hundreds, literally

 8    thousands of times?

 9         MR. HOCHMAN:  That's correct, your Honor.

10         THE COURT:  And, here, you don't have any

11    dramatically staged admission of guilt.  You have a

12    fairly routine factual colloquy between the court and the

13    defendant, and then you have the court reject his plea or

14    reject the plea deal; correct?

15         MR. HOCHMAN:  Correct, your Honor.  Well, other

16    than it being routine, I think any time a former sheriff

17    of L.A. County says the words, I am guilty, that is not

18    routine, your Honor.  And that is what the media has

19    feasted upon, that one of the highest elected officials

20    in Los Angeles County, probably the highest elected

21    official in Los Angeles County that the U.S. Attorney's

22    office has prosecuted in decades said the words, I am

23    guilty.

24         And it is those words, your Honor, that have

25    been repeated thousands of times to millions of people.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   Hard to get that out of your mind.  And that really
 2   distinguishes this from Skilling.  It puts it more in
 3   line with the Rodney King situation where you had an
 4   inflammatory tape but no admissions of guilt.  Every
 5   one of those four officers, your Honor, said I am not
 6   guilty.  You know, that is -- you didn't have an
 7   admission there.
 8           Again, if the court is doing the balancing on
 9   which one to balance this in favor of, on the one hand,
10   if you move it out of this county, obviously, out of the
11   district, we ask first.  In the alternative, I ask in my
12   initial motion for out of this particular Western
13   District, you will much more greatly ensure that the
14   presumption of prejudice doesn't exist versus waiting and
15   then seeing whether or not actual prejudice ultimately
16   will exist.  And by that point, if it does, we will have
17   to presumably scramble at some level and move this case
18   to another district or a district within this Central
19   District, or excuse me, a division within the Central
20   District or another district.
21           So, again, that is why we are bringing this
22   motion at this point, your Honor.
23       THE COURT:  All right.  Does the government wish
24   to be heard?
25       MR. JAUREQUI:  Yes, briefly, your Honor.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1              Your Honor, I think what the defense is doing

2    on this motion is confusing prominence with prejudice.

3    And, again, as Mr. Fox said earlier, I think the court

4    has hit all the salient points on this, but I just want

5    to hit a couple briefly.

6              There are only two cases, the Supreme Court

7    case being Rideau, the Ninth Circuit case being Daniels

8    versus Woodford where the courts found presumed prejudice

9    that required overturning the conviction at trial.  And

10   neither one of those cases help the defendant, and

11   neither one of those cases have facts even -- the facts

12   in this case don't even come close to approaching those,

13   your Honor.

14             Discussing Rideau very briefly, I know the

15   court has reviewed those cases.  That case did involve a

16   very small town in 1963 where the media availability is

17   going to be a lot more limited than it is today, 150,000

18   people in that parish, and the court found that on

19   three occasions, a 20-minute video where the defendant

20   confessed in detail to the robbery, kidnapping and murder

21   of the victims, flanked by police on either side of him,

22   not with the presence of counsel, what he did.  All of

23   that was televised three times within weeks of trial,

24   your Honor.  And what the court said was that given what

25   had happened under those circumstances, the trial that
```

1    followed was a hollow formality.

2            In the Daniels case in Riverside, that was a

3    state court case.  The defendant in that case was a

4    paraplegic who shot and killed two police officers.  And

5    what ended up happening is from the very beginning, the

6    press was referring to that defendant as the killer.  The

7    community was up in arms.  The Ninth Circuit found that

8    the police stations in Riverside were being deluged with

9    phone calls from the community.  3000 people attended the

10   funeral of one of those officers.  A statue was erected

11   in honor of one of the fallen officers, and it was

12   erected across from the Riverside courthouse.  A football

13   stadium was named in honor of one of those officers.  And

14   it was a constant drum beat leading up to that trial.

15           And what the Ninth Circuit said on habeas

16   review was we don't have a media record to review, but

17   the Supreme Court of California has made some findings,

18   we took a look at that and we say there is no way that

19   this person could have been given a fair trial in

20   Riverside County.

21           Those are the two cases that could possibly,

22   the defense could possibly rely on.  And neither one of

23   those cases help him.  This is not a community that has

24   been, as the cases have found, obsessed with this case.

25   Yes, the press has written about it, but your Honor can

```
 1   see that excluding FBI agents, AUSA's and members of the
 2   defense team and family, there are probably 20 people in
 3   this courtroom.  Plenty of space.  It is not being
 4   overrun by anyone.
 5          So if, ultimately, the question is has the
 6   press or the publicity leading up to trial, has it
 7   utterly corrupted the trial atmosphere, can this person
 8   be given a fair trial.  I think the answer has to be yes.
 9   Now, Mr. Hochman is correct that this case has some
10   unique circumstances of one unique circumstance being
11   that the defendant pleaded guilty, then withdrew his
12   guilty plea, but that is not actually that unique.
13          The defense never addresses the Patton versus
14   Yount case that we cited in our brief, your Honor, in
15   where the defendant went to trial, was convicted.  His
16   admission was -- his confession was admitted into
17   evidence.  There was discussion about his temporary
18   insanity.  He was tried again in the same district.  The
19   Supreme Court said not fatal.  Not fatal.
20          So and, again, your Honor, in all of those
21   cases that both the defense and the government cites,
22   what we see is really a community that is out for blood
23   for the defendant.  And that is not what is happening
24   here.  And nor do we have the vivid, hard to put out of
25   your mind confessions that existed in those other cases.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          Yes, Mr. Baca came into this courtroom, he

2    pleaded guilty, the press did write about it.  But if you

3    look at the record, the press also wrote about his

4    decision to withdraw his guilty plea, his claim that he

5    was withdrawing his guilty plea because the court and the

6    government had said things about him that were untrue,

7    that he needed to set the record straight, that if you

8    look at the Tanaka trial, it is really Mr. Tanaka who is

9    at fault here, not him.

10          And if you really examine the record as I am

11   sure this court has, there are a number, large numbers of

12   entries that either only mention Mr. Baca in passing, are

13   completely irrelevant to this case, talk about his

14   running regimen, just completely off point.  And, of

15   course, some of those cases or articles talk about the

16   good things Mr. Baca did.

17          And as we pointed out in our brief, after he

18   pleaded guilty, he was given an award by a temple here in

19   Los Angeles.  And in the article which we submitted as an

20   exhibit, the president of that synagogue says, I go out

21   in the community, we are just bombarded with supporters

22   for Mr. Baca, and I am sure if Mr. Baca ran for sheriff

23   today, he would be reelected.

24          It is just so dissimilar from the two cases

25   that could possibly help him, your Honor.  He has not

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   established -- and it is not saturation in a vacuum.  It
 2   is saturation with prejudicial and inflammatory publicity
 3   such that he cannot get a fair trial.
 4            I am not going to go on any longer, your
 5   Honor.  We did highlight that this is the largest
 6   judicial district in the nation.  If the question is can
 7   we find 12 impartial jurors that we can put in this box,
 8   I think the answer has to be yes.
 9            If the court has no questions, I will rest.
10       THE COURT:  No.
11       MR. JAUREQUI:  Thank you, your Honor.
12       MR. HOCHMAN:  Unless the court has any further
13   questions, I will submit, your Honor.
14       THE COURT:  All right.
15            Right.  The issue before the court is whether
16   there is presumed prejudice, and presumed prejudice
17   exists where the record indicates that the community is
18   saturated with prejudicial and inflammatory media
19   publicity about the crime.
20            The Supreme Court has emphasized that the
21   relevance of the size and characteristics of the
22   community in which the crime occurred is an important
23   factor.  And in the Skilling case, the court noted that
24   Houston which is the fourth most populous city in the
25   nation which coincidentally is smaller than Los Angeles,
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1     there were more than 4.5 individuals eligible for jury

2     duty who resided in the Houston area.

3           According to the Supreme Court, given the

4     large diverse pool of potential jurors, the suggestion

5     that 12 impartial individuals could not be impaneled is

6     hard to sustain.  Because the Central District's pool is

7     even larger and more diverse, this factor weighs strongly

8     against a presumption of prejudice.

9           In fact, the recent jury selection in the

10    related Tanaka trial, a case that garnered significant

11    pretrial media attention and similarly involved a

12    defendant who had recently been a candidate for

13    county-wide political office, it was not difficult to

14    conduct voir dire and seat a jury of impartial jurors.

15          Nor has there been the type of blatantly

16    prejudicial information of the type that readers or

17    viewers could not reasonably be expected to shut from

18    their sight.  Although the media has reported the

19    defendant's plea agreement, the court's rejection of it,

20    and the plea colloquy was not a dramatically staged

21    admission of guilty likely to be imprinted indelibly in

22    the mind of anyone who watched it.

23          The media reports cited by the defendant like

24    the pretrial publicity in Skilling has not been memorable

25    or prejudicial.  In this case, the news stories have not

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    presented the kind of vivid unforgettable information

2    that has been recognized as particularly likely to

3    generate prejudice.  And like Skilling, Los Angeles' size

4    and diversity have diluted the media's impact.  Moreover,

5    the pool from which the jury will be selected includes

6    not just the County of Los Angeles but surrounding

7    counties including Ventura, Santa Barbara and San Luis

8    Obispo where there has been less media attention.

9            In suggesting that this trial could move to

10   Santa Ana or Riverside, the defendant appears to be

11   conceding that a presumption of prejudice does not exist

12   through out the Central District.  Additionally, as in

13   Skilling, this trial will occur more than five years

14   after the government's investigation into civil rights

15   abuses at the Men's Central Jail that resulted in the

16   charges becoming public and more than four months after

17   media stories concerning the court's rejection of the

18   plea agreement.

19           And although reporters like those that covered

20   Enron, the decibel level of media attention has

21   diminished somewhat in this case as well.  And the

22   articles and the readership statistics relied on by the

23   defendant do not establish that this is one of the

24   extreme cases where juror prejudice can be presumed.

25   Most of the defendant's evidence of widespread media

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    attention relies on readership and viewership statistics

2    for particular media sources for entire months and do not

3    establish how many potential jurors actually viewed the

4    specific media reports concerning this particular

5    defendant.  Nor can press coverage in this case which is

6    predominantly factual be characterized as a barrage of

7    inflammatory publicity prior to trial amounting to a huge

8    wave of public passion against the defendant.

9             Indeed, despite the pendency of the charges

10   against the defendant, media accounts of the government's

11   investigation and the hundreds of letters that the

12   defendant was able to obtain from supporters prior to the

13   court's rejection of his plea agreement indicates that

14   the charges against the defendant and the pretrial

15   publicity have not inflamed the community such that a

16   presumption of prejudice attaches.  And, therefore, the

17   court denies the motion for change of venue.

18            All right.  I believe the defendant has also

19   filed a motion to strike certain surplusage, particularly

20   Paragraph 7B from the indictment.

21        MR. HOCHMAN:  Yes, your Honor.  Just paragraph 7B.

22   No other paragraph, your Honor.

23            And as we lay out in the motion, the reason

24   for -- we, actually, in evaluating and understanding the

25   standard, the noticed pleading standard for an

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    indictment, your Honor, we contrast 7B against 7A and 7C.

 2              In 7A and 7C, in each one of those, they

 3    relate that back to Sheriff Baca or Defendant Baca as it

 4    deals with information that was brought to his attention,

 5    your Honor, concerning prisoner abuse during the time

 6    period before the FBI's investigation.

 7              However, with respect to 7B, your Honor, we

 8    focus it on the fact that they -- that the prejudicial

 9    nature of this particular set of sentences is extreme.

10    When they are talking about allegations of LASD deputies

11    working on the 3000 floor of MCJ, Men's Central Jail,

12    called the 3000 Boys, and here is the language that we

13    particularly objected to:  Exhibited gang-like and

14    violent behavior, used excessive force against inmates

15    and falsified reports to cover up wrongdoing.  The

16    allegation, your Honor, does not link that, unlike 7A and

17    7C, to Sheriff Baca, to any of his knowledge, any of his

18    awareness, anything like that.

19              It is obviously dealing with the most -- of

20    the various allegations in 7A, B and C, the notion of

21    gang-like and violent behavior as exhibited by these 3000

22    Boys is the most prejudicial and inflammatory of the

23    language.  So we ask your Honor that with respect to this

24    particular paragraph, we ask his honor to either delete

25    or grant the motion that this paragraph constitutes
```

1  surplusage or excise the most inflammatory words of

2  exhibiting gang-like and violent behavior and excessive

3  force against the inmates and falsifying reports to cover

4  up wrongdoing since it is not linked to Sheriff Baca.

5        Unless the court has any further questions, I

6  would submit.

7        THE COURT:  All right.  Does the government wish

8  to be heard?

9        MR. JAUREQUI:  Very, very briefly.  Your Honor,

10 the standard again is whether the information that is --

11 the allegation that is being challenged is irrelevant to

12 the charges and contains inflammatory and prejudicial

13 material.  As we have argued in our brief, it is both

14 relevant and material because it goes to the defendant's

15 knowledge and his motive.

16        And as to prejudice and whether it is

17 inflammatory, while it is going to be prejudicial, most

18 evidence against the defendant is going to be

19 prejudicial.  Is it inflammatory?  We are not saying that

20 Mr. Baca himself is a member of a gang, and the cases

21 that the defense has cited tend to be about the

22 government trying to put information in front of the jury

23 that the defendant was a gang member.

24        We are not doing that.  We are saying he had

25 knowledge of this information.  We have produced

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    discovery to the defense suggesting that defendant did

2    have knowledge of this information.  We have alleged

3    that, and we have said that it was by no later than

4    September of 2011.  So we think it is both -- or it is

5    both relevant and material, and it is not inflammatory in

6    that it doesn't suggest that Mr. Baca is himself a member

7    of a gang.

8              So unless the court has any questions, we will

9    submit on our papers, your Honor.

10         THE COURT:  All right.

11             I will give you last word if --

12         MR. HOCHMAN:  Just very briefly, your Honor.

13             Again, when I look back at 7A and 7C, 7A, I

14   believe 7A and 7C will convey the information that the

15   government, I believe, through the evidence they produced

16   in discovery will be producing dealing with the ACLU's

17   reports as it says informed Defendant Baca of these

18   published reports of allegations of pervasive physical

19   abuse, violence and retaliation by LASD deputies against

20   inmates.  That is 7A.

21             7C talks about Mr. Baca being told by a

22   chaplain who witnessed deputy abuse of an inmate at MCJ.

23   I believe that will cover probably most if not all of the

24   type of information that will be presented.

25             7B talks about an allegation, who made the

1    allegation, where did it come from, is it founded,

2    unfounded, is it hearsay.  It is certainly not linked to

3    Sheriff Baca at all.  And that is why we focused, your

4    Honor, on 7B as the one paragraph that we think should be

5    excised from the indictment.

6         THE COURT:  All right.

7         Under the federal rules of criminal procedure,

8    motions to strike allegations from an indictment are to

9    be granted only when the challenged allegations are not

10   relevant to the charge and contain inflammatory and

11   prejudicial material.  Contrary to the defendant's

12   assertion that Paragraph 7B -- that particular paragraph

13   is modified by an introductory allegation in Paragraph 7

14   that alleges that the Defendant Baca was well aware of

15   allegations of rampant abuse of inmates at MCJ and the

16   Twin Towers.  And by no later than September 11th, the

17   following had occurred.

18        The court concludes that the allegations in 7B

19   are relevant and material to the charges and are not

20   inflammatory or prejudicial.  Specifically, Paragraph 7B,

21   like other allegations in Paragraph 7 is relevant to show

22   the defendant's knowledge of a culture of abuse and

23   corruption within the jails and provide a motive to

24   obstruct the federal investigation.  Nor is Paragraph 7B

25   unduly prejudicial or inflammatory.  That paragraph does

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   not allege that the defendant was a member of a gang and

2   only by implication that he was aware of a clique of

3   deputies.

4         Moreover, the government has stated in its

5   opposition that should it elect not to introduce evidence

6   of the defendant's awareness of the 3000 Boys or failed

7   in its efforts to elicit such evidence it will agree to

8   strike that paragraph from the first superseding

9   indictment.

10        And, therefore, the court denies the motion to

11   strike surplusage from the indictment.

12        I believe the government has filed some

13   motions in limine.  And I believe motion in limine No. 2

14   is to preclude evidence concerning the procedural history

15   of the case, and as I understand it, both parties have

16   agreed that that evidence won't be offered.

17        MR. HOCHMAN:  That's correct, your Honor.

18        THE COURT:  Okay.  Does the government wish to be

19   heard on motion in limine No. 1?

20        MR. FOX:  Your Honor, on these motions in limine,

21   we will just submit.

22        THE COURT:  Okay.

23        MR. HOCHMAN:  Briefly, your Honor.

24        On motion in limine No. 1, motion to exclude

25   government's prior statements, after our meet and confer,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    your Honor, I think your Honor has seen both which

 2    statements I was referring to, and I did my best to be

 3    very specific in that motion about statements that the

 4    government has made about Mr. Baca's conduct or lack

 5    thereof as it pertains to certain aspects of the

 6    conspiracy and then agreed also not to introduce the

 7    statements in the defense case in chief unless the

 8    government opens the door through some type of -- well,

 9    unless the government opens the door at which point I

10    would then come back to the court, bring my argument to

11    you as to why I believe the government has opened the

12    door and then seek to admit at that time.  If the

13    government never opens the door, you won't hear about

14    this issue again, your Honor.

15          THE COURT:  What is that show where they have door

16    prizes behind door No. 1?

17          MR. HOCHMAN:  Let's Make a Deal?

18          THE COURT:  There you go.

19          I don't think there are any prize behind any

20    of these doors, but that is fine.  You can raise it at

21    trial.  But what the government has said in its

22    sentencing positions, I don't think are -- I don't think

23    there is a door to be opened, but that is fine.  We can

24    decide that at trial.  But just so you are not surprised.

25          MR. HOCHMAN:  Thank you, your Honor.  And then
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    turning to motion in limine 3, your Honor, the government

2    sought to exclude certain evidence of good works and

3    remedial measures and subsequent cooperation.  It was

4    unclear what the government meant by good works, if they

5    were just talking about Mr. Baca receiving some award

6    from some organization for some good he did for that

7    organization unrelated to the jails, I told him that we

8    would not be seeking to introduce something that the law

9    did not allow us to do.

10           If on the other hand, for instance, they give

11   an example, they want -- we want to introduce the concept

12   of to rebut the motivational evidence that Mr. Baca was

13   treating or knew that inmates were being treated in an

14   abusive way.  And we want to introduce motivational

15   evidence saying that, no, Mr. Baca didn't know or

16   alternatively that his expressed policies at the time,

17   and I am talking the time of the conspiracy, your Honor,

18   were to treat inmates in a completely respectful way.

19   And one of the examples we gave the government which they

20   put in their motion is this education-based

21   incarceration.

22           Education-based incarceration, the whole

23   genesis of that program which started in the mid to late

24   2000's and went through the conspiracy period and still

25   exists today, the whole notion is to give inmates

1    something to do and make them a better person while they

2    are in the jails as opposed to just warehousing them,

3    your Honor, which in some ways is the opposite of -- the

4    opposite end of the spectrum from viewing them as some

5    problem you need to warehouse and use excessive force

6    against as to inmates who you need to rehabilitate and

7    provide tools so that when they get out, they actually

8    have something to do.

9           Also, those tools that you provide them at the

10   time make the jails a safer place as opposed to the

11   opposite motivation that the government would like to

12   bring to the court which is that Mr. Baca was presiding

13   over a situation where they were actually viewing the

14   inmates as enemies and trying to exert excessive force

15   and get away with it.  And so part of the issue here,

16   your Honor, is that to the extent something that deals

17   with the jails and Mr. Baca was doing directly with the

18   inmates is at the same time as the conspiracy which is

19   the 2011 period.

20          I believe that the government's argument said,

21   well, if it covers the conspiracy period, we understand

22   that that could be potentially admissible or relevant

23   evidence.  We obviously need to hear what the evidence

24   is.  What they were concerned about is situations that

25   went after the conspiracy period which is 2000, roughly

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      September of 2011.

2              Where I brought -- the argument I made to the

3      government which they put in their papers is the same

4      motivation essentially for the actions in the interview

5      of 2013 which are charged as criminal false statements,

6      that same motivation that the government thinks that

7      Mr. Baca was possessing, namely, that the reason he

8      underplayed and answered false statements about his role

9      in the offense is he didn't want the government to find

10     out that he was involved in this obstruction of justice

11     that led to the FBI not being able to carry out its

12     investigation into civil rights abuses.

13             That same motivation, your Honor, is the same

14     motivation in 2011.  Mr. Baca is supposedly is part of a

15     conspiracy and to obstruct justice because he doesn't

16     want the FBI to find out his role or for the matter

17     anybody else's role in connection with the alleged abuse

18     of inmates' civil rights.

19             So the only other issue that I believe this

20     motion poses is the timeframe, that somehow they want to

21     cut off the timeframe and everything after September,

22     2011, automatically becomes irrelevant.  Our timeframe,

23     though, continues till April 12th, 2013 when the same

24     false statement is charged dealing with obstruction of

25     justice which is why it is material in large part.  And

1    that is one of the issues that we are raising for the

2    court in an in limine proceeding.

3              Unless the court has any questions.

4         THE COURT:  Oh.  I have a lot of questions.

5              Let me hear from the government.

6         MR. FOX:  Sure, your Honor.

7              The conspiracy -- I think that Mr. Hochman

8    sort of confuses the motivations by talking about

9    two different motivations and then making them one.  We

10   are not alleging that Mr. Baca committed any abuse or has

11   any criminal responsibility for the abuse that was

12   happening in Men's Central Jail.

13             We do believe that his motive for keeping the

14   FBI out and keeping the grand jury away from the jails

15   was because he didn't want the federal grand jury to find

16   out about the abuses going on.  That doesn't mean that

17   things like education-based incarceration that may have

18   occurred in 2011 should come in.

19             What Mr. Hochman is trying to do is to have a

20   404(b) purpose and show that Mr. Baca had a propensity to

21   treat inmates right, therefore, he did not commit a crime

22   that is charged in the indictment.  That is really what

23   he is trying to seek there, and that is, of course,

24   impermissible under 404(b).

25             With respect to anything that occurred after

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    September 11th, September of 2011, excuse me, the

2    commander's task force, the CCJB remedial measures, any

3    cooperation with the government that occurred after

4    September of 2011, that has nothing do with the

5    conspiracy and has nothing do with the false statements.

6    That is, again, his way of trying to elicit good acts

7    that are not admissible at trial.

8         So I think that Mr. Hochman is just trying to

9    mix it all up into a bowl and hope that it looks like it

10   is the same substance at the end, but that is not what it

11   is.

12        THE COURT:  Well, I am not sure that this motion

13   is quite ripe because the only thing that I have heard

14   that you both -- well, as I understand it, are you going

15   to seek to introduce into evidence the LASD's program,

16   education-based incarceration program?

17        MR. HOCHMAN:  Your Honor, through either

18   cross-examination of the government witness or

19   potentially a defense witness, how the LASD was treating

20   inmates at the time.  The government says it was abusing

21   them.  We would like to show that they weren't abusing

22   them.  They want to show that Sheriff Baca was involved

23   or that his motivation was to cover up that abuse.  Our

24   response is, no, that his motivation wasn't to cover up

25   abuse because we have other reasons.  Amongst the reasons

```
 1   is that he instituted programs to treat the inmates with

 2   respect and dignity.

 3          It is a direct rebuttal to their motivational

 4   evidence.  And it was occurring during the conspiracy.

 5   It is not a situation where just all of a sudden it

 6   started to occur after the conspiracy.  It starts in the

 7   late 2000's and goes through the conspiracy.

 8          THE COURT:  Okay.  That is fine.

 9          Now, other than this education-based

10   incarceration program, what other good works are you

11   seeking to introduce?

12          MR. HOCHMAN:  This is what I told the government.

13   That was the central one that we had identified as

14   one that we believe is important.

15          Beyond that, your Honor, we are not seeking to

16   introduce awards, stuff unrelated to the jails, and we

17   haven't identified any other ones at this point.  It

18   doesn't mean that we won't in the next month or so, but,

19   at this point, we haven't identified any other, quote,

20   unquote, good works that we would seek to introduce.

21          THE COURT:  Okay.  Now, I gathered from the papers

22   that there is a dispute about at some point the sheriff's

23   department starts responding to subpoenas issued by the

24   government, and I thought that perhaps the defense wanted

25   to offer into evidence the fact that the sheriff's
```

1    department turned over, well, responded to the subpoenas.

2         MR. HOCHMAN:  Yes, your Honor.  We would, just

3    like the government would introduce if the sheriff

4    department never responded to the subpoenas or completely

5    failed to do it, we would ask the court to allow us to

6    introduce evidence that at some point the sheriff's

7    department did comply with the subpoena.

8              It doesn't necessarily mean as the government

9    will argue that they didn't obstruct, delay, hinder, et

10   cetera, the grand jury's investigation for a certain

11   period of time which they have alleged, but it does

12   answer a question that I think the jury is entitled to

13   know which is did they ever comply with these subpoenas.

14        THE COURT:  Let me ask you a question.  Do you

15   have any evidence that the defendant ordered the

16   sheriff's department to respond to those subpoenas?  Or

17   who made the decision to respond to the subpoenas?

18        MR. HOCHMAN:  Ultimately, that is the sheriff,

19   your Honor.

20        THE COURT:  Do you have any evidence that he

21   ordered somebody to respond to those subpoenas?

22        MR. HOCHMAN:  I would have to track down the chain

23   of command, your Honor, but, ultimately, the sheriff

24   would make that call, and we have evidence, actually, of

25   the discussions with Andre Birotte, the U.S. Attorney.

```
 1           THE COURT:  That's right.
 2           MR. HOCHMAN:  Directly with Andre Birotte where he
 3   agrees to first continue the subpoena production date
 4   and, then, eventually, the discussion is that the
 5   subpoenas will be complied with.
 6           THE COURT:  The discussion?
 7           MR. HOCHMAN:  Discussion between that sheriff
 8   meeting in September 27 of 2011 between the sheriff,
 9   Andre Birotte and Steve Martinez with the FBI who is the
10   head of the FBI's office.
11               After that, your Honor, I just don't have
12   handy that would show the chain of command that
13   ultimately has the sheriff as the one that is agreeing to
14   the subpoena production.  The one thing I will be able to
15   establish is that if the sheriff did not want the
16   subpoenaed production to occur, it would not have
17   occurred.
18           MR. FOX:  Your Honor, if I may respond to this.
19   Just the timing is important here.  The conspiracy is
20   over, according to the indictment, at the end of
21   September of 2011.  In October of 2011, Andre Birotte
22   writes Mr. Baca a letter and says we now want you to
23   respond to these subpoenas that you haven't responded to
24   yet.
25               And at that point, the county had actually
```

1  hired outside counsel to respond to the subpoenas.  It

2  was the County of Los Angeles, not the sheriff's

3  department that hired the outside counsel, and the County

4  of Los Angeles' outside counsel informed the U.S.

5  Attorney's office that they would cooperate with the

6  investigation.

7          So I am not sure whether, through counsel,

8  Mr. Baca then ever then told his line people that they

9  should respond to the subpoenas, but we are getting into

10 messy issues right now that are outside of the

11 conspiracy's range.  And I don't think that this is

12 indicative of a non corrupt intent.

13     THE COURT:  Well, so, by October, the agent had

14 already been confronted by two deputies; correct?

15     MR. HOCHMAN:  Yes, your Honor.  I believe

16 September 26.

17     THE COURT:  And by that time the sheriffs had

18 already gone over to the Superior Court seeking an arrest

19 warrant for that agent?

20     MR. HOCHMAN:  For which the agent -- well,

21 actually, no.  They actually never went over to Superior

22 Court to seek an arrest warrant is my information for the

23 agent.

24     MR. FOX:  Your Honor, you are recalling, I

25 believe, the search warrant that they were trying to get.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  I'm sorry.  The search warrant.

 2          MR. HOCHMAN:  Mr. Baca doesn't know about the

 3   search warrant.  We believe that the government has

 4   conceded that.

 5          THE COURT:  That is fine.  But by the time that

 6   they had already gone over in October, they had already

 7   gone over to the Superior Court seeking this order.

 8          MR. HOCHMAN:  Unbeknownst to Mr. Baca who was, I

 9   believe, on vacation at that time, your Honor.

10          THE COURT:  Okay.  All right.

11               Tentatively, and I am going to wait until I

12   see some of the evidence in this case, but, tentatively,

13   my view is probably to keep out this education-based

14   incarceration program.  I am not sure that is really

15   relevant.

16               And I am going to think a little bit more

17   about the issue of these subpoenas.  And I guess I would

18   like to know what particular subpoenas we are talking

19   about and when they were issued and who those subpoenas

20   were directed to.

21               And I think we will have some time to discuss

22   that issue prior to trial.

23          MR. FOX:  Your Honor, what we will do is we will

24   try to provide with you a log if we are able to do that

25   that will show when these subpoenas were issued.  I think
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   Mr. Hochman is probably referring to the ones that are

2   June, end of August, 2011, but we will discuss this with

3   the defense and we will try to figure out when those

4   records were provided to the government.

5        THE COURT:  Okay.  And that is a tentative view,

6   but we will see what the evidence shows at trial.

7        MR. HOCHMAN:  Okay.  And, your Honor, before I

8   would go into a cross-examination question of a

9   particular witness or obviously in the defense case, we

10  will raise it again with you.

11       So, hopefully, at that point, I can show

12  you -- better show you the contrast and why it is very

13  important when it goes to the motivation of someone who

14  is supposedly obstructing justice in connection with a

15  grand jury investigation of civil rights abuses of

16  inmates that that very person has directly taken actions

17  to promote the civil rights of inmates.

18       I think that contrast is what we would be

19  attempting to show the court and then make it relevant at

20  that point.

21       THE COURT:  Uh-huh.  Okay.

22       MR. FOX:  Your Honor, I have a couple of items to

23  raise.  First of all, given the length of the trial as

24  discussed today, if the defense case is going to go

25  four days, if we don't go Mondays, that puts us right up

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    to December 23rd when the parties finish, and I am

2    hopeful obviously that we can streamline our case, but

3    the history has shown that we have been about seven or

4    eight days in these trials on the case in chief for the

5    government.

6            So I am asking the court, if you are able to,

7    if your schedule allows it, to allow us to go Mondays not

8    on the 5th but on the 12th and the 19th if need be.

9        THE COURT:  Okay.

10       MR. FOX:  Then, secondly, based on discussions

11   that we have had with counsel, we have been meeting and

12   conferring on many issues.  I think one where we are not

13   able to reach a resolution that we just learned about is

14   on Mr. Baca's audio recording.  We have decided on which

15   portions we want to introduce as evidence.

16           We have shared that with the defense.  We had

17   a long meet and confer last week.  We then exchanged

18   additional e-mails on it, and I believe that we have

19   two different beliefs about how much of that would come

20   in under Rule 106 and other theories of admissibility.

21           So we would like to file a motion in limine at

22   this point.  I think we have exhausted all options.  I

23   think we would like to file a motion at this point on

24   Rule 106 and how much of his audiotape can come in.

25           This is something that we tried to address

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    earlier, but we have only been able to address this now

2    with the defense.

3        THE COURT:  Well.  Is what the defense thinks that

4    it ought to be able to play additional portions of this

5    audiotape?

6        MR. FOX:  Correct.  And I will let Mr. Hochman

7    talk about this.

8        MR. HOCHMAN:  Yes, your Honor.  The way the

9    questioning, over the four-and-a-half hours, proceeded is

10   it was kind of circular.  They would hit an issue.  They

11   would go on to another issue.  They would hit the issue

12   again and sometimes even a third time.  What we have been

13   trying to negotiate with them is that the stuff that is

14   completely unrelated to anything in this case to excise

15   that.

16       Where we see situations where the issue is

17   being repeated in different situations and let's say only

18   the third one is charged as the false statement, we

19   believe that the other two inform the context behind the

20   answers the third time it would be asked.  And sometimes

21   it is not asked exactly the same way.

22       And sometimes the answers are all over the

23   place, your Honor, so that is sort of what we have been

24   trying to go back and forth on is saying, well, you have

25   got this amount of audio recording you want to introduce,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    we believe we should get a little bit more over here and
 2    a little bit more over here that sort of forms that sort
 3    of subset of the tape dealing with various issues.  And,
 4    again, it is not like it was organized in like we are
 5    going to do this issue 1 through 5, 1, 2, 6, 3, 7, 8, 9
 6    back to 2 and 3.
 7         THE COURT:  Why isn't this like any other
 8    statement of a defendant where the government kind of
 9    picks and chooses what it wants to play, the defense, and
10    I am sure you faced this when you were sitting on that
11    side, and the defense says, well, we want to play this
12    portion because we like what he said here.
13              And the argument always is, the argument I
14    think is well established by the circuit that 106 has no
15    applicability in that context, and the government gets to
16    play what it wants to play, and the circuit is pretty
17    clear, the defendant wants to do it, that is hearsay and
18    it doesn't come in.
19         MR. HOCHMAN:  And I think it is the 106 issue,
20    your Honor.
21         THE COURT:  The 106 issue has been clearly decided
22    by the circuit.  It doesn't apply in that context.
23         MR. HOCHMAN:  Well, actually, the cases we have
24    looked at, your Honor, apply it to the extent that the
25    tape can't be misleading, it can't be incomplete.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              And with respect to context, your Honor, the
 2    courts have actually been very clear that the context
 3    dealing for materiality as a separate element for false
 4    statement, the context of the answer in connection with
 5    the entire interview actually plays a role as well, your
 6    Honor.
 7              So I think, again, hopefully, we can agree to
 8    the 106 aspects when the government plays its portion of
 9    the tape.  And if the government doesn't want and we
10    believe the rest of it constitutes the appropriate
11    context, then we can play that in the defense case if the
12    court so permits.
13         MR. FOX:  And, your Honor, you are saying I think
14    why we were having trouble with this issue because I
15    think what Mr. Hochman just said there is he believes
16    that the entire context of the interview comes in.  And I
17    believe with the expert, he will correct me if I am
18    wrong, but I think Mr. Hochman believes that he is
19    allowed to play the entire tape because it might go to
20    his expert's opinion as well.
21              So what we need is some certainty on this
22    issue before trial.  It is our case in chief.  If it is a
23    106 issue, we need to edit the tapes the right way.  We
24    can't be left the day before trial or during trial trying
25    to edit the tapes at that point.  It is just going to
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    make things very difficult for us.  So we need certainty
 2    on this issue.  We have not been able to reach an
 3    agreement.  So we are asking for leave to file an
 4    additional motion in limine on that issue.
 5          And the other issue, your Honor, that we would
 6    like to raise if it is necessary, and you will tell me if
 7    it is not, but some of the things that he raised in the
 8    motion to recuse me, you have indicated are irrelevant,
 9    we think are irrelevant.  To the extent that we need to
10    file a motion on that, we are happy to do so.  But we
11    weren't aware that he wanted to bring up all these
12    negotiations and other things as evidence in his case
13    until now.  So we have not been able to file at this
14    point.
15          MR. HOCHMAN:  I don't think I said that, your
16    Honor.  I am not talking about negotiations outside the
17    tape in connection with this issue.
18          MR. FOX:  Separate issues, your Honor.
19          THE COURT:  I know.
20          MR. FOX:  Thank you.
21          THE COURT:  All right.  When can you file your
22    motion concerning the Rule 106?
23          MR. FOX:  What I would suggest, your Honor, today,
24    obviously is Monday.  We have expert filings due next
25    Monday.  I think that the problem is our meet-and-confer
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   is going to take a very long time.  I think we have
 2   already determined that.  We have met and conferred.  I
 3   think we probably need to have one more session.  I think
 4   we could probably get something on file by Monday.
 5            We will commit to that with the expert motions
 6   as well for the 106 issue.  That would allow the defense
 7   a week to respond, and then we could have a hearing if
 8   your Honor would allow it on November 21.  We are going
 9   to be here anyway.
10        THE COURT:  Okay.  Can you meet those deadlines?
11        MR. HOCHMAN:  Yes, your Honor.  We will, again,
12   take another stab with the government to see if we can
13   come up with as much as we can agree to and then leave
14   the rest for hopefully the court to decide.
15        THE COURT:  Okay.
16        MR. FOX:  And, then, your Honor, there is the
17   issue with the items raised in the motion to recuse me.
18            Do you need us to file something on that?
19        THE COURT:  I don't think so.
20        MR. FOX:  Okay.  Thank you, your Honor.
21        MR. HOCHMAN:  And I'm sorry, your Honor, just to
22   belabor one small point in that ruling.  The admonition
23   which is actually right in the tape, your Honor.  You
24   will see the section where Mr. Fox before he asks any
25   question gives an admonition.  If he had told Mr. Baca in
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    that admonition that, look, Mr. Baca, this is not a sworn

2    interview, but any statement you make is to federal law

3    enforcement and if it is false, you can be prosecuted for

4    it.

5            The government would certainly be asking the

6    court to introduce that statement and Mr. Baca's

7    acknowledgment of that statement as part of its evidence

8    to show his willfulness, his knowledge, his intent, all

9    that sort of stuff.

10           The absence of that statement and the fact it

11   doesn't exist is what we would argue also goes to show

12   Mr. Baca's lack of certain knowledge, intent, et cetera,

13   et cetera, and whatever admonition was given.  So to the

14   extent that Mr. Fox is interpreting the court's statement

15   that the admonition actually given in the interview,

16   whatever it is, shouldn't be included as part of the

17   taped proceedings, I think that is what I would like to

18   make sure we get guidance from the court now so we don't

19   have a kerfuffle over it and then have to go back to the

20   court later.

21       MR. FOX:  Your Honor, we are not -- this can be

22   subject to a meet-and-confer with us.  We are certainly

23   going to agree, and we already have agreed that that

24   portion comes in as evidence.

25       MR. HOCHMAN:  That is fine then.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        MR. FOX:  If Mr. Hochman wants to argue that

 2   Mr. Baca as sheriff for Los Angeles County for 18 years,

 3   I think it was, did not know that it is a crime to lie to

 4   the federal government and that is his defense, we

 5   welcome that defense, your Honor.

 6        MR. HOCHMAN:  Thank you, your Honor.

 7             I think Mr. Fox has cleared up this issue.

 8        THE COURT:  Okay.

 9             Anything else?

10        MR. FOX:  Your Honor, we attached a juror

11   questionnaire to our response for the change of venue.

12   Based on your ruling today, I don't know that it is

13   necessary.  Although, do you want us to provide the court

14   with something that you can use as a guide for the jury

15   to fill out before they get here?  That might be helpful

16   to the parties.

17        MR. HOCHMAN:  Your Honor, we agree with probably

18   80, 85 percent, maybe even 90 percent of the questions

19   that they proposed.  If the court is so inclined, we can

20   meet and confer on our observations and hopefully come up

21   with a joint proposed jury questionnaire.

22             I think in light of the issues we did raise in

23   the venue motion, it would be much more efficient to have

24   each of the jurors answer those questions ahead of time

25   than having to go through 48 questions with each juror
```

1    once they take the jury's seat.

2         THE COURT:  I am not inclined at this point to use

3    a questionnaire.  I haven't used one in any of the other

4    cases.  We really haven't had any problems getting a jury

5    in any of these cases, and I don't anticipate that we

6    will have a problem getting a jury in this case.

7              If you want to submit questions that you want

8    me to ask the jury, that is fine.  That is what we have

9    done in the other cases.  I will look those over, decide

10   which ones I am going to use and which ones I am not, but

11   I don't anticipate at this point using a questionnaire.

12        MR. FOX:  And, your Honor, you have time qualified

13   jurors in the past.  Given the time of year, that is

14   going to be an issue I think.

15        THE COURT:  Okay.  I think we did this in the last

16   two cases is that we did do a time qualification for the

17   jurors which I think will speed up the selection

18   especially given the timeframe in which this case is

19   going to go.  And what we have asked potential jurors is

20   whether or not they have some preplanned vacation such

21   that they can't be with us, and they will have to give us

22   evidence of that.  You will have a chance to look over

23   those questionnaires before the actual questioning

24   occurs.  And we will see if we can agree that for those

25   people who have prepaid vacations or a good reason why

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    they cannot be here for that time period can be excused.

2              So you might want to think about that.  I can

3    submit to both sides that questionnaire that I think we

4    used in the last two trials, and you can take a look at

5    that and see if you can agree.

6         MR. FOX:  And the final thing I want to raise,

7    your Honor, is you mentioned before the Tanaka trial, it

8    might be a good idea for an anonymous jury and you

9    mentioned because the one juror in a previous trial felt

10   threatened.  The defense attorney didn't agree to that,

11   and then we had a juror who was concerned about her

12   security so it became an issue with the Tanaka trial.

13   And I just suggest to your Honor that we consider that

14   issue again.

15        THE COURT:  I think that is a good -- I thought it

16   was a good suggestion last time and probably is a good

17   suggestion this time.  In essence, what it is going to

18   mean is that we will address jurors by their badge

19   numbers rather than their names.  And I think in one of

20   the trials we had, one of the jurors became concerned

21   about the ability of law enforcement to track her down.

22   They knew her name and could have tracked where she

23   lived, and then that same issue came up in the Tanaka

24   trial.

25             So I would ask everybody to consider that, see

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    if we can come to some agreement.  But I am -- my

2    experience is such that I am probably inclined to do

3    that.  And we can tell the jury that is just a practice

4    that this court engages in, and, in fact, I used it in

5    the last trial that we had last week I think.  So that

6    is, given the nature of this case, I am inclined to do

7    that.

8         MR. HOCHMAN:  We will get back to you on the

9    defense position, your Honor.

10        THE COURT:  That is fine.

11        MR. HOCHMAN:  Thank you.

12        MR. FOX:  And November 21, you are going to be in

13   the new courthouse; is that right?

14        THE COURT:  I will probably be still arm wrestling

15   with some Superior Court judge about keeping this seat,

16   but we will let you know but it is likely that I will be

17   there on November 21.

18        MR. FOX:  Thank you, your Honor.

19        MR. HOCHMAN:  Thank you very much, your Honor.

20        THE COURT:  All right.  Thank you.

21   (Proceedings concluded.)

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1                          CERTIFICATE

 2

 3

 4    I hereby certify that pursuant to Section 753, Title 28,

 5    United States Code, the foregoing is a true and correct

 6    transcript of the stenographically reported proceedings held

 7    in the above-entitled matter and that the transcript page

 8    format is in conformance with the regulations of the

 9    Judicial Conference of the United States.

10    Date:  November 29, 2016

11

12     /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**MR. FOX: [28]**   3/7 3/19 4/5
4/10 11/21 23/21 26/16 56/19
61/5 65/17 66/23 67/22 68/21
69/9 70/5 72/12 73/17 73/19
73/22 74/15 74/19 75/20
75/25 76/9 77/11 78/5 79/11
79/17
**MR. HOCHMAN: [127]**
**MR. JAUREQUI: [3]**   43/24
48/10 53/8
**THE CLERK: [1]**   3/3
**THE COURT: [139]**

**—**

**-and [3]**   2/4 2/5 2/11

**/**

**/s [1]**   80/12

**1**

**106 [9]**   69/20 69/24 71/14
71/19 71/21 72/8 72/23 73/22
74/6
**11th [2]**   55/16 62/1
**12 [5]**   25/24 35/2 40/21 48/7
49/5
**12th [3]**   2/6 60/23 69/8
**13 [1]**   25/24
**14 [1]**   35/2
**15-minute [1]**   9/19
**150,000 [4]**   34/15 34/18
34/23 44/17
**16-66 [2]**   1/8 3/6
**1601 [1]**   2/11
**18 [1]**   76/2
**1960's [1]**   37/20
**1963 [1]**   44/16
**19th [1]**   69/8

**2**

**20 [1]**   46/2
**20,000 [1]**   34/25
**20-minute [1]**   44/19
**2000 [1]**   59/25
**2000's [2]**   58/24 63/7
**2011 [12]**   54/4 59/19 60/1
60/14 60/22 61/18 62/1 62/4
65/8 65/21 65/21 68/2
**2013 [2]**   60/5 60/23
**2015 [4]**   11/8 25/20 25/20
25/22
**2016 [5]**   1/15 3/1 16/19
39/15 80/10
**2050 [1]**   2/12
**21 [3]**   74/8 79/12 79/17
**23rd [1]**   69/1
**26 [1]**   66/16
**27 [1]**   65/8
**28 [1]**   80/4
**29 [1]**   80/10
**2:57 [1]**   3/2

**3**

**30 [1]**   1/15
**30,000 [1]**   35/1
**3000 [5]**   45/9 52/11 52/12
52/21 56/6
**302 [2]**   12/24 12/25
**31 [1]**   3/1
**312 [2]**   1/20 2/6
**33 percent [1]**   35/13

**4**

**4.5 [1]**   49/1
**404 [2]**   61/20 61/24
**436 [1]**   1/20
**48 [1]**   76/25

**5**

**50 [2]**   32/12 35/13
**50,000 [2]**   34/25 35/3
**5th [1]**   69/8

**6**

**66 [2]**   1/8 3/6

**7**

**7-and-a-half [1]**   34/21
**753 [1]**   80/4
**7A [8]**   52/1 52/2 52/16 52/20
54/13 54/13 54/14 54/20
**7B [10]**   51/20 51/21 52/1
52/7 54/25 55/4 55/12 55/18
55/20 55/24
**7C [6]**   52/1 52/2 52/17 54/13
54/14 54/21

**8**

**80 [1]**   76/18
**85 percent [1]**   76/18

**9**

**90 percent [1]**   76/18
**90012 [2]**   1/20 2/6
**90404 [1]**   2/12
**95 percent [1]**   41/16
**9858 [2]**   1/19 80/12

**A**

**ability [2]**   37/23 78/21
**able [14]**   27/5 28/2 35/5
41/25 51/12 60/11 65/14
67/24 69/6 69/13 70/1 70/4
73/2 73/13
**about [83]**
**above [1]**   80/7
**above-entitled [1]**   80/7
**absence [1]**   75/10
**absolutely [5]**   8/11 12/19
18/3 24/18 32/20
**abuse [10]**   52/5 54/19 54/22
55/15 55/22 60/17 61/10
61/11 62/23 62/25
**abuses [4]**   50/15 60/12 61/16
68/15
**abusing [2]**   62/20 62/21
**abusive [1]**   58/14
**according [3]**   38/1 49/3
65/20
**accounts [1]**   51/10
**accurate [6]**   3/22 15/16
15/17 15/18 15/23 16/7
**acknowledgment [1]**   75/7
**ACLU's [1]**   54/16
**across [1]**   45/12
**actions [2]**   60/4 68/16
**acts [1]**   62/6
**actual [11]**   12/11 14/24
22/16 32/9 37/14 39/4 39/8
40/6 40/7 43/15 77/23
**actually [40]**   4/23 5/6 10/8
12/21 13/13 13/18 15/19
17/14 18/1 19/4 19/7 20/21
20/22 22/14 22/22 26/6 28/18
32/6 32/15 36/1 36/7 36/14
37/11 37/19 37/21 42/2 46/12
51/3 51/24 59/7 59/13 64/24
65/25 66/21 66/21 71/23 72/2
72/5 74/23 75/15
**addition [2]**   29/17 30/3
**additional [4]**   16/5 69/18
70/4 73/4
**Additionally [1]**   50/12
**address [7]**   3/17 10/14 11/22
32/16 69/25 70/1 78/18
**addresses [2]**   32/18 46/13

**addressing [1]**   33/14
**adjudicating [1]**   34/16
**admissibility [1]**   69/20
**admissible [13]**   5/3 5/23
7/11 23/9 23/12 23/14 23/15
26/13 27/9 28/3 30/15 59/22
62/7
**admission [4]**   42/11 43/7
46/16 49/21
**admissions [1]**   43/4
**admit [1]**   57/12
**admitted [1]**   46/16
**admonishment [3]**   22/4 23/4
30/6
**admonition [8]**   22/22 22/24
23/7 74/22 74/25 75/1 75/13
75/15
**admonitions [2]**   17/22 23/8
**advocate [3]**   11/4 17/20 31/8
**affect [1]**   38/9
**after [17]**   11/9 13/15 16/6
19/11 19/11 25/20 25/22
47/17 50/14 50/16 56/25
59/25 60/21 61/25 62/3 63/6
65/11
**afternoon [4]**   3/8 3/11 3/12
3/15
**afterwards [3]**   15/9 16/3
27/11
**again [27]**   6/11 8/9 9/11 12
12/2 13/10 15/12 22/2 22/19 25/1
26/23 33/13 38/11 38/16 43/8
43/21 44/3 46/18 46/20 53/10
54/13 57/14 62/6 68/10 70/12
71/4 72/7 74/11 78/14
**against [13]**   11/11 24/5 41/6
49/8 51/8 51/10 51/14 52/1
52/14 53/3 53/18 54/19 59/6
**agent [13]**   10/3 13/1 25/9
25/10 25/11 27/1 27/1 27/5
28/1 66/13 66/19 66/20 66/23
**agents [5]**   6/23 9/24 16/15
29/19 46/1
**ago [1]**   18/22
**agree [8]**   56/7 72/7 74/13
75/23 76/17 77/24 78/5 78/10
**agreed [5]**   10/9 12/10 56/16
57/6 75/23
**agreeing [1]**   65/13
**agreement [5]**   49/19 50/18
51/13 73/3 79/1
**agrees [1]**   65/3
**ahead [7]**   12/20 14/14 28/8
28/15 29/1 32/4 76/24
**aimed [1]**   31/1
**all [44]**
**allegation [5]**   52/16 53/11
54/25 55/1 55/13
**allegations [9]**   5/1 52/10
52/20 54/18 55/8 55/9 55/15
55/18 55/21
**allege [1]**   56/1
**alleged [3]**   54/2 60/17 64/11
**allegedly [1]**   7/14
**alleges [1]**   55/14
**alleging [1]**   61/10
**allotted [1]**   10/12
**allow [10]**   5/8 8/16 9/5
18/15 23/14 58/9 64/5 69/7
74/6 74/8
**allowed [2]**   17/8 72/19
**allows [2]**   28/21 69/7
**alluded [1]**   24/1
**almost [2]**   12/6 32/12
**along [1]**   3/13
**already [6]**   66/14 66/18 67/6
67/6 74/2 75/23
**also [5]**   47/3 51/18 57/6
59/9 75/11

**A**

alternates [1] 35/3
alternative [6] 5/18 20/8
20/20 21/13 21/23 43/11
alternatively [1] 58/16
although [4] 9/16 49/18
50/19 76/13
always [5] 23/13 39/20 41/23
41/25 71/13
am [39] 10/18 11/12 16/1
16/10 16/12 18/23 24/3 24/6
26/8 27/14 27/19 28/7 29/6
36/8 36/17 37/6 42/17 42/22
43/5 47/10 47/22 48/4 58/17
62/12 66/17 67/14 67/16
69/1 69/6 71/10 72/17 73/16
77/2 77/10 77/10 79/1 79/2
79/6
Amendment [3] 4/21 5/9 14/22
America [1] 1/6
among [1] 7/18
amongst [3] 7/17 13/10 62/25
amount [1] 70/25
amounting [1] 51/7
Ana [1] 50/10
analogy [3] 18/21 18/22 34/4
analysis [3] 5/7 38/10 40/8
ANDERSON [1] 1/3
Andre [4] 64/25 65/2 65/9
65/21
anecdotally [1] 41/16
Angeleno [1] 35/22
ANGELES [13] 1/14 1/20 2/6
3/1 30/17 37/8 42/20 42/21
47/19 48/25 50/6 66/2 76/2
Angeles' [2] 50/3 66/4
anonymous [1] 78/8
another [5] 15/5 43/18 43/20
70/11 74/12
answer [17] 10/4 13/23 16/4
16/7 17/15 18/5 18/6 20/18
24/17 27/20 27/21 28/6 46/8
48/8 64/12 72/4 76/24
answered [3] 13/8 16/5 60/8
answers [6] 14/1 15/15 24/21
28/2 70/20 70/22
anticipate [3] 28/7 77/5
77/11
anticipated [1] 10/9
anticipating [1] 27/19
any [37] 6/3 11/9 15/10
21/25 24/12 27/2 27/3 27/12
29/21 30/11 37/1 37/10 38/9
42/10 42/16 48/4 48/12 52/17
52/17 53/5 54/8 57/19 57/19
61/3 61/10 61/11 62/2 63/17
63/19 64/15 64/20 71/7 74/24
75/2 77/3 77/4 77/5
anybody [4] 6/9 6/14 37/3
60/17
anyone [2] 46/4 49/22
anything [14] 5/3 10/18 11/1
23/24 25/21 25/22 32/6 36/1
36/13 36/14 52/18 61/25
70/14 76/9
anyway [2] 9/13 74/9
appear [1] 30/10
APPEARANCES [1] 2/1
appeared [1] 37/7
appears [2] 31/1 50/10
applicability [1] 71/15
apply [3] 17/21 71/22 71/24
appointed [1] 4/4
approaching [1] 44/12
appropriate [1] 72/10
approximately [1] 39/14
April [1] 60/23
April 12th [1] 60/23

are [97]
area [4] 41/20
areas [2] 22/1 30/3
argue [8] 8/10 13/10 24/19
24/20 41/15 64/9 75/11 76/1
argued [1] 53/13
argues [1] 31/4
arguing [1] 17/8
argument [21] 11/2 13/4 17/3
17/24 18/16 19/17 19/24
20/13 20/25 21/21 31/7 31/10
31/18 33/21 40/13 41/23
57/10 59/20 60/2 71/3 71/13
arguments [3] 20/10 21/19
24/20
arm [1] 79/14
arms [1] 45/7
around [3] 18/10 25/19 34/7
arrest [2] 66/18 66/22
article [2] 36/4 47/19
articles [2] 47/15 50/22
articulates [1] 17/20
as [72]
ask [25] 12/5 14/13 16/14
16/14 18/14 20/5 20/15 20/19
21/20 22/1 22/9 22/16 22/17
22/19 26/14 27/19 39/5 43/11
43/11 52/23 52/24 64/5 64/14
77/8 78/25
asked [24] 12/16 13/3 13/6
13/8 13/13 14/4 14/6 14/7
14/8 14/11 14/15 14/17 14/25
17/4 17/5 18/4 18/7 18/9
19/7 22/21 27/6 70/20 70/21
77/19
asking [9] 6/11 13/12 14/21
19/5 19/10 27/6 69/6 73/3
75/5
asks [2] 13/23 74/24
aspect [1] 8/12
aspects [4] 5/16 26/21 57/5
72/8
assertion [1] 55/12
assist [1] 25/6
assistant [1] 7/2
assistants [2] 7/3 7/5
assume [3] 17/1 17/8 19/15
assuming [2] 38/12 40/6
atmosphere [1] 46/7
attached [2] 40/11 76/10
attaches [1] 51/16
attempt [1] 12/7
attempting [1] 68/19
attended [2] 29/18 45/9
attention [7] 27/7 28/16
49/11 50/8 50/20 51/1 52/4
attorney [6] 2/5 6/20 11/10
11/25 64/25 78/10
Attorney's [2] 42/21 66/5
attorneys [5] 7/1 22/6 26/8
29/19 30/9
audio [4] 19/10 26/1 69/14
70/25
audiotape [7] 24/14 24/15
26/4 26/7 26/11 69/24 70/5
August [1] 68/2
AUSA [1] 2/5
AUSA's [2] 25/15 46/1
automatically [1] 60/22
availability [1] 44/16
available [3] 25/8 29/10
29/22
avenues [1] 5/19
avoid [2] 21/20 21/20
award [2] 47/18 58/5
awards [1] 63/16
aware [6] 25/7 27/10 27/13
55/14 56/2 73/11
awareness [2] 52/18 56/6

away [3] 7/22 59/15 61/14

**B**

Baca [54]
Baca's [8] 12/13 14/21 22/6
39/14 57/14 69/14 75/6 75/12
back [13] 15/17 20/23 21/9
28/4 34/12 37/17 52/3 54/13
57/10 70/24 71/6 75/19 79/8
badge [1] 78/18
balance [1] 43/9
balancing [2] 35/14 43/8
Barbara [1] 50/7
barrage [1] 51/6
based [11] 15/16 24/7 26/3
58/20 58/22 61/17 62/16 63/9
67/13 69/10 76/12
basically [4] 4/1 18/1 23/1
38/19
basis [3] 32/5 32/7 39/1
be [110]
beat [1] 45/14
became [2] 78/12 78/20
because [39] 7/23 8/13 8/14
12/4 12/6 12/22 13/3 13/17
18/21 19/6 19/14 25/19 26/24
26/24 27/3 27/22 27/22 27/23
28/12 28/13 30/17 31/7 31/11
38/5 40/2 40/16 41/4 41/10
47/5 49/6 53/14 60/15 61/15
62/13 62/25 71/12 72/14
72/19 78/9
becomes [1] 60/22
becoming [1] 50/16
been [31] 4/13 12/15 17/8
18/2 26/24 30/9 34/1 34/4
35/5 35/11 35/18 36/1 38/25
42/25 45/19 45/24 49/12
49/15 49/24 50/2 50/8 66/14
69/3 69/11 70/1 70/12 70/23
71/21 72/2 73/2 73/13
before [17] 3/17 5/13 22/23
29/11 29/13 33/12 33/16
33/19 48/15 52/6 68/7 72/22
72/24 74/24 74/76 15 77/23 78/7
begin [1] 5/1
beginning [1] 45/5
behalf [2] 3/9 11/4
behavior [3] 52/14 52/21
53/2
behind [3] 57/16 57/19 70/19
being [14] 15/13 18/23 28/25
42/16 44/7 44/7 45/8 46/3
46/10 53/11 54/21 58/13
60/11 70/17
belabor [2] 24/9 74/22
Belichick [1] 4/19
beliefs [1] 69/19
believe [40] 4/3 4/7 7/10
8/5 9/16 14/8 16/6 17/21
18/25 24/7 26/22 27/17 27/18
28/5 32/23 38/6 39/13 39/15
39/18 41/19 51/18 54/14
54/15 54/23 56/12 56/13
57/11 59/20 60/19 61/13
63/14 66/15 66/25 67/3 67/9
69/18 70/19 71/1 72/10 72/17
believed [1] 20/7
believes [4] 14/2 27/9 72/15
72/18
belong [1] 27/3
besides [2] 5/19 23/7
best [4] 13/11 14/2 26/23
57/2
better [3] 4/23 59/1 68/12
between [5] 31/8 35/14 42/12
65/7 65/8
Beyond [1] 63/15
bias [5] 11/13 23/13 23/13

**B**

bias... [2]   23/24 24/5
big [1]   41/24
bill [2]   4/19 11/14
Bills [4]   4/16 4/20 18/18
18/19
Birotte [4]   64/25 65/2 65/9
65/21
bit [3]   67/16 71/1 71/2
blatantly [1]   49/15
blood [1]   46/22
blur [1]   31/8
BOCKIUS [1]   2/10
bombarded [1]   47/21
bond [1]   3/14
both [11]   5/22 23/18 36/4
46/21 53/13 54/4 54/5 56/15
57/1 62/14 78/3
Boulevard [1]   2/11
bowl [1]   62/9
box [1]   48/7
Boys [3]   52/12 52/22 56/6
Brady [4]   4/17 4/25 4/25 5/3
BRANDON [2]   2/4 3/8
Brian [1]   25/10
brief [3]   46/14 47/17 53/13
briefly [7]   26/18 43/25 44/5
44/14 53/9 54/12 56/23
bring [4]   28/15 57/10 59/12
73/11
bringing [1]   43/21
broad [1]   9/4
broadcast [6]   34/7 34/16
34/24 35/1 35/4 37/18
brought [5]   19/23 20/12 29/1
52/4 60/2
Buffalo [3]   4/16 4/20 18/19
bullet [1]   24/10
burden [2]   29/12 29/15
Byong [1]   25/10

**C**

CA [2]   2/6 2/12
CALIFORNIA [6]   1/2 1/14 1/20
3/1 40/14 45/17
call [18]   4/21 5/9 5/10 5/14
5/17 6/12 10/15 10/16 10/24
14/22 15/3 16/23 18/13 27/16
28/12 28/21 29/12 64/24
called [3]   28/6 30/11 52/12
calling [2]   3/6 5/19
calls [1]   45/9
came [2]   47/1 78/23
can [46]
can't [15]   12/3 12/20 16/14
26/24 31/15 38/17 38/19
38/21 39/7 39/9 40/2 71/25
71/25 72/24 77/21
candid [1]   20/21
candidate [1]   49/12
cannot [5]   25/14 25/18 36/5
48/3 78/1
cares [1]   8/2
carry [1]   60/11
Carter [16]   6/21 11/5 11/6
11/16 11/20 12/3 12/4 12/15
12/18 12/21 12/24 14/4 16/15
16/16 25/9 25/18
case [64]
cases [23]   11/11 15/6 15/11
28/11 41/16 44/6 44/10 44/11
44/15 45/21 45/23 45/24
46/21 46/25 47/15 47/24
50/24 53/20 71/23 77/4 77/5
77/9 77/16
CCJB [1]   62/2
central [10]   1/2 34/20 43/18
43/19 49/6 50/12 50/15 52/11

61/12 63/13
certain [7]   11/21 11/19
57/5 58/2 64/10 75/12
certainly [14]   10/21 11/13
14/4 19/9 20/11 21/14 23/18
25/11 32/18 35/17 36/16 55/2
75/5 75/22
certainty [2]   72/21 73/1
CERTIFICATE [1]   80/1
certify [1]   80/4
cetera [7]   15/18 15/18 16/8
16/8 64/10 75/12 75/13
chain [2]   64/22 65/12
challenged [2]   53/11 55/9
chance [2]   28/24 77/22
change [6]   15/24 31/21 31/23
32/1 51/17 76/11
changes [2]   13/23 16/5
chaplain [1]   54/22
characteristics [1]   48/21
characterized [1]   51/6
charge [5]   14/11 14/15 14/23
14/24 55/10
charged [9]   8/11 12/15 14/16
14/25 16/19 60/5 60/24 61/22
70/18
charges [5]   50/16 51/9 51/14
53/12 55/19
charging [1]   14/24
chief [4]   3/19 57/7 69/4
72/22
choice [1]   14/21
choices [1]   14/20
chooses [1]   71/9
chose [2]   14/15 14/17
circuit [12]   5/13 17/20
17/23 36/6 37/14 38/20 44/7
45/7 45/15 71/14 71/16 71/22
circular [1]   70/10
circumstance [1]   46/10
circumstances [2]   44/25
46/10
cited [4]   20/13 46/14 49/23
53/21
cites [1]   46/21
city [1]   48/24
civil [6]   15/11 50/14 60/12
60/18 68/15 68/17
claim [1]   47/4
clear [12]   5/7 18/5 18/7
19/6 19/7 24/16 26/3 26/5
28/22 29/9 71/17 72/2
cleared [1]   76/7
clearly [1]   71/21
client [4]   23/10 37/3 37/5
37/6
clique [1]   56/2
close [1]   44/12
closing [10]   17/2 17/24
18/16 19/2 20/12 20/25 21/21
24/19 31/7 31/18
Cloverfield [1]   2/11
coach [1]   4/16
Code [1]   80/5
codefendant [6]   33/11 33/15
33/17 33/20 38/9 38/13
codefendant's [1]   38/14
coincidentally [1]   48/25
collar [1]   11/25
colloquy [2]   42/12 49/20
come [11]   39/6 44/12 55/1
57/10 61/18 69/19 69/24
71/18 74/13 76/20 79/1
comes [2]   72/16 75/24
coming [2]   7/23 28/4
command [2]   64/23 65/12
commander's [1]   62/2
commit [2]   61/21 74/5
committed [2]   24/8 61/10

community [11]   34/2 37/16
46/11 46/13 46/24 47/2 56/22
47/21 48/17 48/22 51/15
compelling [6]   5/17 10/20
24/11 29/13 29/16 30/18
competency [1]   4/4
complete [1]   16/7
completed [1]   4/8
completely [6]   24/13 47/13
47/14 58/18 64/4 70/14
complied [1]   65/5
comply [2]   64/7 64/13
composition [1]   33/4
conceded [1]   67/4
conceding [1]   50/11
concept [2]   20/12 58/11
concerned [3]   59/24 78/11
78/20
concerning [8]   7/11 17/20
30/14 50/17 51/4 52/5 56/14
73/22
concluded [1]   79/21
concludes [1]   55/18
condition [1]   25/15
conduct [4]   4/4 37/11 49/14
57/4
confer [5]   56/25 69/17 73/25
75/22 76/20
Conference [1]   80/9
conferred [1]   74/2
conferring [1]   69/12
confess [1]   41/12
confessed [7]   33/10 34/17
36/21 38/6 38/9 38/9 44/20
confessing [1]   37/6
confession [15]   33/25 34/1
34/10 35/11 35/11 38/5 38/16
38/23 38/25 39/25 41/13
41/14 41/17 42/4 46/16
confessions [1]   46/25
conflict [2]   22/5 30/8
conformance [1]   80/8
confronted [1]   66/14
confuses [1]   61/8
confusing [1]   44/2
confusion [10]   17/24 18/14
19/2 19/14 20/11 20/12 20/24
21/6 21/20 24/22
connection [5]   38/3 60/17
68/14 72/4 73/17
consider [3]   9/2 78/13 78/25
considering [1]   38/4
conspiracy [13]   57/6 58/17
58/24 59/18 59/21 59/25
60/15 61/7 62/5 63/4 63/6
63/7 65/19
conspiracy's [1]   66/11
constant [1]   45/14
constitutes [3]   9/6 52/25
72/10
constitutional [1]   4/21
contact [1]   39/6
contain [1]   55/10
contains [1]   53/12
context [18]   8/10 8/12 8/16
9/3 9/4 9/5 9/6 9/17 14/1
24/17 70/19 71/15 71/22 72/1
72/2 72/4 72/11 72/16
continue [3]   39/16 39/18
65/3
continues [1]   60/23
Contrary [1]   55/11
contrast [3]   52/1 68/12
68/18
convey [1]   54/14
convicted [1]   46/15
conviction [2]   35/18 44/9
cooperate [1]   66/5
cooperation [2]   58/3 62/3

**C**

correct **[33]** 5/4 5/25 6/1 7/6 13/8 19/25 20/1 23/5 23/6 25/1 25/3 32/25 33/12 33/20 34/22 36/13 38/12 40/6 40/12 40/23 40/25 41/9 41/10 42/6 42/9 42/14 42/15 46/9 56/17 66/14 70/6 72/17 80/5
corrections **[2]** 15/10 27/12
corrupt **[1]** 66/12
corrupted **[1]** 46/7
corruption **[1]** 55/23
could **[25]** 6/6 9/22 12/9 12/21 12/22 12/23 14/16 21/8 21/9 24/2 27/16 28/14 37/21 40/22 45/19 45/21 45/22 47/25 49/5 49/17 50/9 59/22 74/4 74/7 78/22
couldn't **[4]** 9/23 10/3 10/8 10/11
counsel **[11]** 2/1 6/19 12/13 29/25 30/22 44/22 66/1 66/3 66/4 66/7 69/11
counsel's **[1]** 29/25
counties **[1]** 50/7
county **[16]** 30/17 37/9 41/22 41/24 42/2 42/17 42/20 42/21 43/10 45/20 49/13 50/6 65/25 66/2 66/3 76/2
county-wide **[1]** 49/13
couple **[4]** 3/16 14/7 44/5 68/22
course **[7]** 11/2 11/3 24/5 27/4 31/14 47/15 61/23
court **[91]**
court's **[8]** 18/24 28/16 38/10 40/13 49/19 50/17 51/13 75/14
courthouse **[2]** 45/12 79/13
courtroom **[3]** 39/17 46/3 47/1
courts **[5]** 8/16 8/20 9/1 44/8 72/2
cover **[6]** 26/10 52/15 53/3 54/23 62/23 62/24
coverage **[1]** 51/5
covered **[2]** 26/6 50/19
covers **[1]** 59/21
CR **[2]** 1/8 3/6
create **[2]** 18/23 19/14
created **[1]** 39/11
crime **[8]** 11/25 24/8 34/6 41/12 48/19 48/22 61/21 76/3
crimes **[1]** 34/17
criminal **[4]** 16/20 55/7 60/5 61/11
Croft **[1]** 38/20
cross **[6]** 10/25 11/23 17/9 18/2 62/18 68/8
cross-examination **[3]** 18/2 62/18 68/8
cross-examine **[3]** 10/25 11/23 17/9
CRR **[1]** 80/12
crucial **[1]** 8/12
CSR **[2]** 1/19 80/12
culpability **[1]** 38/14
culture **[1]** 55/22
cut **[1]** 60/21

**D**

Dahle **[9]** 6/24 14/5 25/9 25/11 27/1 27/5 27/13 27/16 28/1
Dalton **[5]** 6/24 14/6 25/10 25/11 27/1
Daniels **[2]** 44/7 45/2
date **[3]** 24/7 65/3 80/10

day **[7]** 26/5 30/23 32/3 36/4 45/19 54/9 57/5 60/3 69/8
days **[5]** 3/22 3/25 4/1 68/25 69/4
deadlines **[1]** 74/10
deal **[4]** 7/8 7/9 42/14 57/17
dealing **[6]** 37/18 52/19 54/16 60/24 71/3 72/3
deals **[2]** 52/4 59/16
dealt **[1]** 40/15
decades **[1]** 42/22
December **[1]** 69/1
December 23rd **[1]** 69/1
decibel **[1]** 50/20
decide **[8]** 15/22 16/20 23/10 24/19 30/12 57/24 74/14 77/9
decided **[5]** 5/13 14/10 28/15 69/14 71/21
decision **[4]** 15/1 32/17 47/4 64/17
decisions **[6]** 11/8 11/9 12/17 25/19 26/12 33/23
declare **[1]** 28/11
defendant **[50]**
defendant's **[11]** 29/11 29/23 30/9 30/22 35/15 49/19 50/25 53/14 55/11 55/22 56/6
defense **[33]** 4/13 6/20 11/1 11/10 11/14 11/25 26/14 29/24 29/25 44/1 45/22 46/2 46/13 46/21 53/21 54/1 57/7 62/19 63/24 68/3 68/9 68/24 69/16 70/2 70/3 71/9 71/11 72/11 74/6 76/4 76/5 78/10 79/9
defense's **[1]** 3/23
degree **[1]** 19/1
delay **[1]** 64/9
delete **[1]** 52/24
deliver **[1]** 31/18
delivering **[1]** 31/6
deluged **[1]** 45/8
demeanor **[1]** 29/23
demonstrate **[1]** 29/13
denied **[1]** 31/20
denies **[4]** 17/2 31/5 51/17 56/10
deny **[2]** 20/9 26/14
department **[6]** 63/23 64/1 64/4 64/7 64/16 66/3
dependent **[1]** 5/2
depending **[1]** 3/24
deposition **[3]** 15/21 15/24 16/2
deputies **[4]** 52/10 54/19 56/3 66/14
deputy **[1]** 54/22
despite **[1]** 51/9
detail **[1]** 44/20
determinations **[2]** 24/16 24/24
determine **[4]** 8/17 12/3 12/20 34/9
determined **[2]** 9/6 74/2
developed **[2]** 31/10 39/2
DIAMANTATOS **[2]** 2/11 3/13
did **[29]** 19/16 20/16 20/19 21/10 27/7 33/11 34/6 34/6 36/5 38/15 38/15 44/15 44/22 47/2 47/16 48/5 54/1 55/1 57/2 58/6 58/9 61/21 64/7 64/13 65/15 76/3 76/22 77/15 77/16
didn't **[18]** 12/7 19/4 20/15 20/21 20/22 21/6 21/10 21/12 21/13 33/8 35/9 38/14 43/6 58/15 60/9 61/15 64/9 78/10
different **[9]** 13/24 17/12 17/16 17/18 22/15 34/3 61/9

69/19 70/17
dignify **[1]** 4/24 10/13
73/1
dignity **[1]** 63/2
dilemma **[1]** 28/19
diligence **[1]** 12/7
diluted **[1]** 50/4
diminished **[1]** 50/21
dire **[4]** 35/5 35/8 35/9 49/14
direct **[1]** 63/3
directed **[1]** 67/20
direction **[1]** 21/3
directly **[4]** 10/14 59/17 65/2 68/16
discovery **[2]** 54/1 54/16
discuss **[2]** 67/21 68/2
discussed **[4]** 26/1 26/6 26/10 68/24
Discussing **[1]** 44/14
discussion **[4]** 46/17 65/4 65/6 65/7
discussions **[3]** 26/3 64/25 69/10
dispute **[1]** 63/22
disqualification **[1]** 30/20
disqualify **[3]** 4/15 4/17 31/19
dissimilar **[1]** 47/24
distinguishes **[1]** 43/2
district **[14]** 1/1 1/2 1/4 34/20 43/11 43/13 43/18 43/18 43/19 43/20 43/20 46/18 48/6 50/12
district's **[2]** 41/4 49/6
diverse **[4]** 40/21 41/5 49/4 49/7
diversity **[1]** 50/4
divided **[1]** 22/14
division **[2]** 1/2 43/19
do **[49]**
doctor **[1]** 4/4
doctrine **[1]** 39/12
does **[17]** 11/16 19/1 25/6 27/21 30/1 30/13 30/19 37/10 37/10 43/16 43/23 50/11 52/16 53/7 55/25 56/18 64/11
doesn't **[18]** 11/21 12/3 25/2 32/16 32/21 35/25 36/13 43/14 54/6 60/15 61/16 63/18 64/8 67/2 71/18 71/22 72/9 75/11
doing **[6]** 4/1 35/5 43/8 44/1 53/24 59/17
don't **[36]** 4/14 8/20 8/21 9/2 11/18 12/18 13/19 13/19 14/7 18/20 18/23 24/9 27/3 27/17 27/21 28/16 32/23 38/1 38/2 38/8 41/25 42/10 44/12 45/16 57/19 57/22 57/22 65/11 66/11 68/25 73/15 74/19 75/18 76/12 77/5 77/11
done **[7]** 3/20 15/11 15/13 16/13 16/14 34/10 77/9
door **[7]** 57/8 57/9 57/12 57/13 57/15 57/16 57/23
doors **[1]** 57/20
down **[4]** 26/25 32/13 64/22 78/21
dramatically **[3]** 29/1 42/11 49/20
drum **[1]** 45/14
due **[3]** 12/6 25/14 73/24
during **[10]** 19/2 20/24 22/10 22/18 22/20 22/22 29/23 52/5 63/4 72/24
duty **[1]** 49/2

**E**

**each [5]** 9/5 12/25 52/2
76/24 76/25
**earlier [2]** 44/3 70/1
**EDDIE [2]** 2/4 3/9
**edit [2]** 72/23 72/25
**education [6]** 58/20 58/22
61/17 62/16 63/9 67/13
**education-based [6]** 58/20
58/22 61/17 62/16 63/9 67/13
**effectively [1]** 17/10
**efficient [1]** 76/23
**efforts [1]** 56/7
**eight [2]** 3/22 69/4
**eight days [1]** 69/4
**either [7]** 27/21 34/25 39/5
44/21 47/12 52/24 62/17
**elaborated [1]** 24/3
**elect [1]** 56/5
**elected [2]** 42/19 42/20
**element [1]** 72/3
**elements [1]** 23/19
**elicit [4]** 6/4 7/14 56/7
62/6
**eligible [2]** 33/4 49/1
**eliminating [1]** 31/1
**else [7]** 6/9 6/15 9/3 23/6
27/23 37/3 76/9
**else's [1]** 60/17
**emphasize [1]** 33/3
**emphasized [1]** 48/20
**end [5]** 3/21 59/4 62/10
65/20 68/2
**ended [2]** 41/5 45/5
**enemies [1]** 59/14
**enforcement [2]** 75/3 78/21
**engages [1]** 79/4
**enormous [1]** 37/12
**Enron [2]** 38/4 50/20
**ensure [1]** 43/13
**entire [6]** 18/11 18/12 51/2
72/5 72/16 72/19
**entirely [2]** 20/6 21/16
**entitled [2]** 64/12 80/7
**entries [1]** 47/12
**episode [1]** 18/12
**erected [2]** 45/10 45/12
**especially [1]** 77/18
**essence [2]** 34/6 78/17
**essentially [1]** 60/4
**establish [4]** 29/16 50/23
51/3 65/15
**established [2]** 48/1 71/14
**estimate [2]** 3/18 3/23
**et [7]** 15/18 15/18 16/7 16/8
64/9 75/12 75/13
**evaluate [3]** 8/11 8/13 8/15
**evaluated [1]** 21/18
**evaluating [1]** 51/24
**evaluation [1]** 21/22
**even [16]** 11/18 13/20 15/6
15/8 19/4 19/11 24/3 31/4
35/7 35/9 41/5 44/11 44/12
49/7 70/12 76/18
**eventually [1]** 65/4
**ever [2]** 64/13 66/8
**every [4]** 8/12 27/16 35/21
43/4
**everybody [2]** 13/5 78/25
**everyone [1]** 9/1
**everyone reads [1]** 9/1
**everything [7]** 9/3 12/22
24/12 24/14 27/14 36/17
60/21
**evidence [39]** 7/11 12/12
24/7 25/2 25/4 26/13 29/11
30/19 34/18 35/20 37/20
40/18 46/17 50/25 53/18

54/11 56/5 56/7 56/14 56/16
57/22 59/1 60/3 61/13 62/8
62/15 63/4 63/25 64/6 64/15
64/20 64/24 67/12 68/6 69/15
73/12 75/7 75/24 77/22
**exact [1]** 18/22
**exactly [1]** 70/21
**examination [4]** 4/5 18/2
62/18 68/8
**examine [4]** 10/25 11/23 17/9
47/10
**example [8]** 10/2 15/5 15/6
15/21 23/2 37/2 37/17 58/11
**examples [1]** 58/11
**excessive [4]** 52/14 53/2
59/5 59/14
**exchanged [1]** 69/17
**excise [2]** 53/1 70/14
**excised [1]** 56/24
**exclude [2]** 56/24 58/2
**excluding [1]** 46/1
**excuse [4]** 19/16 33/15 43/19
62/1
**excused [1]** 78/1
**exercise [1]** 5/9
**exert [1]** 59/14
**exhaust [1]** 29/10
**exhausted [2]** 5/18 69/22
**exhibit [1]** 47/20
**exhibited [2]** 52/13 52/21
**exhibiting [1]** 53/2
**exist [4]** 43/14 43/16 50/11
75/11
**existed [1]** 46/25
**exists [2]** 48/17 58/25
**expect [1]** 15/3
**expected [1]** 49/17
**experience [1]** 79/2
**expert [3]** 72/17 73/24 74/5
**expert's [1]** 72/20
**explain [1]** 30/13
**explicates [1]** 34/14
**explore [1]** 40/5
**exposed [5]** 34/24 35/1 35/4
36/1 38/25
**expressed [1]** 58/16
**extent [6]** 10/25 24/4 59/16
71/24 73/9 75/14
**extreme [2]** 50/24 52/9

**F**

**faced [1]** 71/10
**facing [1]** 18/19
**fact [18]** 9/19 11/24 24/1
29/24 32/2 33/22 33/23 34/25
35/8 38/8 38/25 40/20 41/8
49/9 52/8 63/25 75/10 79/4
**factor [3]** 41/5 48/23 49/7
**factors [2]** 33/5 33/7
**facts [5]** 17/16 17/18 34/13
44/11 44/11
**factual [4]** 39/23 39/24
42/12 51/6
**failed [2]** 56/6 64/5
**failure [1]** 38/4
**fair [12]** 24/2 30/24 30/24
30/25 30/25 35/15 38/24 39/7
39/9 45/19 46/8 48/3
**fairly [1]** 42/12
**fallen [1]** 45/11
**false [14]** 8/11 8/19 14/2
14/11 14/25 18/6 18/12 60/5
60/8 60/24 62/5 70/18 72/3
75/3
**falsified [1]** 52/15
**falsifying [1]** 53/3
**familiar [1]** 16/10
**family [1]** 46/2
**far [1]** 17/12

**fashion [1]** 24/10
**fault [1]** 47/9
**favor [1]** 43/9
**FBI [11]** 6/23 9/24 10/2 13/1
16/15 29/19 46/1 60/11 60/16
61/14 65/9
**FBI's [2]** 52/6 65/10
**fear [1]** 27/25
**feasted [1]** 42/19
**February [2]** 16/19 39/15
**federal [5]** 55/7 55/24 61/15
75/2 76/4
**felt [1]** 78/9
**few [1]** 14/4
**figure [1]** 68/3
**file [9]** 4/8 69/21 69/23
73/3 73/10 73/13 73/21 74/4
74/18
**filed [7]** 4/9 4/13 21/1
30/24 32/3 51/19 56/12
**filings [1]** 73/24
**fill [1]** 76/15
**final [1]** 78/6
**find [8]** 31/25 31/25 35/5
41/25 48/7 60/9 60/16 61/15
**findings [1]** 45/17
**fine [7]** 57/20 57/23 63/8
67/5 75/25 77/8 79/10
**finish [1]** 69/1
**first [14]** 4/14 10/4 18/11
19/20 19/24 20/3 23/23 31/12
31/15 37/17 43/11 56/8 65/3
68/23
**fits [1]** 11/14
**five [13]** 8/11 9/20 12/14
13/3 14/5 14/10 14/14 16/20
18/9 27/7 29/18 29/21 50/13
**five charged [1]** 8/11
**five key [1]** 14/14
**five questions [4]** 9/20
12/14 14/10 27/7
**five that [1]** 14/5
**five times [1]** 18/9
**five witnesses [2]** 29/18
29/21
**five years [1]** 50/13
**flanked [1]** 44/21
**floor [2]** 2/6 52/11
**flows [1]** 18/6
**focus [1]** 52/8
**focused [2]** 38/17 55/3
**focusing [1]** 37/6
**follow [1]** 37/11
**follow-up [1]** 37/11
**followed [1]** 45/1
**following [2]** 28/6 55/17
**follows [1]** 32/7
**football [3]** 4/24 18/21
45/12
**force [5]** 52/14 53/3 59/5
59/14 62/2
**forced [1]** 10/15
**forcing [1]** 10/18
**foreclose [1]** 32/22
**foregoing [1]** 80/5
**Forgot [1]** 25/23
**formality [1]** 45/1
**format [1]** 80/8
**former [7]** 6/19 7/2 7/3 7/5
11/6 11/7 42/16
**forms [2]** 13/25 71/2
**forth [1]** 70/24
**forward [1]** 15/2
**found [5]** 15/8 44/8 44/18
45/7 45/24
**founded [1]** 55/1
**four [6]** 3/25 4/1 43/5 50/16
68/25 70/9

**F**

four days [3]   3/25 4/1 68/25
four months [1]   50/16
four officers [1]   43/5
four-and-a-half [1]   70/9
fourth [1]   48/24
FOX [74]
Fox's [2]   19/9 29/16
front [2]   15/1 53/22
frustrated [1]   13/22
full [2]   13/20 28/2
funeral [1]   45/10
further [3]   21/25 48/12 53/5

**G**

game [1]   4/24
gang [7]   52/13 52/21 53/2
53/20 53/23 54/7 56/1
gang-like [3]   52/13 52/21
53/2
garnered [1]   49/10
Garoppolo [1]   18/17
gathered [1]   63/21
gave [5]   18/5 22/24 23/7
32/2 58/19
general [3]   11/14 20/2 31/14
generate [1]   50/3
generic [1]   17/21
genesis [1]   58/23
get [18]   5/19 8/16 9/10 9/14
18/21 38/18 38/23 39/4 43/1
48/3 59/7 59/15 66/25 71/1
74/4 75/18 76/15 79/8
gets [2]   34/7 71/15
getting [4]   37/16 66/9 77/4
77/6
give [11]   8/21 9/2 10/1 15/5
16/8 17/25 28/2 54/11 58/10
58/25 77/21
given [16]   20/9 22/22 23/4
23/8 40/20 44/24 45/19 46/8
47/18 49/3 68/23 75/13 75/15
77/13 77/18 79/6
gives [2]   17/23 74/25
giving [2]   17/2 18/15
glosses [1]   24/14
go [20]   15/15 15/21 15/22
21/18 26/4 32/4 41/12 47/20
48/4 57/16 68/8 68/24 68/25
69/7 70/11 70/24 72/19 75/19
76/25 77/19
goal [1]   28/13
goes [6]   8/9 28/25 53/14
63/7 68/13 75/11
going [40]   3/19 5/22 8/14
9/12 10/9 16/20 24/18 25/4
25/5 27/9 27/20 28/1 28/1
29/6 34/12 35/13 37/17 39/16
39/18 39/22 40/3 44/17 48/4
53/17 53/18 61/16 62/14
67/11 67/16 68/24 71/5 72/25
74/1 74/8 75/23 77/10 77/14
77/19 78/17 79/12
gone [7]   16/10 16/15 16/16
16/18 66/18 67/6 67/7
good [16]   3/8 3/12 3/15
27/15 47/16 58/2 58/4 58/6
62/6 63/10 63/20 77/25 78/8
78/15 78/16 78/16
got [3]   28/11 28/12 70/25
government [59]
government's [11]   3/18 6/18
15/1 18/16 20/10 21/17 31/7
50/14 51/10 56/25 59/20
grand [5]   15/8 61/14 61/15
64/10 68/15
grant [3]   21/16 28/23 52/25
granted [2]   28/25 55/9

greatly [1]   43/13
ground [3]   25/10 30/7
grounded [1]   14/22
guess [1]   67/17
guidance [1]   75/18
guide [1]   76/14
guilt [10]   33/10 33/25 34/1
34/10 36/22 37/7 39/14 39/25
42/11 43/4
guilty [16]   33/16 33/18
33/19 36/21 39/21 40/4 42/17
42/23 43/6 46/11 46/12 47/2
47/4 47/5 47/18 49/21

**H**

habeas [1]   45/15
had [37]   4/20 5/3 6/25 13/14
15/7 23/8 24/4 31/13 34/5
34/18 34/25 37/20 37/21
37/22 39/13 42/3 42/5 43/3
44/25 47/6 49/12 53/24 55/17
61/20 63/13 65/25 66/13
66/17 67/6 67/6 69/11 69/16
74/25 77/4 78/11 78/20 79/5
half [2]   34/21 70/9
hand [2]   43/9 58/10
handing [1]   28/10
handy [1]   65/12
happen [3]   17/24 18/3 20/8
happened [7]   13/25 22/11
24/13 24/23 24/24 25/22
44/25
happening [3]   45/5 46/23
61/12
happens [1]   15/14
happy [1]   73/10
hard [4]   40/22 43/1 46/24
49/6
has [78]
hasn't [1]   31/13
have [140]
haven't [6]   8/22 63/17 63/19
65/23 77/3 77/4
having [3]   36/14 72/14 76/25
he [66]
head [2]   40/3 65/10
hear [6]   13/5 19/10 23/20
57/13 59/23 61/5
heard [5]   37/2 43/24 53/8
56/19 62/13
hearing [1]   74/7
hearsay [3]   37/22 55/2 71/17
held [5]   7/16 9/12 32/25
41/9 80/6
help [3]   44/10 45/23 47/25
helpful [1]   76/15
her [5]   11/23 12/5 78/11
78/21 78/22
here [21]   14/5 14/7 18/3
18/25 27/25 34/22 35/20 38/7
42/10 46/24 47/9 47/18 52/12
59/15 65/19 71/1 71/2 71/12
74/9 76/15 78/1
hereby [1]   80/4
high [2]   19/1 32/14
highest [2]   42/19 42/20
highlight [1]   48/5
him [15]   5/10 17/9 17/9
18/13 22/9 23/14 25/1 27/6
27/23 44/21 45/23 47/6 47/9
47/25 58/7
himself [5]   4/25 29/20 34/5
53/20 54/6
hinder [1]   64/9
hired [2]   66/1 66/3
Hirschman [2]   25/10 26/7
his [52]
history [2]   56/14 69/3
hit [6]   23/18 24/8 44/4 44/5

70/10 70/11
86 of 94
24/13 25/9 25/18 46/9 61/7
61/19 62/8 68/1 70/6 72/15
72/18 76/1
hollow [1]   45/1
honestly [1]   26/24
honor [204]
HONORABLE [1]   1/3
hope [1]   62/9
hopeful [1]   69/2
hopefully [5]   28/16 68/11
72/7 74/14 76/20
hours [1]   70/9
Houston [6]   32/25 34/7 38/4
40/13 48/24 49/2
how [22]   3/18 10/7 10/8
10/12 10/12 21/19 24/2 26/4
28/14 28/17 30/13 31/17
35/25 36/3 36/7 36/13 37/8
37/22 51/3 62/19 69/19 69/24
However [1]   52/7
huge [1]   51/7
huh [4]   6/22 7/7 9/8 68/21
hundred [2]   16/7 35/12
hundreds [2]   42/7 51/11

**I**

I'm [4]   15/20 26/8 67/1
74/21
idea [2]   21/6 78/8
identified [3]   63/13 63/17
63/19
identify [1]   16/9
immediately [2]   10/17 10/25
impact [1]   50/4
impaneled [3]   39/5 40/22
49/5
impartial [8]   35/15 38/24
39/8 39/10 40/22 48/7 49/5
49/14
impeached [1]   10/17
impeachment [2]   11/20 11/21
impermissible [1]   61/24
implication [1]   56/2
important [5]   26/22 48/22
63/14 65/19 68/13
importantly [1]   14/10
impossible [1]   19/13
imprinted [1]   49/21
inadmissible [1]   30/18
incarceration [6]   58/21
58/22 61/17 62/16 63/10
67/14
incidence [1]   15/12
incident [1]   40/15
inclined [5]   18/13 76/19
77/2 79/2 79/6
included [1]   75/16
includes [1]   50/5
including [5]   9/24 22/2
29/18 30/4 50/7
incomplete [1]   71/25
Indeed [1]   51/9
indelibly [1]   49/21
independent [1]   14/20
indicated [1]   73/8
indicates [2]   48/17 51/13
indicating [1]   25/13
indicative [1]   66/12
indictment [8]   51/20 52/1
55/5 55/8 56/9 56/11 61/22
65/20
individuals [4]   35/25 40/22
49/1 49/5
inflamed [1]   51/15
inflammatory [14]   40/18 43/4
48/2 48/18 51/7 52/22 53/1
53/12 53/17 53/19 54/5 55/10

**I**

**inflammatory... [2]** 55/20
55/25
**inform [1]** 70/19
**information [14]** 10/23 22/12
33/24 39/7 49/16 50/1 52/4
53/10 53/22 53/25 54/2 54/14
54/24 66/22
**informed [3]** 16/2 54/17 66/4
**initial [10]** 19/17 19/18
20/4 20/9 20/13 20/16 20/20
21/6 21/14 43/12
**injected [1]** 4/25
**inmate [1]** 54/22
**inmates [15]** 52/14 53/3
54/20 55/15 58/13 58/18
58/25 59/6 59/14 59/18 61/21
62/20 63/1 68/16 68/17
**inmates' [1]** 60/18
**insanity [1]** 46/18
**inside [1]** 8/4
**instance [6]** 9/18 15/5 15/8
22/22 27/5 58/10
**instead [3]** 10/16 16/23
30/22
**instituted [1]** 63/1
**intend [1]** 5/8
**intent [3]** 66/12 75/8 75/12
**interest [1]** 30/8
**interpreting [1]** 75/14
**interview [47]**
**interviewed [2]** 13/1 15/7
**introduce [14]** 56/5 57/6
58/8 58/11 58/14 62/15 63/11
63/16 63/20 64/3 64/6 69/15
70/25 75/6
**introductory [1]** 55/13
**investigation [8]** 50/14
51/11 52/6 55/24 60/12 64/10
66/6 68/15
**involve [1]** 44/15
**involved [5]** 11/8 12/18
49/11 60/10 62/22
**involves [1]** 9/19
**involving [1]** 37/3
**ironic [1]** 32/1
**irrelevant [6]** 8/1 47/13
53/11 60/22 73/8 73/9
**is [370]**
**isn't [5]** 9/19 13/13 17/12
20/2 71/7
**issue [34]** 14/5 14/12 16/23
30/11 31/12 31/15 36/16
48/15 57/14 59/15 60/19
67/17 67/22 70/10 70/11
70/11 70/16 71/5 71/19 71/21
72/14 72/22 72/23 73/2 73/4
73/5 73/17 74/6 74/17 76/7
77/14 78/12 78/14 78/23
**issued [3]** 63/23 67/19 67/25
**issues [12]** 14/7 16/25 17/1
20/3 24/8 25/24 61/1 66/10
69/12 71/3 73/18 76/22
**it [197]**
**Item [1]** 3/6
**items [2]** 68/22 74/17
**its [9]** 3/19 24/15 31/17
56/4 56/7 57/21 60/11 72/8
75/7
**itself [5]** 25/2 25/3 25/6
32/6 38/17

**J**

**jail [4]** 8/5 50/15 52/11
61/12
**jails [7]** 55/23 58/7 59/2
59/10 59/17 61/14 63/16
**James [1]** 36/19

**JAUREGUI [2]** 2/4 3/9
**JFK [1]** 1/14
**joint [1]** 76/21
**judge [3]** 1/4 30/25 79/15
**judicial [2]** 48/6 80/9
**jump [1]** 10/2
**June [1]** 68/2
**jurisdiction [1]** 35/16
**juror [5]** 50/24 76/10 76/25
78/9 78/11
**jurors [14]** 32/9 33/4 38/21
40/21 48/7 49/4 49/14 51/3
76/24 77/13 77/17 77/19
78/18 78/20
**jury [49]**
**jury's [2]** 64/10 77/1
**just [41]**
**justice [5]** 23/11 60/10
60/15 60/25 68/14

**K**

**KATIE [2]** 1/19 80/12
**keep [1]** 67/13
**keeping [4]** 35/16 61/13
61/14 79/15
**kerfuffle [1]** 75/19
**key [1]** 14/14
**kidnapping [1]** 44/20
**killed [1]** 45/4
**killer [1]** 45/6
**Kim [2]** 25/10 26/7
**kind [5]** 32/1 32/21 50/1
70/10 71/8
**King [3]** 40/15 40/17 43/3
**knew [3]** 21/1 58/13 78/22
**know [28]** 11/18 12/3 12/18
12/19 13/2 13/19 13/19 14/3
19/9 21/10 23/1 23/6 27/21
27/21 27/22 28/17 31/25
39/16 43/6 44/14 58/15 64/13
67/2 67/18 73/19 76/3 76/12
79/16
**knowingly [1]** 8/18
**knowledge [7]** 52/17 53/15
53/25 54/2 55/22 75/8 75/12
**known [1]** 21/9
**knows [2]** 12/3 17/7

**L**

**L.A [4]** 41/22 41/24 42/2
42/17
**lack [2]** 57/4 75/12
**laid [1]** 32/13
**language [2]** 52/12 52/23
**large [5]** 39/9 40/20 47/11
49/4 60/25
**larger [2]** 41/5 49/7
**largest [1]** 48/5
**LASD [3]** 52/10 54/19 62/19
**LASD's [1]** 62/15
**last [9]** 10/9 23/23 54/11
69/17 77/15 78/4 78/16 79/5
79/5
**lasted [1]** 10/8
**late [2]** 58/23 63/7
**later [3]** 54/3 55/16 75/20
**laundry [2]** 9/2 9/4
**law [12]** 8/21 8/23 8/25 9/1
10/19 28/22 29/9 37/10 39/1
58/8 75/2 78/21
**lawyer [1]** 27/3
**lawyer's [1]** 8/8
**lawyers [5]** 10/11 10/16
10/16 10/24 11/3
**lay [1]** 51/23
**lead [1]** 14/19
**leading [2]** 45/14 46/6
**learned [1]** 69/13

**least [2]** 15/12 31/16
**leaves [2]** 68/8 68/12
**led [4]** 5/1 7/15 9/11 60/11
**left [1]** 72/24
**length [5]** 9/18 9/22 10/6
26/2 68/23
**Leroy [3]** 1/9 3/7 36/21
**less [1]** 50/8
**let [11]** 7/8 10/1 10/2 10/14
15/5 18/13 23/20 61/5 64/14
70/6 79/16
**let's [7]** 17/1 17/8 28/15
31/21 37/8 57/17 70/17
**letter [4]** 22/5 22/25 30/7
65/22
**letters [2]** 12/12 51/11
**level [3]** 12/6 34/3 43/17
50/20
**levels [1]** 5/6
**LEWIS [1]** 2/10
**lie [1]** 76/3
**lies [2]** 14/12 28/19
**light [3]** 18/7 28/5 76/22
**like [28]** 4/15 13/14 18/17
27/2 39/7 39/13 49/23 50/3
50/19 52/13 52/18 52/21 53/2
55/21 59/11 61/17 62/9 62/21
64/3 67/18 69/21 69/23 71/4
71/4 71/7 71/12 73/6 75/17
**likely [4]** 41/17 49/21 50/2
79/16
**limine [9]** 56/13 56/13 56/19
56/20 56/24 58/1 61/2 69/21
73/4
**limit [2]** 8/20 8/21
**limited [1]** 44/17
**line [3]** 31/8 43/3 66/8
**lining [1]** 18/22
**link [1]** 52/16
**linked [2]** 53/4 55/2
**list [2]** 9/2 9/4
**listed [1]** 20/6
**literally [1]** 42/7
**litigated [1]** 28/24
**little [3]** 67/18 71/1 71/2
**lived [1]** 78/23
**LIZABETH [2]** 2/5 3/9
**LLP [1]** 2/10
**location [5]** 7/15 9/11 22/2
26/2 30/5
**log [1]** 67/24
**logic [1]** 38/2
**long [7]** 3/19 10/7 10/9
10/12 26/4 69/17 74/1
**longer [1]** 48/4
**look [12]** 13/12 28/5 35/8
35/9 45/18 47/3 47/8 54/13
75/1 77/9 77/22 78/4
**looked [1]** 71/24
**looking [3]** 4/24 11/12 32/11
**looks [1]** 62/9
**LOS [16]** 1/14 1/20 2/6 3/1
30/17 35/21 37/8 42/20 42/21
47/19 48/25 50/3 50/6 66/2
66/4 76/2
**lot [3]** 35/24 44/17 61/4
**Louisiana [2]** 34/13 34/15
**lower [1]** 40/16
**Luis [1]** 50/7
**lying [1]** 25/13

**M**

**made [12]** 8/18 14/18 14/20
20/6 24/1 28/22 41/22 45/17
54/25 57/4 60/2 64/17
**Maggie [2]** 11/5 11/6
**mails [1]** 69/18
**main [2]** 5/16 33/7
**majority [1]** 14/9

**M**

make [16]   4/16 5/7 16/4
24/15 27/12 27/15 31/7 36/8
57/17 59/1 59/10 64/24 68/19
73/1 75/2 75/18
making [2]   12/17 61/9
manner [2]   25/16 30/14
many [13]   11/11 14/16 15/6
25/8 27/19 35/25 36/3 36/7
36/13 37/8 37/22 51/3 69/12
marching [1]   13/15
Margaret [1]   6/20
Martinez [1]   65/9
material [8]   8/19 26/13
53/13 53/14 54/5 55/11 55/19
60/25
materiality [1]   72/3
matter [7]   12/25 24/19 24/20
25/2 25/7 60/16 80/7
matters [2]   25/3 26/10
may [8]   12/9 14/8 26/18 30/9
35/25 38/25 61/17 65/18
maybe [3]   14/6 35/12 76/18
MCJ [3]   52/11 54/22 55/15
me [25]   7/8 10/1 10/2 10/14
12/5 12/19 15/5 18/5 19/16
20/22 23/20 24/12 28/21 29/4
33/15 37/11 43/19 61/5 62/1
64/14 72/17 73/6 73/8 74/17
77/8
mean [8]   6/5 21/8 30/1 38/19
61/16 63/18 64/8 78/18
means [2]   11/18 23/1
meant [1]   58/4
measures [2]   58/3 62/2
media [23]   34/8 34/9 35/24
36/5 36/12 37/8 37/8 38/2
39/16 42/18 44/16 45/16
48/18 49/11 49/18 49/23 50/8
50/17 50/20 50/25 51/2 51/4
51/10
media's [1]   50/4
meet [7]   5/13 56/25 69/17
73/25 74/10 75/22 76/20
meet-and-confer [2]   73/5
75/22
meeting [2]   65/8 69/11
member [1]   31/1 31/17 32/4
53/20 53/23 54/6 56/1
members [2]   29/22 46/1
memorable [1]   49/24
Men's [3]   50/15 52/11 61/12
mention [2]   25/23 47/12
mentioned [2]   78/7 78/9
messy [1]   66/10
met [1]   74/2
methodology [1]   37/25
mid [1]   58/23
middle [3]   28/9 28/18 28/25
might [7]   13/17 31/7 35/4
72/19 76/15 78/2 78/8
million [1]   34/21
millions [1]   42/25
mind [6]   38/18 38/22 38/24
43/1 46/25 49/22
minor [3]   7/20 7/25 8/1
minute [2]   9/19 44/19
misleading [1]   71/25
mistrial [2]   28/12 28/21
mix [1]   62/9
modified [1]   55/13
moment [1]   18/22
MONDAY [5]   1/15 3/1 73/24
73/25 74/4
Mondays [2]   68/25 69/7
Monica [1]   2/12
month [1]   63/18
months [2]   50/16 51/2

more [17]   9/15 13/9 25/12
35/4 41/21 48/6 48/11 48/25
49/1 49/7 50/13 50/16 67/16
71/1 71/2 74/3 76/23
Moreover [2]   50/4 56/4
MORGAN [1]   2/10
most [14]   14/9 15/2 15/3
30/3 33/24 41/14 41/17 48/24
50/25 52/19 52/22 53/1 53/17
54/23
mostly [1]   37/19
motion [63]
motions [6]   3/17 4/13 55/8
56/13 56/20 74/5
motivation [8]   59/11 60/4
60/6 60/13 60/14 62/23 62/24
68/13
motivational [3]   58/12 58/14
63/3
motivations [2]   61/8 61/9
motive [3]   53/15 55/23 61/13
move [3]   43/10 43/17 50/9
moved [1]   35/18
Mr [3]   13/3 22/20 47/22
Mr. [152]
Mr. Baca [42]
Mr. Baca's [8]   12/13 14/21
22/6 39/14 57/4 69/14 75/6
75/12
Mr. Brady [3]   4/25 4/25 5/3
Mr. Dahle [4]   6/24 14/5
27/13 27/16
Mr. Dalton [2]   6/24 14/6
Mr. Fox [70]
Mr. Fox's [2]   19/9 29/16
Mr. Hirschman [1]   26/7
Mr. Hochman [13]   23/23 24/13
25/9 25/18 46/9 61/7 61/19
62/8 68/1 70/6 72/15 72/18
76/1
Mr. Kim [1]   26/7
Mr. Sexton [1]   37/3
Mr. Skilling [4]   33/9 33/21
34/5 38/14
Mr. Tanaka [1]   47/8
Ms [1]   11/20
Ms. [19]   6/19 7/12 11/16
12/3 12/4 12/15 12/18 12/21
12/24 12/25 14/4 14/8 16/15
16/16 16/21 16/23 25/9 25/18
27/23
Ms. Carter [12]   11/16 12/3
12/4 12/15 12/18 12/21 12/24
14/4 16/15 16/16 25/9 25/18
Ms. Rhodes [7]   6/19 7/12
12/25 14/8 16/21 16/23 27/23
much [11]   8/16 9/15 10/12
13/9 24/9 43/13 69/19 69/24
74/13 76/23 79/19
murder [1]   44/20
must [3]   5/13 29/10 29/13
my [15]   6/14 10/4 12/7 21/14
27/25 28/13 28/19 37/5 37/6
43/11 57/2 57/10 66/22 67/13
79/1
Myers [2]   11/10 11/24
myself [2]   8/25 20/25

**N**

name [1]   78/22
named [2]   6/20 45/13
namely [1]   60/7
names [1]   78/19
NATHAN [2]   2/10 3/12
nation [2]   48/6 48/25
naturally [1]   18/6
nature [2]   52/9 79/6
necessarily [1]   64/8
necessary [2]   73/6 76/13

need [18]   5/17 8/15 10/20
12/19 15/14 21/24 24/4 25/4
30/18 59/5 59/6 59/23 69/8
72/21 72/23 73/1 73/9 74/3
74/18
needed [2]   35/2 47/7
needs [3]   8/10 8/13 28/5
negotiate [1]   70/13
negotiations [7]   7/14 9/11
9/15 26/12 30/5 73/12 73/16
neither [3]   44/10 44/11
45/22
never [9]   24/2 33/9 34/23
38/6 42/1 46/13 57/13 64/4
66/21
nevertheless [1]   31/6
new [3]   20/3 31/15 79/13
news [1]   49/25
next [3]   29/4 63/18 73/24
Ninth [9]   5/12 17/19 17/22
36/6 37/14 38/20 44/7 45/7
45/15
no [44]
non [1]   66/12
none [4]   9/21 10/5 14/5 14/7
nontarget [3]   22/5 22/25
30/7
North [3]   1/20 2/6 2/12
not [136]
noted [1]   48/23
nothing [3]   36/11 62/4 62/5
noticed [1]   51/25
notion [3]   38/18 39/1 41/21
52/20 58/25
notwithstanding [1]   38/24
NOVEMBER [5]   1/15 74/8 79/12
79/17 80/10
November 21 [3]   74/8 79/12
79/17
now [19]   6/20 11/6 11/9 12/1
16/13 17/2 28/12 28/13 32/12
39/22 40/9 46/9 63/9 63/21
65/22 66/10 70/1 73/13 75/18
nowhere [1]   23/25
number [4]   23/3 37/1 37/23
47/11
numbers [3]   37/22 47/11
78/19

**O**

O'Melveny [2]   11/10 11/24
Obispo [1]   50/8
objected [1]   52/13
objection [2]   4/9 4/10
obligated [1]   11/3
observation [2]   41/23 41/23
observations [2]   13/17 76/20
observe [2]   13/11 27/8
obsessed [1]   45/24
obstruct [3]   55/24 60/15
64/9
obstructed [1]   23/10
obstructing [1]   68/14
obstruction [2]   60/10 60/24
obtain [1]   51/12
obviate [1]   20/11
obvious [1]   18/6
obviously [14]   6/25 9/5
15/11 15/14 16/21 18/8 28/24
39/3 43/10 52/19 59/23 68/9
69/2 73/24
occasions [1]   44/19
occur [4]   20/22 50/13 63/6
65/16
occurred [10]   22/9 22/17
25/20 35/21 48/22 55/17
61/18 61/25 62/3 65/17
occurring [1]   63/4
occurs [1]   77/24

**O**

**OCTOBER [4]** 3/1 65/21 66/13 67/6
**off [2]** 47/14 60/21
**offense [1]** 60/9
**offer [2]** 5/22 63/25
**offered [4]** 15/19 20/8 27/11 56/16
**office [6]** 2/5 11/11 42/22 49/13 65/10 66/5
**officers [5]** 43/5 45/4 45/10 45/11 45/13
**offices [1]** 8/8
**official [2]** 1/19 42/21
**officials [1]** 42/19
**Oh [2]** 10/11 61/4
**okay [20]** 6/2 7/22 11/19 29/3 29/8 31/21 56/18 56/22 63/8 63/21 67/10 68/5 68/7 68/21 69/9 74/10 74/15 74/20 76/8 77/15
**once [1]** 77/1
**one [54]**
**one actually [1]** 13/18
**one away [1]** 7/22
**one else [1]** 23/6
**one hand [1]** 43/9
**one in [1]** 77/3
**one incidence [1]** 15/12
**one instance [1]** 15/8
**one is [2]** 5/16 70/18
**one juror [1]** 78/9
**one more [1]** 74/3
**one of [21]** 7/2 7/13 7/19 13/1 26/21 33/2 33/5 33/7 42/19 43/5 44/10 44/11 45/10 45/11 45/13 45/22 50/23 58/19 61/1 78/19 78/20
**one or [2]** 14/6 14/8
**one paragraph [1]** 55/4
**one question [1]** 13/15
**one reads [2]** 8/24 13/21
**one set [1]** 16/25
**one small [1]** 74/22
**one that [4]** 12/9 63/13 63/14 65/13
**one thing [2]** 25/23 65/14
**one to [1]** 43/9
**one unique [1]** 46/10
**one we [1]** 36/20
**one where [1]** 69/12
**one who [1]** 18/8
**ones [4]** 63/17 68/1 77/10 77/10
**only [16]** 10/19 12/14 13/7 13/11 14/15 23/2 23/4 25/17 44/6 47/12 55/9 56/2 60/19 62/13 70/1 70/17
**opened [1]** 57/11 57/23
**opens [3]** 57/8 57/9 57/13
**operating [2]** 22/6 30/9
**opinion [1]** 72/20
**opportunity [2]** 27/11 31/13
**opposed [3]** 34/20 59/2 59/10
**opposite [3]** 59/3 59/4 59/11
**opposition [2]** 34/14 56/5
**options [1]** 69/22
**order [3]** 8/17 12/5 67/7
**ordered [3]** 4/7 64/15 64/21
**organization [2]** 58/6 58/7
**organized [1]** 71/4
**other [43]**
**others [1]** 13/17
**otherwise [1]** 12/23
**ought [2]** 33/3 70/4
**our [17]** 5/9 10/16 10/16 10/24 26/12 46/14 47/17 53/13 54/9 56/25 60/22 62/23

69/2 72/22 73/25 76/11 76/20 78/1
**out [34]** 4/1 4/9 10/24 19/4 24/17 28/14 28/18 35/24 37/16 38/18 38/22 38/23 40/2 43/1 43/10 43/10 43/12 46/22 46/24 47/17 47/20 50/12 51/23 59/7 60/10 60/11 60/16 61/14 61/16 67/13 68/3 76/15
**outside [5]** 66/1 66/3 66/4 66/10 73/16
**over [15]** 24/14 59/13 64/1 65/20 66/18 66/21 67/6 67/7 70/9 70/22 71/1 71/2 75/19 77/9 77/22
**overrun [1]** 46/4
**overturn [1]** 35/17
**overturning [1]** 44/9
**overwhelming [1]** 14/9
**own [2]** 10/24 24/16

**P**

**P.M [1]** 3/2
**PA [1]** 1/8
**page [1]** 80/7
**Pages [2]** 25/24 25/25
**panoply [1]** 28/2
**papers [4]** 9/13 54/9 60/3 63/21
**paragraph [14]** 51/20 51/21 51/22 52/24 52/25 55/4 55/12 55/15 55/13 55/20 55/21 55/24 55/25 56/8
**Paragraph 7 [2]** 55/13 55/21
**paraplegic [1]** 45/4
**parish [1]** 44/18
**part [12]** 9/16 12/7 13/4 34/6 39/3 40/5 40/13 59/15 60/14 60/25 75/7 75/16
**participating [3]** 5/14 29/12 29/14
**particular [19]** 17/23 19/17 27/3 34/24 35/16 36/4 37/1 37/5 37/9 37/12 37/13 43/12 51/2 51/4 52/9 52/24 55/12 67/18 68/9
**particularly [7]** 12/8 19/2 21/21 40/1 50/2 51/19 52/13
**parties [3]** 56/15 69/1 76/16
**parts [1]** 13/24
**passing [1]** 47/12
**passion [1]** 51/8
**passive [1]** 19/13
**past [1]** 77/13
**Patriots [1]** 4/22
**Patton [1]** 46/13
**paying [1]** 27/7
**pendency [1]** 51/9
**people [22]** 6/5 7/9 9/21 10/5 14/17 23/3 34/15 34/18 34/24 35/3 36/3 36/7 36/14 37/8 37/22 41/25 42/25 44/18 45/9 46/2 66/8 77/25
**percent [7]** 16/7 35/12 35/13 35/13 41/16 76/18 76/18
**percentage [1]** 39/9
**percipient [3]** 27/14 27/18 27/24
**PERCY [1]** 1/3
**perhaps [1]** 63/24
**period [7]** 52/6 58/24 59/19 59/21 59/25 64/11 78/1
**permit [1]** 29/24
**permits [1]** 72/12
**permitted [1]** 29/14
**person [9]** 14/23 15/2 18/11 19/12 37/13 45/19 46/7 59/1 68/16
**personally [1]** 12/15
**persons [1]** 37/13

**certain [1]** 22/20
**certains [1]** (blank)
**pervasive [1]** 54/18
**phone [1]** 45/9
**physical [1]** 54/18
**pick [1]** 23/22
**picks [1]** 71/9
**place [5]** 8/3 8/4 8/7 59/10 70/23
**placed [1]** 22/12
**PLAINTIFF [1]** 1/7
**play [8]** 24/15 70/4 71/9 71/11 71/16 71/16 72/11 72/19
**played [1]** 28/14
**plays [3]** 28/18 72/5 72/8
**plea [12]** 39/22 41/15 41/17 42/13 42/14 46/12 47/4 47/5 49/19 49/20 50/18 51/13
**plead [4]** 33/16 36/21 39/21 40/4
**pleaded [3]** 46/11 47/2 47/18
**pleading [1]** 51/25
**pled [2]** 33/17 33/19
**Plenty [1]** 46/3
**plus [1]** 35/2
**point [30]** 7/20 11/22 20/14 21/22 22/24 23/23 24/10 27/15 28/22 34/23 38/7 39/4 43/16 43/22 47/14 57/9 63/17 63/19 63/22 64/6 65/25 68/11 68/20 69/22 69/23 72/25 73/14 74/22 77/2 77/11
**pointed [2]** 24/11 47/17
**points [3]** 9/16 9/17 44/4
**police [3]** 44/21 45/4 45/8
**policies [1]** 58/16
**political [1]** 49/13
**poll [1]** 37/12
**pool [5]** 40/21 41/4 49/4 49/6 50/5
**poor [1]** 12/6
**populous [1]** 48/24
**portion [3]** 71/12 72/8 75/24
**portions [2]** 69/15 70/4
**poses [1]** 60/20
**position [5]** 13/11 14/3 26/23 28/3 79/9
**positions [1]** 57/22
**possessing [1]** 60/7
**possible [2]** 6/3 8/17
**possibly [3]** 45/21 45/22 47/25
**potential [12]** 11/21 18/14 19/1 20/10 22/5 30/8 32/9 40/19 40/21 49/4 51/3 77/19
**potentially [5]** 11/8 21/19 35/8 59/22 62/19
**Powell [2]** 40/15 41/21
**practice [1]** 79/3
**Prantil [6]** 17/11 17/11 19/1 20/13 20/24 28/10
**preceded [1]** 22/8
**preceding [1]** 22/16
**preclude [2]** 31/6 56/14
**predominantly [1]** 51/6
**prejudice [29]** 32/8 32/9 32/12 32/19 34/11 35/14 38/19 39/2 39/4 39/8 39/12 40/6 40/7 40/11 41/6 41/9 42/1 43/14 43/15 44/2 44/8 48/16 48/16 49/8 50/3 50/11 50/24 51/16 53/16
**prejudicial [14]** 30/15 33/24 48/2 48/18 49/16 49/25 52/8 52/22 53/12 53/17 53/19 55/11 55/20 62/19
**preliminary [1]** 3/16
**prepaid [1]** 77/25

**P**

**preparing [1]** 20/22
**preplanned [1]** 77/20
**presence [1]** 44/22
**present [4]** 3/14 7/1 23/4 30/18
**presented [5]** 13/20 33/22 35/20 50/1 54/24
**president [1]** 47/20
**presiding [2]** 1/4 59/12
**press [7]** 32/4 45/6 45/25 46/6 47/2 47/3 51/5
**presumably [2]** 16/22 43/17
**presume [5]** 32/8 32/15 32/19 34/11 35/13
**presumed [6]** 32/11 40/10 44/8 48/16 48/16 50/24
**presuming [1]** 38/18
**presumption [8]** 39/2 39/12 41/6 41/9 43/14 49/8 50/11 51/16
**presumptive [1]** 40/10
**pretrial [4]** 32/2 49/11 49/24 51/14
**pretty [3]** 28/22 29/9 71/16
**prevented [1]** 26/24
**previous [1]** 78/9
**print [2]** 34/8 36/5
**prior [4]** 51/7 51/12 56/25 67/22
**prisoner [1]** 52/5
**prize [1]** 57/19
**prizes [1]** 57/16
**probably [19]** 3/22 3/25 4/23 5/15 9/23 13/16 28/23 39/19 42/20 46/2 54/23 67/13 68/1 74/3 74/4 76/17 78/16 79/2 79/14
**problem [3]** 59/5 73/25 77/6
**problems [1]** 77/4
**procedural [1]** 56/14
**procedure [1]** 55/7
**proceeded [1]** 70/9
**proceeding [1]** 61/2
**proceedings [4]** 1/13 75/11 79/21 80/6
**process [1]** 5/1
**produced [2]** 53/25 54/15
**producing [1]** 54/16
**production [3]** 65/3 65/14 65/16
**program [5]** 58/23 62/15 62/16 63/10 67/14
**programs [1]** 63/1
**prominence [1]** 44/2
**promote [1]** 68/17
**propensity [1]** 61/20
**proposed [2]** 76/19 76/21
**prosecuted [2]** 42/22 75/3
**prosecuting [1]** 24/6
**prosecution [5]** 21/17 29/22 30/20 31/2 31/18
**prosecutor [13]** 5/14 5/17 5/20 6/20 11/7 11/7 14/19 15/17 17/25 19/3 29/12 29/14 30/25
**provide [5]** 55/23 59/7 59/9 67/24 76/13
**provided [2]** 36/23 68/4
**public [4]** 24/1 35/12 50/16 51/8
**publicity [7]** 32/2 46/6 48/2 48/19 49/24 51/7 51/15
**publicly [1]** 34/5
**published [2]** 30/23 54/18
**purpose [2]** 6/12 27/16 28/8 61/20
**pursuant [1]** 80/4

**put [18]** 3/19 9/1 11/25 12/8 12/14 14/16 14/18 15/21 19/12 25/20 28/1 40/2 46/24 48/7 53/22 58/20 60/3
**puts [3]** 25/24 43/2 68/25

**Q**

**qualification [1]** 77/16
**qualified [2]** 7/10 77/12
**quarterback [1]** 4/22 18/18
**question [28]** 6/14 10/4 10/15 13/7 13/8 13/8 13/12 13/15 13/23 15/18 16/6 17/5 17/5 18/4 18/5 18/7 18/24 19/8 19/11 19/11 19/11 24/16 46/5 48/6 64/12 64/14 68/8 74/25
**questioning [2]** 70/9 77/23
**questionnaire [5]** 76/11 76/21 77/3 77/11 78/3
**questionnaires [2]** 39/6 77/23
**questions [42]**
**quite [3]** 20/21 26/23 62/13
**quote [1]** 63/19

**R**

**radio [3]** 34/7 36/5 37/19
**raise [9]** 19/16 28/15 31/15 57/20 68/10 68/23 73/6 76/22 78/6
**raised [8]** 13/2 19/20 19/24 21/5 21/22 31/12 73/7 74/17
**raising [4]** 20/3 28/13 32/1 61/1
**rampant [1]** 55/15
**ran [1]** 47/22
**range [1]** 66/11
**rare [4]** 41/9 41/11 41/13 41/19
**rather [3]** 28/9 31/2 78/19
**reach [2]** 69/13 73/2
**reached [5]** 12/4 36/4 36/7 37/9 37/12
**read [8]** 8/20 8/22 13/19 20/23 20/24 21/17 36/14 37/2
**readers [1]** 49/16
**readership [2]** 50/22 51/1
**reading [1]** 13/13
**reads [4]** 8/24 9/1 13/18 13/21
**really [14]** 31/13 32/16 32/21 33/3 35/23 35/24 38/6 43/1 46/22 47/8 47/10 61/22 67/14 77/4
**reason [4]** 16/5 51/23 60/7 77/25
**reasonably [1]** 49/17
**reasons [4]** 20/7 21/15 62/25 62/25
**rebut [1]** 58/12
**rebuttal [2]** 24/20 63/3
**recall [2]** 34/13 40/16
**recalling [1]** 66/24
**received [3]** 22/4 22/25 30/7
**receiving [1]** 58/5
**recent [2]** 39/15 49/9
**recently [1]** 49/12
**recognize [1]** 33/23
**recognized [1]** 50/2
**record [7]** 12/1 31/16 45/16 47/3 47/7 47/10 48/17
**recorded [1]** 30/15
**recording [5]** 19/6 19/10 26/1 69/14 70/25
**records [1]** 68/4
**recuse [4]** 20/5 21/16 73/8 74/17

**reelected [1]** 47/23
**refer [4]** 79/1
**referee [1]** 4/23
**referring [4]** 36/20 45/6 57/2 68/1
**refused [1]** 29/24
**regarding [1]** 25/19
**regimen [1]** 47/14
**regulations [1]** 80/8
**rehabilitate [1]** 59/6
**reject [2]** 42/13 42/14
**rejection [3]** 49/19 50/17 51/13
**relate [3]** 13/24 25/22 52/3
**related [2]** 28/11 49/10
**relatively [2]** 39/15 41/13
**relevance [2]** 24/4 48/21
**relevant [20]** 5/3 5/23 7/11 8/5 8/8 8/12 23/9 23/12 23/13 23/15 30/10 30/15 53/14 54/5 55/10 55/19 55/21 59/22 67/15 68/19
**relied [1]** 50/22
**relief [7]** 20/9 20/16 20/20 21/12 21/14 21/23 31/11
**relies [1]** 51/1
**rely [1]** 45/22
**remedial [2]** 58/3 62/2
**remedy [1]** 18/14
**remember [1]** 25/14
**repeat [1]** 39/20
**repeated [2]** 42/25 70/17
**reply [10]** 19/21 19/25 20/3 20/23 23/25 25/21 25/25 31/4 31/12 31/16
**report [3]** 4/8 4/8 15/17
**reported [2]** 49/18 80/6
**Reporter [1]** 1/19
**REPORTER'S [1]** 1/13
**reporters [1]** 50/19
**reports [6]** 49/23 51/4 52/15 53/3 54/17 54/18
**representing [1]** 29/19
**request [3]** 26/25 28/22 29/25
**requested [2]** 31/10 31/11
**require [4]** 36/6 37/11 37/14 37/15
**required [1]** 44/9
**resided [1]** 49/2
**resolution [1]** 69/13
**respect [12]** 7/12 9/9 9/14 13/2 14/21 22/7 25/11 52/7 52/23 61/25 63/2 72/1
**respectful [1]** 58/18
**respond [11]** 26/18 31/14 40/13 64/16 64/17 64/21 65/18 65/23 66/11 66/9 74/7
**responded [3]** 64/1 64/4 65/23
**responding [1]** 63/23
**response [5]** 19/22 20/6 21/18 62/24 76/11
**responsibility [1]** 61/11
**responsive [1]** 18/24
**rest [3]** 48/9 72/10 74/14
**resulted [2]** 30/5 50/15
**resulting [1]** 7/15
**retaliation [1]** 54/19
**review [3]** 27/11 45/16 45/16
**reviewed [2]** 36/1 44/15
**reviewing [1]** 16/6
**RHODES [9]** 2/5 3/9 6/19 7/12 12/25 14/8 16/21 16/23 27/23
**Rideau [7]** 34/12 34/13 34/15 37/17 41/20 44/7 44/14
**right [34]** 3/16 4/3 4/12 4/21 4/21 5/9 7/19 12/1 13/6 16/16 21/2 23/20 27/2 33/25

**R**

**right... [20]** 35/15 42/3 42/5 43/23 48/14 48/15 51/18 53/7 54/10 55/6 61/21 65/1 66/10 67/10 68/25 72/23 73/21 74/23 79/13 79/20
**rights [5]** 50/14 60/12 60/18 68/15 68/17
**ripe [1]** 62/13
**Riverside [5]** 45/2 45/8 45/12 45/20 50/10
**robbery [1]** 44/20
**Rodney [3]** 40/15 40/17 43/3
**role [4]** 60/8 60/16 60/17 72/5
**roughly [1]** 59/25
**routine [3]** 42/12 42/16 42/18
**RPR [1]** 80/12
**rule [7]** 17/20 20/2 29/6 31/14 69/20 69/24 73/22
**rules [4]** 22/3 27/8 30/6 55/7
**ruling [2]** 74/22 76/12
**running [1]** 47/14
**Ryan [1]** 18/17

**S**

**safer [1]** 59/10
**said [33]** 7/25 9/12 11/2 15/22 21/5 23/24 25/4 25/18 33/2 34/5 35/7 35/10 38/15 38/17 38/20 40/1 40/20 40/24 41/1 41/2 42/22 43/5 44/3 44/24 45/15 46/19 47/6 54/3 57/21 59/20 71/12 72/15 73/15
**salient [3]** 9/16 9/17 44/4
**same [17]** 13/17 13/24 16/22 30/23 32/3 37/24 39/20 46/18 59/18 60/3 60/6 60/13 60/13 60/23 62/10 70/21 78/23
**San [1]** 50/7
**Santa [3]** 2/12 50/7 50/10
**satisfied [1]** 29/15
**saturated [2]** 35/12 48/18
**saturating [1]** 34/2
**saturation [8]** 34/9 35/21 36/9 37/15 37/25 38/3 48/1 48/2
**saw [3]** 6/13 25/21 37/21
**say [21]** 9/3 11/1 13/1 15/10 18/4 19/4 25/17 26/7 26/8 35/2 35/18 37/8 37/21 38/14 38/22 38/24 39/8 39/9 41/15 45/18 70/17
**saying [14]** 15/20 15/25 16/1 16/12 17/25 28/4 28/11 36/17 38/20 53/19 53/24 58/15 70/24 72/13
**says [11]** 10/19 17/6 17/11 23/1 27/13 42/17 47/20 54/17 62/20 65/22 71/11
**schedule [1]** 69/7
**scramble [1]** 43/17
**script [2]** 13/14 13/14
**seal [1]** 4/9
**search [3]** 66/25 67/1 67/3
**seat [4]** 40/6 49/14 77/1 79/15
**second [2]** 3/21 39/3
**secondly [1]** 69/10
**section [2]** 74/24 80/4
**securing [1]** 31/2
**security [1]** 78/12
**see [20]** 12/4 13/22 15/15 22/11 23/17 28/14 32/8 37/11 37/12 37/23 46/1 46/22 67/12

68/6 70/16 74/12 74/24 77/24 77/24 78/7 89/9
**seeing [2]** 8/14 43/15
**seek [6]** 20/10 57/12 61/23 62/15 63/20 66/22
**seeking [7]** 6/8 10/23 58/8 63/11 63/15 66/18 67/7
**seeks [2]** 30/4 30/24
**seems [2]** 8/2 28/22
**seen [4]** 39/10 40/19 40/19 57/1
**select [1]** 31/17
**selected [1]** 50/5
**selection [2]** 49/9 77/17
**sensitive [1]** 40/1
**sent [1]** 12/12
**sentences [1]** 52/9
**sentencing [1]** 57/22
**separate [2]** 72/3 73/18
**September [10]** 54/4 55/16 60/1 60/21 62/1 62/1 62/4 65/8 65/21 66/16
**September 11th [2]** 55/16 62/1
**September 26 [1]** 66/16
**September 27 [1]** 65/8
**session [1]** 74/3
**set [4]** 16/25 17/1 47/7 52/9
**seven [2]** 3/22 69/3
**Sexton [2]** 36/19 37/3
**shared [1]** 69/16
**she [12]** 11/7 11/7 11/9 11/11 11/24 12/4 12/19 12/22 16/16 16/18 25/19 78/22
**sheet [1]** 16/8
**sheriff [17]** 30/17 36/21 42/16 47/22 52/3 52/17 53/4 55/3 62/22 64/3 64/18 64/23 65/7 65/8 65/13 65/15 76/2
**sheriff's [5]** 63/22 63/25 64/6 64/16 66/2
**sheriffs [1]** 66/17
**shortly [3]** 33/12 33/16 33/19
**shot [2]** 23/2 45/4
**should [16]** 4/8 10/15 20/7 21/16 29/11 31/5 32/8 32/14 32/19 35/18 42/1 55/4 56/5 61/18 66/9 71/1
**shouldn't [1]** 75/16
**show [26]** 5/17 5/18 5/21 10/19 10/22 15/9 16/3 35/21 35/25 36/6 37/1 37/4 37/25 40/9 55/21 57/15 61/20 62/21 62/22 65/12 67/25 68/11 68/12 68/19 75/8 75/11
**showed [1]** 34/23
**shown [3]** 30/18 42/7 69/3
**shows [4]** 35/20 35/23 36/3 68/6
**shut [1]** 49/17
**side [3]** 6/18 44/21 71/11
**sides [1]** 78/3
**sight [1]** 49/18
**significant [1]** 49/10
**similarly [1]** 49/11
**since [3]** 35/2 39/14 53/4
**sir [2]** 19/16 35/23
**sitting [1]** 71/10
**situation [15]** 15/7 15/12 17/22 18/23 18/25 28/17 28/20 32/11 35/10 39/12 41/11 41/13 43/3 59/13 63/5
**situations [3]** 59/24 70/16 70/17
**Sixth [3]** 4/20 5/9 14/22
**size [3]** 33/3 48/21 50/3
**Skilling [20]** 32/16 32/17 33/9 33/9 33/16 33/21 33/25

34/4 34/5 38/3 38/14 40/14 40/23 41/20 41/24 41/23 49/24 50/3 50/13
**small [2]** 44/16 74/22
**smaller [1]** 48/25
**so [65]**
**social [2]** 34/8 36/5
**some [30]** 4/12 12/6 16/4 16/5 21/19 29/17 34/6 35/5 35/5 40/10 43/17 45/17 46/9 47/15 56/12 57/8 58/5 58/6 58/6 59/3 59/4 63/22 64/6 67/12 67/21 72/21 73/7 77/20 79/1 79/15
**somebody [6]** 4/9 24/6 25/12 25/13 27/23 64/21
**somehow [1]** 60/20
**someone [4]** 13/12 15/7 18/15 68/13
**something [12]** 10/2 25/14 38/23 40/2 58/8 59/1 59/8 59/16 69/25 74/4 74/18 76/14
**sometimes [5]** 13/22 15/8 70/12 70/20 70/22
**somewhat [1]** 50/21
**sorry [4]** 15/20 26/8 67/1 74/21
**sort [8]** 4/15 7/8 40/10 61/8 70/23 71/2 71/2 75/9
**sought [2]** 20/9 58/2
**sources [8]** 6/3 6/5 10/23 22/12 29/10 35/24 36/12 51/2
**space [1]** 46/3
**speak [3]** 12/7 26/25 27/5
**special [7]** 25/9 25/9 25/11 25/15 27/1 27/1 27/5
**specific [2]** 51/4 57/3
**Specifically [1]** 55/20
**spectrum [1]** 59/4
**speed [1]** 77/17
**Spring [2]** 1/20 2/6
**stab [1]** 74/12
**stadium [1]** 45/13
**staged [2]** 42/11 49/20
**stand [3]** 12/8 17/9 18/2
**standard [9]** 5/12 5/15 32/13 32/13 32/14 32/18 51/25 51/25 53/10
**standards [2]** 17/17 17/19
**stands [1]** 16/4
**started [2]** 58/23 63/6
**starts [2]** 63/6 63/23
**state [2]** 40/14 45/3
**stated [2]** 30/22 56/4
**statement [12]** 18/7 24/2 34/10 60/24 70/18 71/8 72/4 75/2 75/6 75/7 75/10 75/14
**statements [18]** 8/11 8/15 8/18 14/11 14/25 16/20 17/21 18/12 19/3 26/11 31/8 56/25 57/2 57/3 57/7 60/5 60/8 62/5
**STATES [8]** 1/1 1/4 1/6 3/10 17/11 28/10 80/5 80/9
**stations [1]** 45/8
**statistics [5]** 36/23 37/14 37/15 50/22 51/1
**statue [1]** 45/10
**stenographically [1]** 80/6
**Steve [1]** 65/9
**still [3]** 30/16 58/24 79/14
**stipulate [1]** 11/23
**stories [9]** 37/6 37/7 39/10 39/14 39/16 39/18 39/20 49/25 50/17
**story [7]** 36/19 36/20 37/2 37/5 37/9 37/12 37/16
**straight [1]** 47/7
**streamline [1]** 69/2

**S**

street **[3]**   1/20 2/6 16/17
strike **[4]**   51/19 55/8 56/8
56/11
strong **[1]**   21/15
strongly **[2]**   41/5 49/7
stuff **[5]**   13/3 22/9 63/16
70/13 75/9
Su **[1]**   25/10
subject **[3]**   18/2 26/10 75/22
submit **[8]**   21/25 29/25 48/13
53/6 54/9 56/21 77/7 78/3
submitted **[1]**   47/19
submitting **[1]**   24/25
subpoena **[3]**   64/7 65/3 65/14
subpoenaed **[1]**   65/16
subpoenas **[15]**   63/23 64/1
64/4 64/13 64/16 64/17 64/21
65/5 65/23 66/1 66/9 67/17
67/18 67/19 67/25
subsequent **[1]**   58/3
subset **[1]**   71/3
substance **[1]**   62/10
substitute **[1]**   12/21
such **[6]**   34/11 48/3 51/15
56/7 77/20 79/2
sudden **[1]**   63/5
suffer **[1]**   41/25
suffers **[1]**   16/22
suggest **[3]**   54/6 73/23 78/13
suggesting **[3]**   8/22 50/9
54/1
suggestion **[4]**   40/21 49/4
78/16 78/17
Suite **[1]**   2/12
Superior **[4]**   66/18 66/21
67/7 79/15
superseding **[1]**   56/8
support **[1]**   30/20
supporters **[2]**   47/21 51/12
supposedly **[2]**   60/14 68/14
Supreme **[21]**   32/12 32/17
33/13 33/22 33/23 35/7 36/6
37/13 37/24 38/10 38/17
39/11 39/25 40/20 40/24 41/8
44/6 45/17 46/19 48/20 49/3
sure **[11]**   24/3 26/8 36/8
47/11 47/22 61/6 62/12 66/7
67/14 71/10 75/18
surplusage **[3]**   51/19 53/1
56/11
surprised **[1]**   57/24
surrounding **[1]**   50/6
sustain **[3]**   29/11 40/23 49/6
sworn **[1]**   75/1
synagogue **[1]**   47/20

**T**

table **[1]**   6/19
take **[6]**   3/19 4/14 74/1
74/12 77/1 78/4
taken **[3]**   18/1 24/17 68/16
takes **[1]**   34/2
talk **[16]**   9/22 9/23 10/6
10/7 10/8 10/11 12/5 12/10
12/19 18/11 19/1 24/10 36/9
47/13 47/15 70/7
talked **[2]**   19/5 26/9
talking **[9]**   41/20 41/20
41/21 52/10 58/5 58/17 61/8
67/18 73/16
talks **[2]**   54/21 54/25
Tanaka **[1]**   47/8 47/8 49/10
78/7 78/12 78/23
tape **[17]**   24/13 24/23 24/24
25/1 25/4 25/5 40/18 42/3
42/5 42/7 43/4 71/3 71/25
72/9 72/19 73/17 74/23

taped **[1]**   75/17
tapes **[1]**   44/5
task **[1]**   62/2
team **[8]**   16/22 18/16 21/17
29/22 30/21 31/2 31/18 46/2
televised **[1]**   44/23
tell **[4]**   16/3 31/16 73/6
79/3
telling **[1]**   6/12
temple **[1]**   47/18
temporal **[1]**   22/15
temporary **[1]**   46/17
tend **[1]**   53/21
tentative **[1]**   68/5
tentatively **[2]**   67/11 67/12
terms **[4]**   22/4 24/25 26/12
30/7
testifies **[1]**   3/25
testify **[11]**   5/10 6/6 6/6
6/9 7/10 10/3 22/2 29/14
29/22 30/2 30/4
testifying **[2]**   17/10 20/5
testimonial **[2]**   17/25 24/22
testimony **[14]**   5/19 5/22 6/3
15/21 15/24 16/2 23/16 24/12
24/12 28/3 29/17 30/14 30/19
31/2
than **[15]**   18/15 25/12 28/9
31/2 42/16 44/17 48/25 49/1
50/13 50/16 54/3 55/16 63/9
76/25 78/19
Thank **[11]**   26/16 26/17 48/11
57/25 73/20 74/20 76/6 79/11
79/18 79/19 79/20
that **[585]**
that's **[11]**   5/4 6/1 7/6 13/8
20/1 40/12 40/25 41/10 42/9
56/17 65/1
their **[13]**   4/24 13/12 21/19
24/23 34/14 38/22 40/3 49/18
58/20 60/3 63/3 78/18 78/19
them **[18]**   7/19 8/16 10/25
13/1 15/16 24/9 24/10 25/13
39/5 39/9 59/1 59/2 59/4
59/9 61/9 62/21 62/22 70/13
themselves **[1]**   26/1
then **[49]**
theories **[1]**   69/20
there **[71]**
therefore **[3]**   51/16 56/10
61/21
therein **[2]**   14/12 28/19
thereof **[1]**   57/5
these **[26]**   3/17 12/5 15/4
16/20 22/11 25/24 25/25
26/11 26/13 27/6 27/20 29/21
29/24 30/19 37/7 52/21 54/17
56/20 57/20 64/13 65/23
67/17 67/25 69/4 73/11 77/5
they **[94]**
THIBODEAUX **[2]**   1/19 80/12
thing **[7]**   10/19 25/17 25/23
39/21 62/13 65/14 78/6
things **[13]**   5/11 7/13 7/17
7/18 13/10 22/21 33/3 47/6
47/16 61/17 73/1 73/7 73/12
think **[61]**
thinking **[1]**   15/16
thinks **[2]**   60/6 70/3
third **[4]**   19/12 70/12 70/18
70/20
this **[155]**
those **[37]**   9/21 13/5 20/24
23/18 26/12 35/25 36/12
36/14 37/7 39/16 39/18 42/24
43/5 44/10 44/11 44/12 44/15
44/25 45/10 45/13 45/21
45/23 46/20 46/25 47/15
50/19 52/2 59/9 64/16 64/21

67/19 68/3 74/10 76/24 77/9
though **[3]**   15/8 35/12 60/23
thought **[7]**   20/23 20/25 21/3
21/14 33/11 63/24 78/15
thousands **[3]**   39/13 42/8
42/25
threatened **[1]**   78/10
three **[3]**   14/20 44/19 44/23
three independent **[1]**   14/20
three occasions **[1]**   44/19
three times **[1]**   44/23
through **[16]**   11/8 13/15
15/15 15/21 15/22 16/11
39/19 50/12 54/15 57/8 58/24
62/17 63/7 66/7 71/5 76/25
throw **[1]**   7/22
thus **[1]**   31/19
till **[1]**   60/23
time **[44]**
timeframe **[4]**   60/20 60/21
60/22 77/18
times **[5]**   18/9 22/15 42/8
42/25 44/23
timing **[1]**   65/19
Tinos **[1]**   3/13
Title **[1]**   80/4
TITOS **[1]**   2/11
today **[7]**   39/17 44/17 47/23
58/25 68/24 73/23 76/12
told **[6]**   27/23 54/21 58/7
63/12 66/8 74/25
Tom **[1]**   4/17
too **[1]**   24/9
took **[6]**   8/3 8/4 8/7 45/18
tools **[2]**   59/7 59/9
topic **[1]**   13/25
topics **[4]**   7/9 13/2 26/6
30/19
Towers **[1]**   55/16
town **[3]**   34/15 34/18 44/16
track **[2]**   64/22 78/21
tracked **[1]**   78/22
trained **[1]**   9/25
training **[2]**   25/12 25/15
transcript **[16]**   1/13 13/18
13/20 13/21 15/9 15/15 16/3
17/6 24/25 25/2 25/3 25/5
25/6 27/12 80/6 80/7
transcripts **[2]**   19/6 35/9
treat **[3]**   58/18 61/21 63/1
treated **[1]**   58/13
treating **[2]**   58/13 62/19
trial **[52]**
trials **[3]**   69/4 78/4 78/20
tried **[3]**   18/22 46/18 69/25
tries **[1]**   19/12
trigger **[1]**   38/7
trouble **[1]**   72/14
true **[2]**   27/17 80/5
trust **[1]**   38/21
try **[4]**   17/3 31/17 67/24
68/3
trying **[15]**   23/10 28/7 34/8
36/8 40/9 53/22 59/14 61/19
61/23 62/6 62/8 66/25 70/13
70/24 72/24
turn **[2]**   29/4 31/21
turned **[3]**   6/20 26/25 64/1
turning **[1]**   58/1
TV **[6]**   34/7 36/5 37/8 37/19
37/19 37/22
Twin **[1]**   55/16
two **[22]**   3/25 5/6 5/16 5/17
6/23 7/1 7/3 7/5 14/6 14/8
29/19 29/19 44/6 45/4 45/21
47/24 61/9 66/14 69/19 70/19
77/16 78/4
two attorneys **[2]**   7/1 29/19

**T**

**two cases [4]**   44/6 45/21
47/24 77/16
**two deputies [1]**   66/14
**two different [2]**   61/9 69/19
**two FBI [2]**   6/23 29/19
**two inform [1]**   70/19
**two levels [1]**   5/6
**two main [1]**   5/16
**Two of [2]**   7/3 7/5
**two police [1]**   45/4
**two questions [1]**   14/6
**two to [1]**   3/25
**two trials [1]**   78/4
**type [11]**   5/19 16/23 20/15
20/20 33/24 35/10 37/24
49/15 49/16 54/24 57/8

**U**

**U.S [7]**   1/19 20/13 20/23
35/7 42/21 64/25 66/4
**U.S.A [1]**   3/6
**Uh [4]**   6/22 7/7 9/8 68/21
**Uh-huh [4]**   6/22 7/7 9/8
68/21
**ultimate [1]**   14/1
**ultimately [5]**   43/15 46/5
64/18 64/23 65/13
**unavailable [1]**   30/1
**Unbeknownst [1]**   67/8
**unclear [1]**   58/4
**under [9]**   4/9 22/5 22/6 30/8
30/9 44/25 55/7 61/24 69/20
**underplayed [1]**   60/8
**understand [5]**   4/12 36/9
56/15 59/21 62/14
**understanding [1]**   51/24
**unduly [1]**   55/25
**unforgettable [1]**   50/1
**unfortunately [1]**   18/20
**unfounded [1]**   55/2
**unique [3]**   46/10 46/10 46/12
**uniquely [1]**   7/10
**UNITED [8]**   1/1 1/4 1/6 3/10
17/10 28/10 80/5 80/9
**unless [8]**   4/9 21/24 48/12
53/5 54/8 57/7 57/9 61/3
**unlike [1]**   52/16
**unquote [1]**   63/20
**unrelated [3]**   58/7 63/16
70/14
**until [5]**   20/22 28/9 28/18
67/11 73/13
**untrue [1]**   47/6
**up [28]**   4/14 7/15 16/17
18/22 19/23 20/12 23/22
24/18 28/25 29/1 37/11 39/19
45/5 45/7 45/14 46/6 52/15
53/4 62/9 62/23 62/24 68/25
73/11 74/13 76/7 76/20 77/17
78/23
**upon [3]**   5/2 30/11 42/19
**us [13]**   2/5 5/8 18/13 58/9
64/5 68/25 69/7 73/1 74/18
75/22 76/13 77/21 77/21
**use [9]**   4/23 9/4 17/3 17/3
19/3 59/5 76/14 77/2 77/10
**used [6]**   25/5 37/24 52/14
77/3 78/4 79/4
**useful [1]**   11/1
**using [2]**   37/24 77/11
**uttering [1]**   8/15
**utterly [1]**   46/7

**V**

**vacation [2]**   67/9 77/20
**vacations [1]**   77/25
**vacuum [1]**   48/1

**valiantly [1]**   19/12
**variety [3]**   61/14 61/20 61/20
**various [5]**   20/7 21/15 37/7
52/20 71/3
**venire [1]**   39/5
**Ventura [1]**   50/7
**venture [1]**   35/2
**venue [7]**   31/22 31/24 32/2
42/1 51/17 76/11 76/23
**versus [8]**   3/7 17/11 28/10
34/13 35/16 43/14 44/8 46/13
**very [21]**   7/20 10/11 17/18
21/15 26/3 26/18 39/9 41/12
44/14 44/16 45/5 53/9 53/9
54/12 57/3 68/12 68/16 72/2
73/1 74/1 79/19
**via [1]**   39/5
**victims [1]**   44/21
**video [2]**   37/18 44/19
**videotape [1]**   8/14
**view [2]**   67/13 68/5
**viewed [1]**   51/3
**viewers [2]**   37/2 49/17
**viewership [1]**   51/1
**viewing [3]**   37/15 59/4 59/13
**violations [1]**   16/21
**violence [1]**   54/19
**violent [3]**   52/14 52/21 53/2
**vivid [2]**   46/24 50/1
**voice [3]**   19/4 19/10 19/13
**voir [4]**   35/5 35/8 35/9
49/14

**W**

**wait [2]**   32/8 67/11
**waited [1]**   28/14
**waiting [2]**   28/9 43/14
**want [38]**   4/16 5/7 6/3 7/13
9/10 9/14 12/8 15/3 16/4
18/21 18/23 22/1 22/25 23/22
24/9 25/17 26/10 29/4 44/4
58/11 58/11 58/14 60/9 60/16
60/20 61/15 62/22 65/15
65/22 69/15 70/25 71/11 72/9
76/13 77/7 77/7 78/2 78/6
**wanted [4]**   4/22 14/17 63/24
73/11
**wanting [1]**   18/17
**wants [4]**   71/9 71/16 71/17
76/1
**warehouse [1]**   59/5
**warehousing [1]**   59/2
**warrant [5]**   66/19 66/22
66/25 67/1 67/3
**was [122]**
**wasn't [6]**   16/13 16/13 31/10
31/11 33/20 62/24
**watched [1]**   49/22
**wave [1]**   51/8
**way [14]**   4/23 13/12 18/10
20/11 21/11 34/12 39/19
45/18 58/14 58/18 62/6 70/8
70/21 72/23
**ways [1]**   59/3
**we [213]**
**week [6]**   3/21 4/1 4/2 69/17
74/7 79/5
**weeks [1]**   44/23
**weigh [1]**   35/17
**weighs [2]**   41/5 49/7
**weight [1]**   17/25
**welcome [1]**   76/5
**well [46]**
**went [5]**   14/14 46/15 58/24
59/25 66/21
**were [48]**
**weren't [3]**   35/4 62/21 73/11
**WESTERN [2]**   1/2 43/12
**what [81]**

**whatever [4]**   27/8 35/2 75/13
79/4
**whatnot [1]**   39/6
**whatsoever [1]**   26/14 37/20
**when [37]**   4/8 8/13 8/24 8/25
13/18 13/21 14/25 15/21 17/7
18/1 18/18 18/18 21/1 23/4
27/6 27/19 32/2 32/14 32/19
33/23 36/9 37/5 37/7 39/11
52/10 54/13 55/9 59/7 60/23
67/19 67/25 68/3 68/13 69/1
71/10 72/8 73/21
**where [37]**   7/15 8/2 9/11
15/7 17/24 18/23 19/3 28/5
28/20 34/16 34/23 35/10 39/4
39/13 41/11 41/14 41/16 43/3
44/8 44/16 44/19 46/15 48/17
50/8 50/24 55/1 57/15 59/13
60/2 63/5 65/2 69/12 70/16
70/16 71/8 74/24 78/22
**whether [8]**   3/24 5/2 8/17
8/18 8/19 10/15 13/25 15/19
15/22 15/23 24/16 24/17 25/3
25/12 25/13 25/14 27/10 32/7
34/9 43/15 48/15 53/10 53/16
66/7 77/20
**which [42]**
**while [2]**   53/17 59/1
**white [1]**   11/25
**who [37]**   3/14 4/4 6/6 6/17
6/19 8/2 9/24 15/2 18/8 19/7
23/3 24/6 29/18 29/19 29/21
33/11 33/16 35/4 35/25 36/21
37/20 41/25 45/4 47/8 49/2
49/12 49/22 52/22 54/25 59/6
64/17 65/9 67/8 67/19 68/13
77/25 78/11
**whoever [1]**   4/21
**whole [4]**   38/18 39/1 58/22
58/25
**whom [2]**   7/2 7/5
**why [17]**   4/14 8/8 12/4 13/25
16/13 20/7 21/15 23/7 29/1
43/21 55/3 57/11 60/25 68/12
71/7 72/14 77/25
**wide [1]**   49/13
**widespread [1]**   50/25
**will [72]**
**willfully [1]**   8/18
**willfulness [1]**   75/8
**willing [1]**   35/17
**wish [5]**   43/23 53/7 56/18
**withdraw [2]**   39/21 47/4
**withdrawing [1]**   47/5
**withdrew [1]**   46/11
**within [4]**   43/18 43/19 44/23
55/23
**without [1]**   41/15
**witness [22]**   4/24 5/14 5/22
11/13 12/8 12/21 15/9 17/20
18/1 18/13 23/14 25/19 27/2
27/14 27/18 27/24 29/12 31/3
31/9 62/18 62/19 68/9
**witnessed [1]**   54/22
**witnesses [6]**   23/8 25/8 27/3
29/18 29/21 29/24
**won't [6]**   12/19 28/17 41/17
56/16 57/13 63/18
**Woodford [1]**   44/8
**word [5]**   9/4 17/3 17/4 19/4
54/11
**words [6]**   20/24 33/21 42/17
42/22 42/24 53/1
**working [1]**   52/11
**works [5]**   11/24 58/2 58/4
63/10 63/20
**world [1]**   34/5
**would [81]**
**wouldn't [2]**   13/16 24/22

**W**

**wrestling [1]**   79/14
**write [1]**   47/2
**writes [1]**   65/22
**written [1]**   45/25
**wrong [1]**   72/18
**wrongdoing [2]**   52/15 53/4
**wrote [1]**   47/3

**Y**

**yeah [3]**   4/18 27/13 39/9
**year [1]**   77/13
**years [3]**   32/12 50/13 76/2
**yes [27]**   4/6 5/24 6/16 7/18
  7/21 17/15 17/18 19/23 21/8
  21/9 22/8 22/14 23/15 26/20
  33/8 36/10 36/25 43/25 45/25
  46/8 47/1 48/8 51/21 64/2
  66/15 70/8 74/11
**yet [1]**   65/24
**you [180]**
**Yount [1]**   46/14
**your [218]**
**yourself [1]**   8/25

**Z**

**zealously [1]**   11/4