1            **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3              **WESTERN DIVISION**

4     **THE HON. JUDGE PERCY ANDERSON, JUDGE PRESIDING**

5

6  **UNITED STATES OF AMERICA,**        )
                                 )

7              **Plaintiff,**    )
                                 )

8       **vs.**               ) **NO. 16-CR-66(A)-PA**
                                 )

9  **LEROY D. BACA,**               )
                                 )

10             **Defendant.**    )
  _____)

11

12

13

14        **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

15            **Los Angeles, California**

16         **Thursday, December 1, 2016**

17

18

19

20

21

22      **LISA M. GONZALEZ, CSR No. 5920, CCRR**
           **U.S. District Courthouse**

23     **312 North Spring Street - Room 438**
         **Los Angeles, California 90012**

24             **213.894.2979**
           **www.lisamariecsr.com**

25

```
 1   APPEARANCES:

 2   FOR THE GOVERNMENT:     OFFICE OF UNITED STATES ATTORNEY
                            BY:  BRANDON D. FOX
 3                               EDDIE JAUREGUI
                            ASSISTANT UNITED STATES ATTORNEYS
 4                          312 North Spring Street
                            Suite 1200
 5                          Los Angeles, California  90012
                            (213) 894-0284/4849
 6

 7
     FOR THE DEFENDANT:     MORGAN, LEWIS & BOCKIUS LLP
 8                          BY:  NATHAN HOCHMAN, ESQ.
                            The Water Garden
 9                          1601 Cloverfield Boulevard
                            Suite 2050 North
10                          Santa Monica, California  90404
                            (310) 255-9025
11
                            MORGAN, LEWIS & BOCKIUS LLP
12                          BY:  TINOS DIAMANTATOS, ESQ.
                            77 West Wacker Drive
13                          Chicago, Illinois
                            (312) 324-1000
14
                            MORGAN LEWIS
15                          BY:  BRIANNA L. ABRAMS
                            The Water Garden
16                          1601 Cloverfield Boulevard
                            Suite 2050 North
17                          Santa Monica, California  90404-4082
                            (310) 255-9068
18

19   FOR ROBERT FATURECHI:  DAVIS WRIGHT TREMAINE LLP
                            BY:  KELLI L. SAGER
20                          865 South Figueroa Street
                            Suite 2400
21                          Los Angeles, California  90017-2566
                            (213) 633-6821
22

23

24

25
```

1      ***Los Angeles, California; Thursday, December 1, 2016;***

2                              ***2:36 P.M.***

3                               ***-o0o-***

4           THE CLERK:  Calling Item Number 1, CR 16-66(A),

5    *USA versus Leroy D. Baca.*

6           Counsel, state your appearances, please.

7           MR. FOX:  Good afternoon, Your Honor.  Brandon Fox

8    and Ed Jaurequi for the government.

9           THE COURT:  Good afternoon.

10          MR. HOCHMAN:  Good afternoon, Your Honor.  Nathan

11   Hochman, Tinos Diamantatos, and Brianna Abrams on behalf of

12   defendant Leroy Baca, who is present on bond, Your Honor.

13          MR. DIAMANTATOS:  Good afternoon, Judge.

14          THE COURT:  Good afternoon.

15          All right.  There's a motion to quash a trial

16   subpoena.  Why don't we take that up first.

17          MS. SAGER:  Thank you, Your Honor.  Kelly Sager on

18   behalf of non-party journalist, Robert Faturechi --

19   Faturechi.  My apologies.

20          THE COURT:  I've read the papers.  Anything you

21   wish to add to the papers?

22          MS. SAGER:  Just very briefly, Your Honor.  It

23   occurred to me when I was preparing for the hearing that we

24   didn't, perhaps, explain the disconnect that may appear

25   between what the U.S. Attorney's Office describes as the

1    *Branzburg* decision and the subsequent decisions from the

2    Ninth Circuit, and virtually every other circuit that

3    followed, where a qualified reporter's privilege has been

4    recognized.

5             And in reading the *Branzburg* decision, it was not

6    only a fractured decision in the sense that the ultimate

7    result was five to four, it's more accurately described as a

8    4-4-1 decision because of Justice Powell's concurrence.  And

9    it's the language in that concurrence that both the

10   Ninth Circuit and most other circuits and many other courts

11   have demonstrated that the court's ruling was a very limited

12   ruling.  In the first place, because it was limited to grand

13   jury proceedings, which the court says repeatedly that grand

14   jury proceedings are inherently different than proceedings

15   in any courtroom because of the investigative nature of

16   grand juries.

17            So while they might recognize a situation in grand

18   juries where testimony might be required, that's not the

19   same thing as saying that there shouldn't be any protection

20   in other circumstances.  And the Ninth Circuit's drawn that

21   same distinction.

22            But also because, even Justice Powell's

23   concurrence, which the Ninth Circuit has mimicked in some of

24   its later decisions, said that if the reporter's testimony

25   has only a tenuous or remote connection -- and those are

1   Justice Powell's words -- which the Ninth Circuit then

2   reiterated in *Farr* and other cases, but that's a different

3   circumstance.

4            *Branzburg* involved a situation where the reporters

5   were direct witnesses of wrongdoings, of crimes that not

6   only involved violent, visible acts, alleged attempt to

7   assassinate the president, and other serious crimes, they

8   actually knew who the perpetrators were, and that was one of

9   the reasons that they were being called to testify.  That's

10  not the situation here.

11           Here, you have an allegation of a falsehood

12  involving one part of one statement in one count of the

13  indictment, where my client is being asked to testify about

14  whether Sheriff Baca lied about what he might have said to

15  the reporter in an interview that happened two years

16  earlier.  If that kind of offhand comment by a public

17  official is going to be enough to call a journalist in to

18  testify, then there is virtually no limit to the qualified

19  privilege, and the reporters will always be the first and

20  best witnesses that the government will call.

21           And government officials are never going to want

22  to talk to them, unless they have a prepared statement in

23  hand or an attorney present, because they'll never know

24  whether years later someone might ask them something that

25  then relates to a statement they made offhand after a press

1    conference.

2         The California Supreme Court decision in *Miller* is

3    instructive, and I urge the court to take it into

4    consideration in its ruling, because it looked at the

5    balance of both the prosecutor's rights and the rights of

6    the press and said:  Not only federal due process rights but

7    looking at the very important rights that the privileges

8    serve, the prosecutor simply doesn't have the same rights as

9    the criminal defendant.

10        And here, even though the prosecutor has said, "We

11   want to limit this to public testimony," it's been sort of a

12   moving target.  It started with an announcement in August

13   that they were simply going to ask my client about published

14   quotations attributed to the defendant in a news article,

15   but now, of course, there's another statement that they want

16   to ask him about, and they're not even limiting it to the

17   actual four corners of the published statements.  They want

18   to ask foundational questions, things related to those

19   topics, whatever that means.

20        And then we have the defendant's

21   cross-examination.  And it's impossible to imagine how

22   either the prosecution can put on the witness without asking

23   about things that foundationally would be required that go

24   beyond the article or the interview, or that the defendant

25   is going to agree to limit the cross-examination to the same

1    four corners of the article.  And that could broaden the

2    interference with the privilege, enormously.

3           Given the very tangential nature of anything that

4    this reporter would have to offer, I urge the court to grant

5    the motion to quash and find that he does not have to

6    testify in these proceedings.  I'm happy to address any

7    questions the court has or respond to any comments by

8    counsel.

9           THE COURT:  Does government wish to be heard?

10          MR. FOX:  Yes, briefly, Your Honor.

11          Far from tenuous or remote, this is crucial to the

12   obstruction of justice and the false statement count.  This

13   just does not relate to one of the false statements that has

14   been alleged.  This is Mr. Baca admitting to a reporter that

15   he sent deputies out to Special Agent Leah Marx's house; and

16   that is, as you know, one of the three pieces of the

17   obstruction of justice case that is part of the crux of the

18   case.

19          I think what is important, Your Honor, is no

20   matter what balancing test, if there is a balancing test, no

21   matter what balancing test we would apply, what we're

22   talking about here are published comments of the defendant

23   quoted in the article, quoted in the radio interview saying,

24   "The Sheriff told me this."  So I think here the interest in

25   the media is very small compared to the interest in the

1    prosecution here, and this doesn't happen very frequently.

2           Ms. Sager can talk all she wants about how

3    government officials will be called to the stand frequently

4    if you allow this to happen.  As you know, the government

5    has a code of federal regulations, it has its own policies

6    for -- to commit this to be a rare example, and that's what

7    it is here.

8           So, Your Honor, we believe that this is something

9    that -- the court should deny the order to quash and order

10   Mr. Faturechi to testify.

11          The one thing that I think we need to discuss

12   further, if Your Honor is going to be doing that, is what --

13   the foundational question.  My understanding is she's saying

14   that that is not published material, but we're talking about

15   an interview that he did of Mr. Baca, and I don't know what

16   interest the reporter would have in not saying where that

17   interview occurred, when it occurred, who else was present.

18   I don't see a First Amendment issue there.

19          So I think we need to get some clarity out of

20   Ms. Sager about whether Mr. Faturechi would be willing to

21   testify as to any of these points, including foundational

22   points, if Your Honor were to order him to testify.

23          THE COURT:  Anything else, Ms. Sager?

24          MS. SAGER:  I don't know if the defendant's

25   counsel wanted to argue, Your Honor, but I'm happy to

1    respond --

2             THE COURT:  I don't know if he has a dog in this

3    fight.

4             MR. HOCHMAN:  Just an amplification on one of the

5    points that Ms. Sager's brought up in the papers,

6    Your Honor.  The conversation that addressed is a

7    conversation that apparently happened between Sheriff Baca,

8    William Tom Kerry, Steven Leavins, and Paul Tanaka.  Paul

9    Tanaka and Steven Leavins, my understanding, are not

10   amenable to the government to call at this point unless the

11   government is prepared to give them immunity to testify.

12            Tom Kerry, on the other hand, has a signed

13   cooperation deal, as the court is aware of, is on the

14   government's list and would be presenting percipient

15   testimony to the very meeting that the government wants to

16   get the evidence in on.  And for all understanding is going

17   to be testifying at this trial and presenting that

18   testimony.

19            My understanding is that they want to use

20   Mr. Faturechi to the extent they, I guess, corroborate,

21   after the fact, several days later, as Ms. Sager points out,

22   not the exact either false statement or what was said in

23   that meeting, but some aspect of what was said in that

24   meeting by someone who wasn't at that meeting, that being

25   Mr. Faturechi.

         So, again, to the extent that the Court has a
balancing test here, if the government had nobody that they
could call on their witness list to talk about that
particular meeting, that particular statement that Sheriff
Baca made, then maybe the court would tilt the balance more
in favor of calling the reporter and dealing with the
privilege and qualified privilege aspect.

         But since the government has a cooperator that is
apparently prepared to testify as a percipient witness to
that meeting, I believe that the balance would tip in favor
of the reporter's privilege, as opposed to the government
being able to violate that privilege.

         MR. FOX:  Your Honor, if I may just add one reply.
The fact that Mr. Hochman is getting up here and arguing
that he does not want Mr. Faturechi to take the stand shows
you that this is important testimony for the prosecution.

         THE COURT:  Mr. Hochman, have a seat.

         MR. HOCHMAN:  Thank you.

         MS. SAGER:  Just briefly, Your Honor, on two of
the points raised.

         First, contrary to what the AUSA has said -- and I
think we described it in our papers so I won't dwell on
it -- Mr. Baca was not asked specifically the question that
they now say Mr. Faturechi's testimony would go to.  He
wasn't asked, "Did you know before the meeting happened that

1  the deputies were going to her house?" that's not what he

2  was asked.  He was asked, "Did you know that they were going

3  to go there to threaten to arrest her?"  And that's not

4  anywhere in the article.  Mr. Faturechi doesn't say that in

5  the interview.  There's nothing about what the substance was

6  -- what the deputies were going to say at the house that has

7  anything to do with this LA Times reporter.

8          So three days after Mr. Baca has admitted that he

9  knew about this, because of the phone call he had on the

10 26th of September, he talks to a reporter apparently and

11 says that he knew about the visit, but there's nothing

12 that's anywhere that suggests that he knew about what they

13 were going to say.  And that's not the question he was

14 asked.

15         A first-year associate doing a deposition knows if

16 you're going to accuse a witness of lying, you have to pin

17 down exactly what they're saying.  And neither, in that

18 question or when he's asked about a specific quote in the

19 article, do the investigators pin him down.  They -- then he

20 gives an equivocal answer on the quote saying, "I don't know

21 what that meant."  That doesn't say he didn't say it.  And

22 they didn't ask any follow-up questions.

23         So to then use this reporter to try to construct a

24 lying case, I think is exactly the kind of remote and

25 tenuous nature of testimony that Justice Powell said

1   shouldn't be allowed.

2          As for the examination itself, the reason we cited

3   some California cases in our brief to the court is not only

4   because we think they're instructive on policy reasons for

5   the privilege, but also because they describe the parameters

6   for the privilege.

7          In the *Fost* and *Howard* case suggests that the

8   parameters of what is published have to be very narrowly

9   drawn.  The editorial decisions that go into what's said in

10  a news article, what's said in an interview mean exactly

11  what it says:  What is published.  You're not allowed to ask

12  questions that go beyond that without implicating the

13  privilege, and the privilege doesn't allow them to ask

14  questions that are foundational questions that go beyond

15  what the article actually says.

16          So who, what, when, where, how are common

17  questions that people may want to ask reporters, but if

18  that's not in the article, that's inherently unpublished

19  information.  But the AUSA doesn't grapple with the other

20  issue which is raised by the *Fost* case.  If the

21  cross-examination would inherently then delve into all kinds

22  of other issues, then the court properly should exclude the

23  direct testimony because then it's faced with an issue where

24  it would have to preclude the defendant, unless it meets a

25  whole bunch of other hurdles, from being able to ask

1    questions they may want to ask on cross-examination.  That's

2    not a fair position to put the reporter in.

3         And the way the court should properly deal with it

4    is the way the court dealt with it in *Fost*, by saying the

5    direct testimony doesn't come in, because you cannot allow

6    even that limited testimony without then opening up a can of

7    worms on all of the cross-examination questions.

8         So I urge the court not to allow the U.S. Attorney

9    to put on sort of a side show.  Mr. Faturechi was not a

10   witness in the grand jury.  They didn't need him for those

11   purposes.  He wasn't essential when they brought the

12   indictment.  He wasn't even mentioned.  There's nothing

13   about the article that's even referenced.  This is something

14   that's been constructed later as they get ready for trial to

15   try to find supplemental or impeachment evidence which

16   doesn't meet the high standard should the First Amendment

17   and, frankly, the California Shield Law require.  Unless the

18   Court has questions, I'll submit.

19        THE COURT:  All right.  Thank you.

20        All right.  On November 16th, 2016, the FBI served

21   a trial subpoena on Mr. Faturechi.  The subpoena seeks only

22   his testimony at trial, does not seek the production of any

23   documents.

24        Moreover, the government has represented that it

25   will limit its examination to questions related to the

1    statements the reporter has publicly attributed to the

2    defendant in a September 29th, 2011, article published in

3    the Los Angeles Times, and a February 10th, 2016, radio

4    interview given on KCRW's in LA.

5         First, Mr. Faturechi contends that the subpoena

6    does not meet the procedural requirements of Federal Rule of

7    Criminal Procedure 17, and while there's some debate as to

8    what the proper standard is, even if we use Ms. Sager's

9    urging to use the standard of Rule 17(c)(2) of unreasonable

10   and oppressive, to meet that standard the government must

11   clear three hurdles:  Relevancy; admissibility; and

12   specificity.

13        In this case, the defendant is charged with

14   obstructing a federal grand jury investigation into civil

15   rights abuses going on in the county jails, conspiring to

16   obstruct justice, and making false statements to the federal

17   government.

18        In the first-superseding indictment, the

19   government alleges that one of the overt acts taken in

20   furtherance of the conspiracy was the visit to Special Agent

21   Marx's home by LASD officials.

22        Additionally, the first-superseding indictment

23   alleges that the defendant made a false statement when he

24   denied knowing that LASD officials planned to approach

25   Special Agent Marx at her home.  The relevance of the

1  testimony to these charges is clear.  In the radio

2  interview, Mr. Faturechi states, "You know what's

3  interesting is that when we first broke this story, Mr. Baca

4  actually told me, he acknowledged, that he was aware that he

5  sent these deputies to this FBI agent's home.  It appears

6  that he later back-tracked on those statements in his

7  interview with the Feds, but he told me that very clearly at

8  the time."

9          The defendant's statements to the reporters about

10 his role in sending LASD officials to Special Agent Marx's

11 home, at a minimum, are relevant and potentially highly

12 probative of his alleged criminal activity.

13         Additionally, the testimony is clearly admissible

14 under the Federal Rules of Evidence, and because the

15 government has indicated that its examination will be

16 limited to questions related to the LA Times article and the

17 radio interview, the testimony sought is highly specific.

18 And, therefore, the court finds that the subpoena complies

19 with the requirements of Federal Rule of Criminal

20 Procedure 17.

21         Next, the reporter contends that he's protected

22 from testifying under the Federal Constitutional Reporter's

23 Privilege.

24         Since *Branzburg*, the circuit courts have split as

25 to whether *Branzburg* found a Constitutional Reporter's

1    Privilege at all, if it did, and the proper scope of its

2    protections and the proper test to apply based on whether

3    the newsman is being compelled to testify before a grand

4    jury in a criminal trial or in a civil trial.

5         There are three relevant tests which courts have

6    applied.  First, circuits have applied the test set forth in

7    *Branzberg* itself which compel a newsman's testimony before a

8    grand jury if the subpoena was sought in good faith and

9    there is legitimate law enforcement need for the

10   information.  Under that test, which the government contends

11   is most applicable here, the reporter must testify.  There

12   is no evidence before the court that the subpoena was sought

13   in bad faith; that the testimony is sought for legitimate

14   law enforcement purpose of introducing relevant and

15   admissible testimony at trial.

16        Other circuits, including the Ninth Circuit, have

17   interpreted the Supreme Court decision as creating a partial

18   First Amendment shield that protects journalists against

19   compelled disclosure in all judicial proceedings, civil and

20   criminal alike.

21        However, the Ninth Circuit has also stressed that

22   the privilege is qualified and not absolute.  And,

23   therefore, requires the court to balance the claimed First

24   Amendment privilege and the imposing need for disclosure.

25        The First Amendment interests in this case are

1  well established.  On the other hand, the need for

2  disclosure is also very significant.  The defendant is a

3  former chief law enforcement officer of Los Angeles County

4  Sheriff's Department; allegations of criminal conduct on his

5  part, particularly when the allegations are that he has

6  obstructed a federal grand jury investigation into brutal

7  and unjustified inmate beatings going on in the jails of

8  great public importance and interest.

9         Additionally, the nature of the reporter's

10 testimony also weighs in favor of disclosure.  The reporter

11 has made clear that the source of his information is the

12 defendant himself, and nowhere in the reporter's declaration

13 does he claim that in discussions with the defendant were in

14 whole or, even in part, confidential.

15        Therefore, this is not a case where a reporter is

16 being compelled to identify a confidential source or to

17 renege on a promise to keep a conversation off the record.

18        And while there can be no doubt that compelling

19 even such nonconfidential testimony may amount to a burden

20 on a reporter's First Amendment rights, the Ninth Circuit

21 has also recognized that the absence of confidentiality may

22 be considered in balance in the competing interest as a

23 factor that diminishes the journalist's interest in

24 nondisclosure.

25        And, therefore, the court finds that the

1    balancing -- balancing the claimed First Amendment privilege

2    against the opposing need for disclosure weighs in favor of

3    disclosure.

4          Third, the reporter implores the court to apply

5    the test announced by the Ninth Circuit in *Shoen II*, which

6    holds that a non-party journalist's assertion of a

7    journalist's privilege can be overcome only upon a showing

8    that the requested material is unavailable, despite

9    exhaustion of all reasonable alternative sources

10   noncumulative and clearly relevant to an important issue in

11   the case.

12         What the *Shoen II* court was careful to repeatedly

13   stress, its test was applicable to only civil litigants

14   seeking to overcome the reporter's privilege.  And as far as

15   this court's concerned with good reason.  In *Branzburg*, the

16   Supreme Court expressly rejected the application of a very

17   similar test in the criminal context.

18         Additionally, the reporters failed to identify any

19   Ninth Circuit cases where the *Shoen II* test was applied to

20   quash a subpoena issued in a criminal case.  Therefore, the

21   court finds that the more appropriate test is the balancing

22   test.

23         And even if *Shoen II* established the applicable

24   standard, the court finds that the government would meet its

25   higher burden.

1          Third, the reporter urges the court to apply

2     California Shield Law to this federal prosecution because

3     the defendant is a former California state official accused

4     of abusing his public office.

5          When the Supreme Court decided *Branzburg* in 1972,

6     it recognized that Congress has the freedom to determine

7     whether a statutory nuisance privilege is necessary and

8     desirable and to fashion standards and rules as narrow and

9     broad as deemed necessary.  California's enacted a Shield

10    Law in the intervening 40 years since *Branzburg* was decided;

11    Congress has elected not to, and this court will not

12    substitute California's policy judgment for that of

13    Congress.

14         In this federal prosecution of defendant accused

15    of conspiring to, and actually obstructing a federal grand

16    jury investigation into federal civil rights abuses, as well

17    as making false statements to federal agents, all in

18    violation of federal law, California law is not applicable.

19         All right.  So, therefore, the court is going to

20    deny the motion to quash.  At least, that's my tentative

21    view.

22         As to the parameters as to which -- where this

23    testimony is going to go, the court's probably going to be

24    in a position to assess that during the course of the

25    testimony and will -- may, in fact, have to revisit the

1   issue once the reporter's actually on the stand and we see

2   exactly what the questions are.

3          Anything else?

4          MS. SAGER:  Two issues, Your Honor.  One is with

5   respect to the date on which Mr. Faturechi would be asked to

6   appear.  He's been subpoenaed to appear on the 6th of

7   December, which I understand is the first day of trial.

8   That may not be the day that the Assistant U.S. Attorney

9   would wish to call him as a witness, and the court would go

10  through the process of proceeding on a question-by-question

11  basis.  I can represent that Mr. Faturechi will appear on

12  whatever date we agree on, but he would prefer not to have

13  to fly from New York and appear twice.

14         So if it's not going to be the 6th of December

15  when he's called by the AUSA, then I'd ask if we can agree

16  on a date when they expect he would be called so that he can

17  come out to Los Angeles once and not come out on Tuesday and

18  then be forced to come back when he's actually being called

19  as a witness.

20         MR. FOX:  Your Honor, it's one thing if

21  Mr. Faturechi appears, it's another if he answers questions.

22  And we haven't had a representation about whether he will

23  answer foundational questions and whatever questions

24  Your Honor orders him to answer.

25         So I think we need an answer to that before we can

1  assess whether he should come out on the 6th or a later

2  date.

3          MS. SAGER:  As I understand what Your Honor is

4  ruling, if you're going to proceed on a question-by-question

5  basis, there's no way that I can represent to the court what

6  Mr. Faturechi's response is going to be to questions or what

7  he would answer if I don't know what the questions are, and

8  we've not been given any questions.  So I'm not sure how

9  that would proceed.

10          If he shows up on December 6th, but is not called

11  as a witness, then I presume the court would order him back

12  on whatever day the government wants to have him.  I'm

13  simply trying to avoid him having to come out twice.  If the

14  government wants to put Mr. Faturechi on the stand on

15  Tuesday, then he will be here, and we'll proceed on a

16  question-by-question basis as the court's --

17          THE COURT:  Well, I'm not saying that I'm going to

18  proceed on a -- what I had understood you to be asking me to

19  do was to limit this testimony to what was in the Los

20  Angeles Times article and the radio interview.

21          MS. SAGER:  That's correct, Your Honor.

22          THE COURT:  And I think sort of mixed up in all of

23  that was how far are these foundational questions going to

24  go.  And that's all I'm saying.

25          As to the Los Angeles Times article and the radio

1  interview, he's going to be ordered to answer those

2  questions.

3         Now, as to the foundational questions, I can't

4  imagine that we're going to get too far afield with that,

5  but I'll decide those when I hear them.  But I can't imagine

6  that's going to change the result here.  So what I would

7  suggest you do is try to work something out with the

8  government; and if it's your position and his position that

9  he's not going to answer questions, then we probably need to

10 know that in advance so that we can resolve that issue.

11        MS. SAGER:  And I do appreciate that, Your Honor.

12 The problem I have is as to anything that's not in the

13 actual articles, which include what the government now says

14 is foundational questions.  Without knowing what those are,

15 I can't make a representation as to what Mr. Faturechi will

16 say or do, in terms of asserting his rights under the First

17 Amendment.

18        So it does -- if that means he has to be here on

19 Tuesday, then he'll have to be here.  But I don't know that

20 him being here on Tuesday solves anything, in terms of

21 moving forward, unless he's going to be put on the stand.

22        MR. FOX:  And, Your Honor, my foundational

23 questions, I'm happy to tell you what they are:  "Who was

24 present?"  "When did it occur?"  "Where did it occur?"

25 That's as far as we're going to go with it.  And then, "What

1  did he say?" of course, which is not foundational.  So if we

2  have a representation that he will answer those questions, I

3  think then counsel and the government can have a

4  conversation about what makes sense.

5          THE COURT:  Seems pretty clear.

6          MS. SAGER:  I'll ask my client, Your Honor.  And

7  if we're able to work something out, then we can work

8  something out; otherwise, Mr. Faturechi will have to be here

9  on Tuesday.  That's the date he's been subpoenaed to appear.

10         THE COURT:  Okay.

11         MS. SAGER:  The only other thing I'd ask the court

12  would be for me to get permission to make objections on his

13  behalf as to questions as they come, if they're going beyond

14  what the court is ordering, as to the published information.

15  I'd like to be present and have an opportunity to object on

16  Mr. Faturechi's behalf.

17         THE COURT:  We'll work something out.

18         MS. SAGER:  Thank you, Your Honor.

19         MR. HOCHMAN:  And, Your Honor, just for the

20  record, obviously I don't know what cross-examination

21  questions they're going to ask of Mr. Faturechi until he

22  gives his testimony.  My foundation questions might go

23  beyond those three to test his credibility, Your Honor, and

24  test his memory.  Obviously, if at that point --

25         THE COURT:  Well, I'm not going to deal in

```
 1   "mights" and --

 2            MR. HOCHMAN:  Fair enough.

 3            THE COURT:  -- at this point.

 4            MR. HOCHMAN:  The reason I'm even bringing it up,

 5   Your Honor, is, if at some point, Mr. Faturechi's questions,

 6   or answers, in cross-examination, he stops answering, he

 7   says, "I refuse to answer that question," effectively "hold

 8   me in contempt," then you can't unring his testimony at that

 9   point, Your Honor.  We'd be in a position where I'd have to

10   most likely ask for a mistrial --

11            THE COURT:  Sir, thank you.  I've ruled.

12            MR. HOCHMAN:  Thank you, Your Honor.

13            MS. SAGER:  Thank you, Your Honor.

14            THE COURT:  All right.  Thank you.

15            All right.  Well, let's talk a little bit about

16   jury selection.  I'm planning on having four alternates, and

17   I think the way this process is going to work is we're going

18   to start out in the ceremonial courtroom on the mezzanine

19   level of this building, at which time we will time-qualify

20   prospective jurors.  I think we're going to start out with

21   something in the neighborhood of 150 jurors.

22            And what I envision doing is having each of the

23   prospective jurors fill out a time-qualification

24   questionnaire, then giving the lawyers an opportunity to

25   review those to see if you can agree on people that should
```

1    be excused from serving.  Those who you cannot agree on,

2    then I'll take a look at those, and we'll resolve those

3    issues.

4             Assuming we can then get a sufficient number that

5    are time-qualified, those jurors are going to be placed in

6    Courtroom 9B, which is adjacent to this one, and then the

7    court and the parties will conduct, in essence, for cause

8    screening on an individual basis based on the criminal case

9    questionnaire.  And we'll do that on an individual basis for

10   each of the prospective jurors that has been time-qualified.

11   And, in essence, we will have one prospective juror in here,

12   along with the parties, while the balance are waiting in the

13   courtroom next-door.

14             Once we have a sufficient number of jurors that

15   have been time-qualified who have -- who we don't have

16   concerns with about cause challenges, we'll bring everybody

17   back into this courtroom, have the jurors tell us a little

18   bit about themselves, and then the parties will start

19   exercising their peremptory challenges.

20             I intend to use an anonymous jury.  And by that,

21   we're going to refer to the jurors by their badge numbers.

22   And the reason for doing that is that we've had two

23   incidents in these cases in which jurors have expressed fear

24   of intimidation given the nature of the charges and the

25   defendant's ties to law enforcement.  And I will explain to

1  the jurors that this is the court's normal procedure.  That

2  I don't use names.  That we use numbers, and that's what I

3  do.

4          Any comments, questions?

5          MR. HOCHMAN:  Briefly, Your Honor.  So the parties

6  will get the jurors' actual names, but the --

7          THE COURT:  No, you will not get the jurors'

8  names.  You're going to get their numbers.

9          MR. HOCHMAN:  May I have a moment just to confer

10  with my counsel, Your Honor?

11          THE COURT:  Go ahead.

12          (Defense counsel conferring.)

13          MR. HOCHMAN:  Your Honor, again, the concern is

14  that even though the court will say it's the court's normal

15  practice to use anonymous jurors, my understanding is most

16  likely it's not.

17          THE COURT:  That's not true.  I just had a

18  criminal case where I did it, and I've done it on more than

19  one occasion.

20          MR. HOCHMAN:  Again, even if in this court the

21  court has used it in the past, obviously, the court hasn't

22  used it in the past.  Jurors --

23          THE COURT:  I'm sorry.  Obviously, the court has

24  not used it in the past?

25          MR. HOCHMAN:  There might be other criminal cases

1  that the court has had where the court didn't use it in the

2  past.  And almost, more importantly, the jurors' common

3  notion through the media, through watching TV, movies,

4  et cetera, is that jurors aren't identified by numbers,

5  they're identified by names.  And the concern that we

6  have -- I clearly appreciate the concern the court has, that

7  some juror might feel intimidation if their name is out

8  there based on the nature of the situation in this

9  particular case.

10         The flip concern, though, is that somehow the

11  jurors will think because they're not being treated like

12  jurors are normally treated, based on their common

13  understanding of jurors, that somehow Sheriff Baca poses a

14  specific threat to them, and that's why they have to have an

15  anonymous number associated instead of their name.

16         THE COURT:  Well, I'm sure we can come up with

17  something that we can tell the jurors to ease any concerns

18  they might have.  And I've never had that issue raised when

19  we've used anonymous juries in the past.

20         And, as a matter of fact, we've had at least two

21  of these trials when at least two separate jurors have

22  mentioned that they were in fear of intimidation because of

23  the nature of these charges and because of the defendant's

24  ties to law enforcement.  So you can certainly brief the

25  issue, but at least at this point, we're going to use

```
 1   anonymous juries because I'm not going to have this happen
 2   for the third time.
 3              MR. FOX:  And, Your Honor, my recollection may be
 4   bad, but I seem to recall that the juror in the Tanaka trial
 5   who raised the concern said she had just served in Superior
 6   Court on a criminal case and that they used anonymous
 7   numbers in that case.  It's my recollection.
 8              THE COURT:  I think that's true.  I've used it
 9   before, and I know other judges have used it.  And if you
10   want to get together and come up with something for me to
11   tell the jurors, I'm happy to do that.  But I don't really
12   think it's going to be a concern.  I've never had that --
13   never had that experience.
14              MR. HOCHMAN:  Okay.  I will confer with counsel,
15   Your Honor, and see if we can come up with something that
16   will address that concern that we have.
17              THE COURT:  That's fine.
18              MR. HOCHMAN:  Just so I'm also clear, so once the
19   court brings the jurors all back in the courtroom and now
20   we're doing the individual identification -- you ask who
21   they are, the typical questions that you ask the jurors and
22   then it's time for peremptories.  My understanding is the
23   defense gets 10, Your Honor, the government gets 6, which is
24   the standard number, if I understand correctly.
25              THE COURT:  Correct.
```

1        MR. HOCHMAN:  And then I want to make sure if we

2    choose not to exercise a peremptory, pass on that peremptory

3    --

4        THE COURT:  You lose it.

5        MR. HOCHMAN:  We lose the peremptory, certainly.

6    But then on the next peremptory, can we go back and decide

7    someone in the panel we want to strike at that point?

8        THE COURT:  If your question is -- let's say that

9    you pass and then somebody -- the government exercises a

10   peremptory, you're -- at that point, you're free to exercise

11   a peremptory as to anybody in the box.

12       MR. HOCHMAN:  That was my question, Your Honor.

13   Thank you.

14       No other questions, Your Honor.

15       THE COURT:  All right.  I understand there was

16   some confusion about the defense wanting to get some AV

17   training that was supposed to, perhaps, have taken place

18   today?

19       MR. HOCHMAN:  We were actually supposed to do it

20   at 2:30, Your Honor.  And then we discussed, as soon as this

21   hearing is done, if the AV person on your court side is

22   available, we're available to just do the training right

23   now.

24       THE COURT:  Okay.  I think -- I want to

25   double-check.  I think he may be available when the hearing

1   is over, or if not, he's available tomorrow.

2              MR. HOCHMAN:  Well, we'll work with that person's

3   schedule, Your Honor.

4              THE COURT:  All right.

5              All right.  The next thing I wanted to do was to

6   touch on this motion to preclude the testimony of Dr. Spar.

7   My preliminary view or my tentative view –– and I want to

8   stress it's still tentative, and it may change, so I'm

9   cautioning anybody who wants to go out and talk to the media

10  about testimony that may very well not be admissible in this

11  trial, they may not want to do that.  But it's my tentative

12  view that at least some of Dr. Spar's opinions concerning

13  the conduct that took place in 2013 may be admissible and

14  that the government's objections go more to the weight than

15  the admissibility of those opinions.

16             However, as the defense has conceded, Dr. Spar

17  does not have relevant evidence concerning the 2011 conduct.

18  The court takes, very seriously, the government's concerns

19  about the prejudice that the admission of this evidence

20  concerning the defendant's Alzheimer's diagnosis is likely

21  to cause.  This concern's particularly compelling for the

22  obstruction and conspiracy counts for which that evidence is

23  not relevant or admissible.  The court is concerned that the

24  jury will be confused by the admission of the evidence

25  concerning the defendant's cognitive impairment and for

1   which count they may consider that evidence.

2         My preliminary thoughts is that a limiting

3   instruction is unlikely to fully cure either that confusion

4   or the emotional weight of such evidence.

5         Additionally, the admission of that evidence and

6   the government's presumed rebuttal evidence would

7   significantly prolong the trial.  A possible remedy for

8   those concerns would be to sever the obstruction and

9   conspiracy counts from the false statement counts and to try

10  the obstruction and conspiracy counts first.  And if

11  necessary, the Court would then try the false statement

12  counts.  This would allow for the obstruction and conspiracy

13  counts to be tried without any potential prejudice relating

14  to evidence of the defendant's cognitive impairment and

15  would simplify the issues for the jury and streamline the

16  trial of those counts.

17        Rule 14 allows for that remedy, so I'd be anxious

18  to hear what the parties' thoughts are.

19        MR. FOX:  Your Honor, may I have a moment?

20        THE COURT:  That's fine.

21        MR. HOCHMAN:  May I have a moment, Your Honor?

22        THE COURT:  Yes.

23     (Both the government counsel and defendant counsel

24            conferring with co-counsel.)

25        THE COURT:  By the way, if you want to think about

1  it, we can talk about that Monday, I guess.  We'll probably

2  have some time.

3          MR. FOX:  It could alter a lot of things, and I

4  think that partially we'd have to meet and confer with the

5  defense on this to get some thoughts of theirs, because I

6  would like to hear from them and their thoughts about this.

7  But I think that a concept similar to that, it certainly is

8  creative, and it is something that we will seriously

9  consider; whether that's something that we think is a great

10 idea or not, we'll have to seriously consider that.  And I

11 think that it's a creative way of reducing the prejudice

12 here, Your Honor.  I appreciate that.

13         MR. HOCHMAN:  Your Honor, I think that deferring

14 so that we can talk amongst ourselves and think it through a

15 little bit further, because we hadn't approached the issue

16 in terms of a Rule 14 disposition, I would appreciate that

17 rather than responding off the cuff.

18         THE COURT:  Okay.  All right.  Is there anything

19 else we need to take up?

20         MR. FOX:  The defense -- I'm sorry.  The parties

21 had a motion in limine on 106 and whether those statements

22 were coming in.  The reason why I'm raising it is we are

23 finishing up our clips and want to make sure if you wanted

24 us to add any, that we are doing that.

25         THE COURT:  Well, my initial view is that most of

1  those statements are coming in.  I still have questions

2  about maybe one or two of those statements.  If I let --

3  when are you going to play those?

4         MR. FOX:  I think if you let us know on Monday, we

5  should have enough time, because it is coming early in our

6  case where we will be laying the foundation for them.  And

7  then we will be admitting them as the trial proceeds as they

8  become relevant.  So depending on which one it is, it may

9  not be till later in the week, but some of them may be

10 earlier in the week.

11        THE COURT:  Well, I'll let you know on Monday, or

12 I'll -- if somebody would stop sticking those pins into that

13 doll, because it's certainly working -- I may be able to get

14 something out tomorrow in writing and let you know.  But if

15 not, I'll let you know Monday for sure.

16        MR. FOX:  I think that's it from the government.

17        THE COURT:  Sorry?

18        MR. FOX:  I think that's it from the government.

19        MR. HOCHMAN:  That's all from the defense,

20 Your Honor.

21        THE COURT:  All right.  Thank you very much.  If

22 you'll let the clerk know, we'll see if we can get ahold of

23 the AV person and see if he'll be able to provide you with

24 this training this afternoon.

25        MR. HOCHMAN:  Thank you, Your Honor.

33

1            THE COURT:  Excuse me.  I may have been a little

2    ambiguous in my ruling or in the statement that I made.

3    Addressing the 106 issue, most of those statements that the

4    government wants to admit without the benefit of

5    completeness are probably coming in as the government wanted

6    them to come in.  There are one or two additional statements

7    that I want to take a look at to see if we're going to have

8    the government supplement those.

9            MR. FOX:  Thank you, Your Honor.

10            MR. DIAMANTATOS:  Thank you, Your Honor.

11        *(Thereupon, at 3:23 p.m., proceedings adjourned)*

12

13                           *-oOo-*

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                          *CERTIFICATE*

6

7         *I hereby certify that pursuant to Section 753,*

8   *Title 28, United States Code, the foregoing is a true and*

9   *correct transcript of the stenographically reported*

10  *proceedings held in the above-entitled matter and that the*

11  *transcript format is in conformance with the regulations of*

12  *the Judicial Conference of the United States.*

13

14  *Date:  December 5, 2016*

15

16                            *Lisa M. Gonzalez*
                    */s/_____*
17                  *Lisa M. Gonzalez, U.S. Court Reporter*
                    *CSR No. 5920*
18

19

20

21

22

23

24

25

MR. FOX: [13]  2/6 6/9 9/12 19/19
21/21 27/2 30/18 31/2 31/19 32/3
32/15 32/17 33/8
MR. HOCHMAN: [20]  2/9 8/3 22/18
23/1 23/11 25/4 25/8 25/12 25/19
27/13 27/17 27/25 28/4 28/11 28/18
29/1 30/20 31/12 32/18 32/24
MS. SAGER: [12]  2/16 2/21 7/23 9/18
19/3 20/2 20/20 21/10 22/5 22/10
22/17 23/12
THE CLERK: [1]  2/3
THE COURT: [36]

-
-o0o [1]  2/3
-oOo [1]  33/13
-PA [1]  1/8

/
/s [1]  34/16

1
10 [1]  27/23
1000 [1]  1/13
106 [2]  31/21 33/3
10th [1]  13/3
1200 [1]  1/4
14 [2]  30/17 31/16
150 [1]  23/21
16-66 [1]  2/4
16-CR-66 [1]  1/8
1601 [2]  1/9 1/16
16th [1]  12/20
17 [3]  13/7 13/9 14/20
1972 [1]  18/5

2
2011 [2]  13/2 29/17
2013 [1]  29/13
2016 [5]  1/16 2/1 12/20 13/3 34/14
2050 [1]  1/9 1/16
213 [2]  1/5 1/13
213.894.2979 [1]  1/24
2400 [1]  1/20
255-9025 [1]  1/10
255-9068 [1]  1/17
2566 [1]  1/21
26th [1]  10/10
28 [1]  34/8
29th [1]  13/2
2:30 [1]  28/20
2:36 [1]  2/2

3
310 [2]  1/10 1/17
312 [3]  1/23 1/4 1/13
324-1000 [1]  1/13
3:23 [1]  33/11

4
4-4-1 [1]  3/8
40 [1]  18/10
4082 [1]  1/17
438 [1]  1/23
4849 [1]  1/5

5
5920 [2]  1/22 34/17

6
633-6821 [1]  1/21
66 [2]  1/8 2/4
6821 [1]  1/21
6th [4]  19/6 19/14 20/1 20/10

7
753 [1]  34/7
77 [1]  1/12

8
865 [1]  1/20
894-0284/4849 [1]  1/5

9
90012 [2]  1/23 1/5
90017-2566 [1]  1/21
9025 [1]  1/10
90404 [1]  1/10
90404-4082 [1]  1/17
9068 [1]  1/17
9B [1]  24/6

A
able [5]  9/12 11/25 22/7 32/13 32/23
about [29]  4/13 4/14 5/13 5/16 5/23
6/22 7/2 7/14 7/20 9/3 10/5 10/9 10/11
10/12 10/18 12/13 14/9 19/22 22/4
23/15 24/16 24/18 28/16 29/10 29/19
30/25 31/1 31/6 32/2
above [1]  34/10
above-entitled [1]  34/10
ABRAMS [1]  1/15 2/11
absence [1]  16/21
absolute [1]  15/22
abuses [2]  13/15 18/16
abusing [1]  18/4
accurately [1]  3/7
accuse [1]  10/16
accused [2]  18/3 18/14
acknowledged [1]  14/4
activity [1]  14/12
acts [2]  4/6 13/19
actual [3]  5/17 21/13 25/6
actually [7]  4/8 11/15 14/4 18/15 19/1
19/18 28/19
add [3]  2/21 9/13 31/24
additional [1]  33/6
Additionally [5]  13/22 14/13 16/9 17/18
30/5
address [2]  6/6 27/16
addressed [1]  8/6
Addressing [1]  33/3
adjacent [1]  24/6
adjourned [1]  33/11
admissibility [2]  13/11 29/15
admissible [5]  14/13 15/15 29/10 29/13
29/23
admission [3]  29/19 29/24 30/5
admit [1]  33/4
admitted [1]  10/8
admitting [2]  6/14 32/7
advance [1]  21/10
afield [1]  21/4
after [3]  4/25 8/21 10/8
afternoon [6]  2/7 2/9 2/10 2/13 2/14
32/24
again [3]  9/1 25/13 25/20
against [2]  15/18 17/2
Agent [4]  6/15 13/20 13/25 14/10

agent's [1]  14/5
agents [1]  15/16
agree [5]  5/25 19/12 19/15 23/25 24/1
ahead [1]  25/11
ahold [1]  32/22
alike [1]  15/20
all [23]  2/15 7/2 8/16 11/21 12/7 12/19
12/20 15/1 15/19 17/9 18/17 18/19
20/22 20/24 23/14 23/15 27/19 28/15
29/4 29/5 31/18 32/19 32/21
allegation [1]  4/11
allegations [2]  16/4 16/5
alleged [3]  4/6 6/14 14/12
alleges [2]  13/19 13/23
allow [5]  7/4 11/13 12/5 12/8 30/12
allowed [2]  11/1 11/11
allows [1]  30/17
almost [1]  26/2
along [1]  24/12
also [7]  3/22 11/5 15/21 16/2 16/10
16/21 27/18
alter [1]  31/3
alternates [1]  23/16
alternative [1]  17/9
always [1]  4/19
Alzheimer's [1]  29/20
ambiguous [1]  33/2
amenable [1]  8/10
Amendment [8]  7/18 12/16 15/18 15/24
15/25 16/20 17/1 21/17
AMERICA [1]  1/6
amongst [1]  31/14
amount [1]  16/19
amplification [1]  8/4
ANDERSON [1]  1/4
Angeles [10]  1/15 1/23 1/5 1/21 2/1
13/3 16/3 19/17 20/20 20/25
announced [1]  17/5
announcement [1]  5/12
anonymous [6]  24/20 25/15 26/15
26/19 27/1 27/6
another [2]  5/15 19/21
answer [9]  10/20 19/23 19/24 19/25
20/7 21/1 21/9 22/2 23/7
answering [1]  23/6
answers [2]  19/21 23/6
anxious [1]  30/17
any [13]  3/15 3/19 6/6 6/7 7/21 10/22
12/22 17/18 20/8 25/4 26/17 30/13
31/24
anybody [2]  28/11 29/9
anything [8]  2/20 6/3 7/23 10/7 19/3
21/12 21/20 31/18
anywhere [2]  10/4 10/12
apologies [1]  2/19
apparently [3]  8/7 9/9 10/10
appear [6]  2/24 19/6 19/6 19/11 19/13
22/9
appearances [2]  1/1 2/6
appears [2]  14/5 19/21
applicable [4]  15/11 17/13 17/23 18/18
application [1]  17/16
applied [3]  15/6 15/6 17/19
apply [4]  6/21 15/2 17/4 18/1
appreciate [4]  21/11 26/6 31/12 31/16
approach [1]  13/24
approached [1]  31/15
appropriate [1]  17/21
are [28]  3/14 3/25 4/21 6/22 8/9 11/14
11/16 14/11 15/5 15/25 16/5 19/2 20/7

**A**

are... [15]  20/23 21/14 21/23 24/5 24/5 24/12 26/12 27/21 30/18 31/22 31/24 32/1 32/3 33/5 33/6
aren't [1]  26/4
argue [1]  7/25
arguing [1]  9/14
arrest [1]  10/3
article [14]  5/14 5/24 6/1 6/23 10/4 10/19 11/10 11/15 11/18 12/13 13/2 14/16 20/20 20/25
articles [1]  21/13
as [47]
ask [17]  4/24 5/13 5/16 5/18 10/22 11/11 11/13 11/17 11/25 12/1 19/15 22/6 22/11 22/21 23/10 27/20 27/21
asked [8]  4/13 9/23 9/25 10/2 10/2 10/14 10/18 19/5
asking [1]  5/22 20/18
aspect [2]  8/23 9/7
assassinate [1]  4/7
asserting [1]  21/16
assertion [1]  17/6
assess [2]  18/24 20/1
ASSISTANT [2]  1/3 19/8
associate [1]  10/15
associated [1]  26/15
Assuming [1]  24/4
attempt [1]  4/6
attorney [4]  1/2 4/23 12/8 19/8
Attorney's [1]  2/25
ATTORNEYS [1]  1/3
attributed [2]  5/14 13/1
August [1]  5/12
AUSA [3]  9/21 11/19 19/15
AV [3]  28/16 28/21 32/23
available [4]  28/22 28/22 28/25 29/1
avoid [1]  20/13
aware [2]  8/13 14/4

**B**

BACA [12]  1/9 2/5 2/12 4/14 6/14 7/15 8/7 9/5 9/23 10/8 14/3 26/13
back [6]  14/6 19/18 20/11 24/17 27/19 28/6
back-tracked [1]  14/6
bad [2]  15/13 27/4
badge [1]  24/21
balance [6]  5/5 9/5 9/10 15/23 16/22 24/12
balancing [7]  6/20 6/20 6/21 9/2 17/1 17/1 17/21
based [4]  15/2 24/8 26/8 26/12
basis [5]  19/11 20/5 20/16 24/8 24/9
be [53]
beatings [1]  16/7
because [21]  3/8 3/12 3/15 3/22 4/23 5/4 10/9 11/4 11/5 11/5 11/23 12/5 14/14 18/2 26/11 26/22 26/23 27/1 31/5 31/15 32/5 32/13
become [1]  32/8
been [10]  3/3 5/11 6/14 12/14 19/6 20/8 22/9 24/10 24/15 33/1
before [6]  9/25 15/3 15/7 15/12 19/25 27/9
behalf [2]  2/11 2/18 22/13 22/16
being [10]  4/9 4/13 8/24 9/12 11/25 15/3 16/16 19/18 21/20 26/11
believe [2]  7/8 9/10
benefit [1]  33/4

best [1]  4/20
between [2]  23/8 8/7
beyond [5]  5/24 11/12 11/14 22/13 22/23
bit [3]  23/15 24/18 31/15
BOCKIUS [2]  1/7 1/11
bond [1]  2/12
both [3]  3/9 5/5 30/23
Boulevard [2]  1/9 1/16
box [1]  28/11
BRANDON [2]  1/2 2/7
Branzberg [1]  5/7
Branzburg [8]  3/1 3/5 4/4 14/24 14/25 17/15 18/5 18/10
BRIANNA [2]  1/15 2/11
brief [1]  11/3 26/24
briefly [4]  2/22 6/10 9/19 25/5
bring [1]  24/16
bringing [1]  23/4
brings [1]  27/19
broad [1]  18/9
broaden [1]  6/1
broke [1]  14/3
brought [2]  8/5 12/11
brutal [1]  16/6
building [1]  23/19
bunch [1]  11/25
burden [2]  16/19 17/25

**C**

CALIFORNIA [14]  1/2 1/15 1/23 1/5 1/10 1/17 1/21 2/1 5/2 11/3 12/17 18/2 18/3 18/18
California's [2]  18/9 18/12
call [6]  4/17 4/20 8/10 9/3 10/9 19/9
called [6]  4/9 7/3 19/15 19/16 19/18 20/10
calling [2]  2/4 9/6
can [23]  5/22 7/2 12/6 16/18 17/7 19/11 19/15 19/16 19/25 20/5 21/10 22/3 22/7 23/25 24/4 26/16 26/17 26/24 27/15 28/6 31/1 31/14 32/22
can't [4]  21/3 21/5 21/15 23/8
cannot [1]  12/5 24/1
careful [1]  17/12
case [16]  6/17 6/18 10/24 11/7 11/20 10/13 13/25 16/15 17/11 17/20 24/8 25/18 26/9 27/6 27/7 32/6
cases [5]  4/2 11/3 17/19 24/23 25/25
cause [3]  24/7 24/16 29/21
cautioning [1]  29/9
CCRR [1]  1/22
CENTRAL [1]  1/2
ceremonial [1]  23/18
certainly [4]  26/24 28/5 31/7 32/13
CERTIFICATE [1]  34/5
certify [1]  34/7
cetera [1]  26/4
challenges [2]  24/16 24/19
change [2]  21/6 29/8
charged [1]  13/13
charges [3]  14/1 24/24 26/23
check [1]  28/25
Chicago [1]  1/13
chief [1]  16/3
choose [1]  28/2
circuit [11]  3/2 3/2 3/10 3/23 4/1 14/24 15/16 15/21 16/20 17/5 17/19
Circuit's [1]  3/20
circuits [3]  3/10 15/6 15/16

circumstance [1]  4/3
circumstances [2]  3/20 5/7
cited [1]  11/2
civil [5]  13/14 15/4 15/19 17/13 18/16
claim [1]  16/13
claimed [2]  15/23 17/1
clarity [1]  7/19
clear [5]  13/11 14/1 16/11 22/5 27/18
clearly [4]  14/7 14/13 17/10 26/6
clerk [1]  32/22
client [3]  4/13 5/13 22/6
clips [1]  31/23
Cloverfield [2]  1/9 1/16
co [1]  30/24
co-counsel [1]  30/24
code [2]  7/5 34/8
cognitive [2]  29/25 30/14
come [11]  12/5 19/17 19/17 19/18 20/1 20/13 22/13 26/16 27/10 27/15 33/6
coming [4]  31/22 32/1 32/5 33/5
comment [1]  4/16
comments [3]  6/7 6/22 25/4
commit [1]  7/6
common [3]  11/16 26/2 26/12
compared [1]  6/25
compel [1]  15/7
compelled [3]  15/3 15/19 16/16
compelling [1]  16/18 29/21
competing [1]  16/22
completeness [1]  33/5
complies [1]  14/18
conceded [1]  29/16
concept [1]  31/7
concern [7]  25/13 26/5 26/6 26/10 27/5 27/12 27/16
concern's [2]  17/15 29/23
concerned [2]  17/15 29/23
concerning [4]  29/12 29/17 29/20 29/25
concerns [4]  24/16 26/17 29/18 30/8
concurrence [3]  3/8 3/9 3/23
conduct [4]  16/4 24/7 29/13 29/17
confer [3]  25/9 27/14 31/4
conference [2]  5/1 34/12
conferring [2]  25/12 30/24
confidential [2]  16/14 16/16
confidentiality [1]  16/21
conformance [1]  34/11
confused [1]  29/24
confusion [2]  28/16 30/3
Congress [3]  18/6 18/11 18/13
connection [1]  3/25
consider [3]  30/1 31/9 31/10
consideration [1]  5/4
considered [1]  16/22
conspiracy [5]  13/20 29/22 30/9 30/10 30/12
conspiring [2]  13/15 18/15
Constitutional [2]  14/22 14/25
construct [1]  10/23
constructed [1]  12/14
contempt [1]  23/8
contends [3]  13/5 14/21 15/10
context [1]  17/17
contrary [1]  9/21
conversation [4]  8/6 8/7 16/17 22/4
cooperation [1]  8/13
cooperator [1]  9/8
corners [2]  5/17 6/1
correct [3]  20/21 27/25 34/9
correctly [1]  27/24

## C

corroborate [1]  8/20
could [3]  6/1 9/3 31/3
counsel [10]  2/6 6/8 7/25 22/3 25/10
25/12 27/14 30/23 30/23 30/24
count [3]  4/12 6/12 30/1
counts [7]  29/22 30/9 30/9 30/10 30/12
30/13 30/16
county [2]  13/15 16/3
course [3]  5/15 18/24 22/1
court [54]
court's [6]  3/11 17/15 18/23 20/16 25/1
25/14
Courthouse [1]  1/22
courtroom [6]  3/15 23/18 24/6 24/13
24/17 27/19
courts [3]  3/10 14/24 15/5
CR [2]  1/8 2/4
creating [1]  15/17
creative [2]  31/8 31/11
credibility [1]  22/23
crimes [2]  4/5 4/7
criminal [13]  5/9 13/7 14/12 14/19 15/4
15/20 16/4 17/17 17/20 24/8 25/18
25/25 27/6
cross [7]  5/21 5/25 11/21 12/1 12/7
22/20 23/6
cross-examination [7]  5/21 5/25 11/21
12/1 12/7 22/20 23/6
crucial [1]  6/11
crux [1]  6/17
CSR [2]  1/22 34/17
cuff [1]  31/17
cure [1]  30/3

## D

date [6]  19/5 19/12 19/16 20/2 22/9
34/14
DAVIS [1]  1/19
day [3]  19/7 19/8 20/12
days [2]  8/21 10/8
deal [3]  8/13 12/3 22/25
dealing [1]  9/6
dealt [1]  12/4
debate [1]  13/7
December [6]  1/16 2/1 19/7 19/14
20/10 34/14
decide [2]  21/5 28/6
decided [2]  18/5 18/10
decision [6]  3/1 3/5 3/6 3/8 5/2 15/17
decisions [3]  3/1 3/24 11/9
declaration [1]  16/12
deemed [1]  18/9
defendant [17]  1/10 1/7 2/12 5/9 5/14
5/24 6/22 11/24 13/2 13/13 13/23 16/2
16/12 16/13 18/3 18/14 30/23
defendant's [8]  5/20 7/24 14/9 24/25
26/23 29/20 29/25 30/14
defense [7]  25/12 27/23 28/16 29/16
31/5 31/20 32/19
deferring [1]  31/13
delve [1]  11/21
demonstrated [1]  3/11
denied [1]  13/24
deny [2]  7/9 18/20
Department [1]  16/4
depending [1]  32/8
deposition [1]  10/15
deputies [4]  6/15 10/1 10/6 14/5
describe [1]  11/5

described [2]  3/7 9/22
describes [1]  8/25
desirable [1]  18/8
despite [1]  17/8
determine [1]  18/6
diagnosis [1]  29/20
DIAMANTATOS [4]  1/12 2/11 2/13
33/10
did [8]  7/15 9/25 10/2 15/1 21/24 21/24
22/1 25/18
didn't [5]  2/24 10/21 10/22 12/10 26/1
different [3]  3/14 4/2
diminishes [1]  16/23
direct [3]  4/5 11/23 12/5
disclosure [6]  15/19 15/24 16/2 16/10
17/2 17/3
disconnect [1]  2/24
discuss [1]  7/11
discussed [1]  28/20
discussions [1]  16/13
disposition [1]  31/16
distinction [1]  3/21
DISTRICT [3]  1/1 1/2 1/22
DIVISION [1]  1/3
do [13]  10/7 10/19 20/19 21/7 21/11
21/16 24/9 25/3 27/11 28/19 28/22
29/5 29/11
documents [1]  28/23
does [9]  6/5 6/9 6/13 9/15 12/22 13/6
16/13 21/18 29/17
doesn't [8]  5/8 7/1 10/4 10/21 11/13
11/19 12/5 12/16
dog [1]  8/2
doing [6]  7/12 10/15 23/22 24/22 27/20
31/24
doll [1]  32/13
don't [12]  2/16 7/15 7/18 7/24 8/2 10/20
20/7 21/19 22/20 24/15 25/2 27/11
done [2]  25/18 28/21
door [1]  24/13
double [1]  28/25
double-check [1]  28/25
doubt [1]  16/18
down [2]  10/17 10/19
Dr. [3]  29/6 29/12 29/16
Dr. Spar [2]  29/6 29/16
Dr. Spar's [1]  29/12
drawn [2]  3/20 11/9
Drive [1]  1/12
due [1]  5/6
during [1]  18/24
dwell [1]  9/22

## E

each [2]  23/22 24/10
earlier [2]  4/16 32/10
early [1]  32/5
ease [1]  26/17
Ed [1]  2/8
EDDIE [1]  1/3
editorial [1]  11/9
effectively [1]  23/7
either [3]  5/22 8/22 30/3
elected [1]  18/11
else [4]  7/17 7/23 19/3 31/19
emotional [1]  30/4
enacted [1]  18/9
enforcement [5]  15/9 15/14 16/3 24/25
26/24
enormously [1]  6/2

enough [3]  4/17 23/2 32/5
entitled [1]  34/10
envision [1]  23/22
equivocal [1]  10/20
ESQ [2]  1/8 1/12
essence [2]  24/7 24/11
essential [1]  12/11
established [2]  16/1 17/23
et [1]  26/4
et cetera [1]  26/4
even [13]  3/22 5/10 5/16 12/6 12/12
12/13 13/8 16/14 16/19 17/23 23/4
25/14 25/20
every [1]  3/2
everybody [1]  24/16
evidence [8]  8/16 12/15 14/14 15/12
29/17 29/19 29/22 29/24 30/1 30/4
30/5 30/6 30/14
exact [1]  8/22
exactly [4]  10/17 10/24 11/10 19/2
examination [10]  5/21 5/25 11/2 11/21
12/1 12/7 12/25 14/15 22/20 23/6
example [1]  7/6
exclude [1]  11/22
Excuse [1]  33/1
excused [1]  24/1
exercise [2]  28/2 28/10
exercises [1]  28/9
exercising [1]  24/19
exhaustion [1]  17/9
expect [1]  19/16
experience [1]  27/13
explain [2]  2/24 24/25
expressed [1]  24/23
expressly [1]  17/16
extent [2]  8/20 9/1

## F

faced [1]  11/23
fact [4]  8/21 9/14 18/25 26/20
factor [1]  16/23
failed [1]  17/18
fair [2]  12/2 23/2
faith [2]  15/8 15/13
false [8]  6/12 6/13 8/22 13/16 13/23
18/17 30/9 30/11
falsehood [1]  4/11
far [5]  6/11 17/14 20/23 21/4 21/25
Farr [1]  4/2
fashion [1]  18/8
FATURECHI [20]  1/19 2/18 2/19 7/10
7/20 8/20 8/25 9/15 10/4 12/9 12/21
13/5 14/2 19/5 19/11 19/21 20/14
21/15 22/8 22/21
Faturechi's [4]  9/24 20/6 22/16 23/5
favor [1]  9/6 9/10 16/10 17/2
FBI [2]  12/20 14/5
fear [2]  24/23 26/22
February [1]  13/3
February 10th [1]  13/3
federal [15]  5/6 7/5 13/6 13/14 13/16
14/14 14/19 14/22 16/6 18/2 18/14
18/15 18/16 18/17 18/18
Feds [1]  14/7
feel [1]  26/7
fight [1]  8/3
Figueroa [1]  1/20
fill [1]  23/23
find [2]  6/5 12/15
finds [4]  14/18 16/25 17/21 17/24

**F**

fine [2]  27/17 30/20
finishing [1]  31/23
first [20]  2/16 3/12 4/19 7/18 9/21
 10/15 12/16 13/5 13/18 13/22 14/3
 15/6 15/18 15/23 15/25 16/20 17/1
 19/7 21/16 30/10
first-superseding [2]  13/18 13/22
first-year [1]  10/15
five [2]  3/7
flip [1]  26/10
fly [1]  19/13
follow [1]  10/22
follow-up [1]  10/22
followed [1]  3/3
forced [1]  19/18
foregoing [1]  34/8
format [1]  34/11
former [2]  16/3 18/3
forth [1]  15/6
forward [1]  21/21
Fost [3]  11/7 11/20 12/4
found [1]  14/25
foundation [2]  22/22 32/6
foundational [10]  5/18 7/13 7/21 11/14
 19/23 20/23 21/3 21/14 21/22 22/1
foundationally [1]  5/23
four [4]  3/7 5/17 6/1 23/16
FOX [2]  1/2 2/7
fractured [1]  3/6
frankly [1]  12/17
free [1]  28/10
freedom [1]  18/6
frequently [2]  7/1 7/3
fully [1]  30/3
further [2]  7/12 31/15
furtherance [1]  13/20

**G**

Garden [2]  1/8 1/15
get [14]  7/19 8/16 12/14 21/4 22/12
 24/4 25/6 25/7 25/8 27/10 28/16 31/5
 32/13 32/22
gets [2]  27/23 27/23
getting [1]  9/14
give [1]  8/11
given [4]  6/3 13/4 20/8 24/24
gives [2]  10/20 22/22
giving [1]  23/24
go [15]  5/23 9/24 10/3 11/9 11/12
 11/14 18/23 19/9 20/24 21/25 22/22
 25/11 28/6 29/9 29/14
going [41]
GONZALEZ [3]  1/22 34/16 34/17
good [7]  2/7 2/9 2/10 2/13 2/14 15/8
 17/15
government [33]  1/2 2/8 4/20 4/21 6/9
 7/3 7/4 8/10 8/11 8/15 9/2 9/8 9/11
 12/24 13/10 13/17 13/19 14/15 15/10
 17/24 20/12 20/14 21/8 21/13 22/3
 27/23 28/9 30/23 32/16 32/18 33/4
 33/5 33/8
government's [4]  8/14 29/14 29/18 30/6
grand [10]  3/12 3/13 3/16 3/17 12/10
 13/14 15/3 15/8 16/6 18/15
grant [1]  6/4
grapple [1]  11/19
great [2]  16/8 31/9
guess [2]  8/20 31/1

**H**

had [13]  9/2 10/9 19/22 20/18 24/22
 25/17 26/1 26/18 26/20 27/5 27/12
 27/13 31/21
hadn't [1]  31/15
hand [3]  4/23 8/12 16/1
happen [3]  7/1 7/4 27/1
happened [3]  4/15 8/7 9/25
happy [4]  6/6 7/25 21/23 27/11
has [32]  3/3 3/23 3/25 5/10 6/7 6/13
 7/5 7/5 8/2 8/12 9/1 9/8 9/21 10/6 10/8
 12/18 12/24 13/1 14/15 15/21 16/5
 16/11 16/21 18/6 18/11 21/18 24/10
 25/21 25/23 26/1 26/6 29/16
hasn't [1]  25/21
have [54]
haven't [1]  19/22
having [3]  20/13 23/16 23/22
he [43]
he'll [2]  21/19 32/23
he's [10]  10/18 14/21 19/6 19/15 19/18
 21/1 21/9 21/21 22/9 29/1
hear [3]  21/5 30/18 31/6
heard [1]  6/9
hearing [3]  2/23 28/21 28/25
held [1]  34/10
her [3]  10/1 10/3 13/25
here [18]  4/10 4/11 5/10 6/22 6/24 7/1
 7/7 9/2 9/14 15/11 20/15 21/6 21/18
 21/19 21/20 22/8 24/11 31/12
hereby [1]  34/7
high [1]  12/16
higher [1]  17/25
highly [2]  14/11 14/17
him [10]  5/16 7/22 10/19 12/10 19/9
 19/24 20/11 20/12 20/13 21/20
himself [1]  16/12
his [14]  12/22 14/6 14/10 14/12 16/4
 16/11 18/4 21/8 21/16 22/12 22/22
 22/23 22/24 23/8
HOCHMAN [7]  1/8 2/11 9/14 9/17 9/18
 23/4 25/25
hold [1]  23/7
holds [1]  17/6
home [4]  13/21 13/25 14/5 14/11
HON [1]  1/4
Honor [47]
house [3]  6/15 10/1 10/6
how [5]  5/21 7/2 11/16 20/8 20/23
Howard [1]  11/7
However [2]  15/21 29/16
hurdles [2]  11/25 13/11

**I**

I'd [5]  19/15 22/11 22/15 23/9 30/17
I'll [7]  12/18 21/5 22/6 24/2 32/11 32/12
 32/15
I'm [19]  6/6 7/25 20/8 20/12 20/17
 20/17 20/24 21/23 22/25 23/4 23/16
 25/23 26/16 27/1 27/11 27/18 29/8
 31/20 31/22
I've [6]  2/20 23/11 25/18 26/18 27/8
 27/12
idea [1]  31/10
identification [1]  27/20
identified [2]  26/4 26/5
identify [1]  16/16 17/18
II [4]  17/5 17/12 17/19 17/23
Illinois [1]  1/13
imagine [3]  5/21 21/4 21/5

ommunity [1]  8/11
impairment [2]  28/25 30/14
impeachment [1]  12/15
implicating [1]  11/12
implores [1]  17/4
importance [1]  16/8
important [4]  5/7 6/19 9/16 17/10
importantly [1]  26/2
imposing [1]  15/24
impossible [1]  5/21
incidents [1]  24/23
include [1]  21/13
including [2]  7/21 15/16
indicated [1]  14/15
indictment [4]  4/13 12/12 13/18 13/22
individual [3]  24/8 24/9 27/20
information [4]  11/19 15/10 16/11 22/14
inherently [3]  3/14 11/18 11/21
initial [1]  31/25
inmate [1]  16/7
instead [1]  26/15
instruction [1]  30/3
instructive [2]  5/3 11/4
intend [1]  24/20
interest [6]  6/24 6/25 7/16 16/8 16/22
 16/23
interesting [1]  14/3
interests [1]  15/25
interference [1]  6/2
interpreted [1]  15/17
intervening [1]  18/10
interview [13]  4/15 5/24 6/23 7/15 7/17
 10/5 11/10 13/4 14/2 14/7 14/17 20/20
 21/1
intimidation [3]  24/24 26/7 26/22
introducing [1]  15/14
investigation [3]  13/14 16/6 18/16
investigative [1]  3/15
investigators [1]  10/19
involved [2]  4/4 4/6
involving [1]  4/12
is [103]
issue [10]  7/18 11/20 11/23 17/10 19/1
 21/10 26/18 26/25 31/15 33/3
issued [1]  17/20
issues [4]  11/22 19/4 24/3 30/15
it [49]
it's [18]  3/7 3/9 5/11 5/21 11/23 19/14
 19/20 19/21 21/8 25/14 25/16 27/7
 27/12 27/22 29/8 29/11 31/11 32/13
Item [1]  2/4
its [8]  3/24 5/4 7/5 12/25 14/15 15/1
 17/13 17/24
itself [2]  11/2 15/7

**J**

jails [2]  13/15 16/7
JAUREQUI [2]  1/3 2/8
journalist [2]  2/18 4/17
journalist's [3]  16/23 17/6 17/7
journalists [1]  15/18
JUDGE [3]  1/4 1/4 2/13
judges [1]  27/9
judgment [1]  18/12
judicial [2]  15/19 34/12
juries [4]  3/16 3/18 26/19 27/1
juror [3]  26/17 27/4
jurors [21]  23/20 23/21 23/23 24/5
 24/10 24/14 24/17 24/21 24/23 25/1
 25/15 25/22 26/4 26/11 26/12 26/13

jurors... [5]  26/17 26/21 27/11 27/19
27/21
jurors' [3]  25/6 25/7 26/2
jury [12]  3/13 3/14 12/10 13/14 15/4
15/8 16/6 18/16 23/16 24/20 29/24
30/15
just [11]  2/22 6/13 8/4 9/13 9/19 22/19
25/9 25/17 27/5 27/18 28/22
justice [7]  3/8 3/22 4/1 6/12 6/17 10/25
13/16

## K

KCRW's [1]  13/4
keep [1]  16/17
KELLI [1]  1/19
Kelly [1]  2/17
Kerry [2]  8/8 8/12
kind [2]  4/16 10/24
kinds [1]  11/21
knew [4]  4/8 10/9 10/11 10/12
know [20]  4/23 6/16 7/4 7/15 7/24 8/2
9/25 10/2 10/20 14/2 20/7 21/10 21/19
22/20 27/9 32/4 32/11 32/14 32/15
32/22
knowing [2]  13/24 21/14
knows [1]  10/15

## L

LA [3]  10/7 13/4 14/16
language [1]  3/9
LASD [3]  13/21 13/24 14/10
later [7]  3/24 4/24 8/21 12/14 14/6 20/1
32/9
law [10]  12/17 15/9 15/14 16/3 18/2
18/10 18/18 18/18 24/25 26/24
lawyers [1]  23/24
laying [1]  32/6
Leah [1]  6/15
least [5]  18/20 26/20 26/21 26/25 29/12
Leavins [2]  8/8 8/9
legitimate [2]  15/9 15/13
LEROY [3]  1/9 2/5 2/12
let [6]  32/2 32/4 32/11 32/14 32/15
32/22
let's [2]  23/15 28/8
level [1]  23/19
LEWIS [3]  1/7 1/11 1/14
lied [1]  4/14
like [3]  22/15 26/11 31/6
likely [3]  23/10 25/16 29/20
limine [1]  31/21
limit [5]  4/18 5/11 5/25 12/25 20/19
limited [3]  3/11 3/12 12/6 14/16
limiting [2]  5/16 30/2
LISA [3]  1/22 34/16 34/17
list [2]  8/14 9/3
litigants [1]  17/13
little [4]  23/15 24/17 31/15 33/1
LLP [3]  1/7 1/11 1/19
look [2]  24/2 33/7
looked [1]  5/4
looking [1]  5/7
Los [10]  1/15 1/23 1/5 1/21 2/1 13/3
16/3 19/17 20/19 20/25
Los Angeles [2]  13/3 16/3
lose [2]  28/4 28/5
lot [1]  31/3
lying [2]  10/16 10/24

## M

made [5]  4/25 9/5 13/23 16/11 33/2
make [4]  21/15 22/12 28/1 31/23
makes [1]  22/4
making [3]  13/16 18/17
many [1]  3/10
Marx [1]  13/25
Marx's [3]  6/15 13/21 14/10
material [2]  7/14 17/8
matter [4]  6/20 6/21 26/20 34/10
may [22]  2/24 9/13 11/17 12/1 16/19
16/21 18/25 19/8 25/9 27/3 28/25 29/8
29/10 29/11 29/13 30/1 30/19 30/21
32/8 32/9 32/13 33/1
maybe [2]  9/5 32/2
me [9]  2/23 6/24 14/4 14/7 20/18 22/12
23/8 27/10 33/1
mean [1]  11/10
means [2]  5/19 21/18
meant [1]  10/21
media [3]  6/25 26/3 29/9
meet [5]  12/16 13/6 13/10 17/24 31/4
meeting [7]  8/15 8/23 8/24 8/24 9/4
9/10 9/25
meets [1]  11/24
memory [1]  22/24
mentioned [2]  12/12 26/22
mezzanine [1]  23/18
might [8]  3/17 3/18 4/14 4/24 22/22
25/25 26/7 26/18
mights [1]  23/1
Miller [1]  5/2
mimicked [1]  3/23
minimum [1]  14/11
mistrial [1]  23/10
mixed [1]  20/22
moment [3]  25/9 30/19 30/21
Monday [4]  31/1 32/4 32/11 32/15
Monica [2]  1/10 1/17
more [6]  3/7 9/5 17/21 25/18 26/2
29/14
Moreover [1]  12/24
MORGAN [3]  1/7 1/11 1/14
most [6]  3/10 15/11 23/10 25/15 31/25
33/3
motion [5]  2/15 6/5 18/20 29/6 31/21
movies [1]  26/3
moving [2]  5/12 21/21
MR [7]  2/13 9/18 22/21 23/4 23/5 25/25
33/10
Mr. [26]  6/14 7/10 7/15 7/20 8/20 8/25
9/14 9/15 9/17 9/23 9/24 10/4 10/8
12/9 12/21 13/5 14/2 14/3 19/5 19/11
19/21 20/6 20/14 21/15 22/8 22/16
Mr. Baca [5]  6/14 7/15 9/23 10/8 14/3
Mr. Faturechi [16]  7/10 7/20 8/20 8/25
9/15 10/4 12/9 12/21 13/5 14/2 19/5
19/11 19/21 20/14 21/15 22/8
Mr. Faturechi's [3]  9/24 20/6 22/16
Mr. Hochman [2]  9/14 9/17
Ms [5]  7/2 7/23 8/5 8/21 13/8
Ms. [1]  7/20
Ms. Sager [1]  7/20
much [1]  32/21
must [3]  15/10 15/11
my [22]  2/19 4/13 5/13 7/13 8/9 8/19
18/20 21/22 22/6 22/22 25/10 25/15
27/3 27/7 27/22 28/12 29/7 29/7 29/11
30/2 31/25 33/2

## N

name [2]  26/7 26/15
names [4]  25/2 25/6 25/8 26/5
narrow [1]  18/8
narrowly [1]  11/8
NATHAN [2]  1/8 2/10
nature [7]  3/15 6/3 10/25 16/9 24/24
26/8 26/23
necessary [3]  18/7 18/9 30/11
need [10]  7/11 7/19 12/10 15/9 15/24
16/1 17/2 19/25 21/9 31/19
neighborhood [1]  23/21
neither [1]  10/17
never [5]  4/21 4/23 26/18 27/12 27/13
New [1]  19/13
news [2]  5/14 11/10
newsman [1]  15/3
newsman's [1]  15/7
next [4]  14/21 24/13 28/6 29/5
next-door [1]  24/13
Ninth [10]  3/2 3/10 3/20 3/23 4/1 15/16
15/21 16/20 17/5 17/19
Ninth Circuit [9]  3/2 3/10 3/23 4/1 15/16
15/21 16/20 17/5 17/19
Ninth Circuit's [1]  3/20
no [11]  1/8 1/22 4/18 6/19 6/20 15/12
16/18 20/5 25/7 28/14 34/17
nobody [1]  9/2
non [2]  2/18 17/6
non-party [2]  2/18 17/6
nonconfidential [1]  16/19
noncumulative [1]  17/10
nondisclosure [1]  16/24
normal [2]  25/1 25/14
normally [1]  26/12
North [4]  1/23 1/4 1/9 1/16
not [57]
nothing [3]  10/5 10/11 12/12
notion [1]  26/3
November [1]  12/20
November 16th [1]  12/20
now [6]  5/15 9/24 21/3 21/13 27/19
28/23
nowhere [1]  16/12
nuisance [1]  18/7
number [5]  2/4 24/4 24/14 26/15 27/24
numbers [5]  24/21 25/2 25/8 26/4 27/7

## O

o0o [1]  2/3
object [1]  22/15
objections [2]  22/12 29/14
obstruct [1]  13/16
obstructed [1]  16/6
obstructing [3]  13/14 18/15
obstruction [6]  6/12 6/17 29/22 30/8
30/10 30/12
obviously [4]  22/20 22/24 25/21 25/23
occasion [1]  25/19
occur [2]  21/24 21/24
occurred [3]  2/23 7/17 7/17
off [2]  16/17 31/17
offer [1]  6/4
offhand [2]  4/16 4/25
office [3]  1/2 2/25 18/4
officer [1]  16/3
official [2]  4/17 18/3
officials [5]  4/21 7/3 13/21 13/24 14/10
Okay [4]  22/10 27/14 28/24 31/18
once [4]  19/1 19/17 24/14 27/18

one [18]   4/8 4/12 4/12 4/12 6/13 6/16
7/11 8/4 9/13 13/19 19/4 19/20 24/6
24/11 25/19 32/2 32/8 33/6
only [9]   3/6 3/25 4/6 5/6 11/3 12/21
17/7 17/13 22/11
oOo [1]   33/13
opening [1]   12/6
opinions [2]   29/12 29/15
opportunity [2]   12/15 23/24
opposed [1]   9/11
opposing [1]   17/2
oppressive [1]   13/10
order [4]   7/9 7/9 7/22 20/11
ordered [1]   21/1
ordering [1]   22/14
orders [1]   19/24
other [16]   3/2 3/10 3/10 3/20 4/2 4/7
8/12 11/19 11/22 11/25 15/16 16/1
22/11 25/25 27/9 28/14
otherwise [1]   22/8
our [4]   9/22 11/3 31/23 32/5
ourselves [1]   31/14
out [17]   6/15 7/19 8/21 19/17 19/17
20/1 20/13 21/7 22/7 22/8 22/17 23/18
23/20 23/23 26/7 29/9 32/14
over [1]   29/1
overcome [2]   17/7 17/14
overt [1]   13/19
own [1]   7/5

**P**

p.m [2]   2/2 33/11
PA [1]   1/8
panel [1]   28/7
papers [4]   2/20 2/21 8/5 9/22
parameters [3]   11/5 11/8 18/22
part [4]   4/12 6/17 16/5 16/14
partial [1]   15/17
partially [1]   31/4
particular [3]   9/4 9/4 26/9
particularly [2]   16/5 29/21
parties [5]   24/7 24/12 24/18 25/5 31/20
parties' [1]   30/18
party [2]   2/18 17/6
pass [2]   28/2 28/9
past [5]   25/21 25/22 25/24 26/2 26/19
Paul [2]   8/8 8/8
people [2]   11/17 23/25
percipient [2]   8/14 9/9
PERCY [1]   1/4
peremptories [1]   27/22
peremptory [7]   24/19 28/2 28/2 28/5
28/6 28/10 28/11
perhaps [2]   2/24 28/17
permission [1]   22/12
perpetrators [1]   4/8
person [2]   28/21 32/23
person's [1]   29/2
phone [1]   10/9
pieces [1]   6/16
pin [2]   10/16 10/19
pins [1]   32/12
place [3]   3/12 28/17 29/13
placed [1]   24/5
Plaintiff [1]   1/7
planned [1]   13/24
planning [1]   23/16
play [1]   32/3
please [1]   2/6

point [8]   8/19 22/24 23/3 23/5 23/9
23/25 26/7 28/10
points [5]   7/21 7/22 8/5 8/21 9/20
policies [1]   7/5
policy [2]   11/4 18/12
poses [1]   26/13
position [5]   12/2 18/24 21/8 21/8 23/9
possible [1]   30/7
potential [1]   30/13
potentially [1]   14/11
Powell [1]   10/25
Powell's [3]   3/8 3/22 4/1
practice [1]   25/15
preclude [2]   11/24 29/6
prefer [1]   19/12
prejudice [3]   29/19 30/13 31/11
preliminary [2]   29/7 30/2
prepared [3]   4/22 8/11 9/9
preparing [1]   2/23
present [5]   2/12 4/23 7/17 21/24 22/15
presenting [2]   8/14 8/17
president [1]   4/7
PRESIDING [1]   1/4
press [2]   4/25 5/6
presume [2]   20/11
presumed [1]   30/6
pretty [1]   22/5
privilege [19]   3/3 4/19 6/2 9/7 9/7 9/11
9/12 11/5 11/6 11/13 11/13 14/23 15/1
15/22 15/24 17/1 17/7 17/14 18/7
privileges [1]   5/7
probably [4]   18/23 21/9 31/1 33/5
probative [1]   14/12
problem [1]   21/12
procedural [1]   13/6
procedure [3]   13/7 14/20 25/1
Procedure 17 [1]   14/20
proceed [4]   20/4 20/9 20/15 20/18
proceed on [1]   20/18
proceeding [1]   19/10
proceedings [8]   1/14 3/13 3/14 3/14 6/6
15/19 33/11 34/10
proceeds [1]   32/7
process [3]   5/6 19/10 23/17
production [1]   12/22
prolong [1]   30/7
promise [1]   16/17
proper [3]   13/8 15/1 15/2
properly [2]   11/22 12/3
prosecution [5]   5/22 7/1 9/16 18/2
18/14
prosecutor [2]   5/8 5/10
prosecutor's [1]   5/5
prospective [4]   23/20 23/23 24/10
24/11
protected [1]   14/21
protection [1]   3/19
protections [1]   15/2
protects [1]   15/18
provide [1]   32/23
public [4]   4/16 5/11 16/8 18/4
publicly [1]   13/1
published [8]   5/13 5/17 6/22 7/14 11/8
11/11 13/2 22/14
purpose [1]   15/14
purposes [1]   12/11
pursuant [1]   34/7
put [5]   5/22 12/2 12/9 20/14 21/21

qualification [1]   23/23
qualified [7]   3/3 4/18 9/7 15/22 24/5
24/10 24/15
qualify [1]   23/19
question [13]   7/13 9/23 10/13 10/18
19/10 19/10 20/4 20/4 20/16 20/16
23/7 28/8 28/12
question-by-question [3]   19/10 20/4
20/16
questionnaire [2]   23/24 24/9
questions [34]   5/18 6/7 10/22 11/12
11/14 11/14 11/17 12/1 12/7 12/18
12/25 14/16 19/9 19/21 19/23 19/23
20/6 20/7 20/8 20/23 21/2 21/3 21/9
21/14 21/23 22/2 22/13 22/21 22/22
23/5 25/4 27/21 28/14 32/1
quotations [1]   5/14
quote [2]   10/18 10/20
quoted [2]   6/23 6/23

**R**

radio [6]   6/23 13/3 14/1 14/17 20/20
20/25
raised [4]   9/20 11/20 26/18 27/5
raising [1]   31/22
rare [1]   7/6
rather [1]   31/17
read [1]   2/20
reading [1]   3/5
ready [1]   12/14
really [1]   27/11
reason [5]   11/2 17/15 23/4 24/22 31/22
reasonable [1]   17/9
reasons [2]   4/9 11/4
rebuttal [1]   30/6
recall [1]   27/4
recognize [1]   3/17
recognized [3]   3/4 16/21 18/6
recollection [2]   27/3 27/7
record [2]   16/17 22/20
reducing [1]   31/11
refer [1]   24/21
referenced [1]   12/13
refuse [1]   23/7
regulations [2]   7/5 34/11
reiterated [1]   4/2
rejected [1]   17/16
relate [1]   6/13
related [5]   5/18 12/25 14/16
relates [1]   4/25
relating [1]   30/13
relevance [1]   13/25
Relevancy [1]   13/11
relevant [7]   14/11 15/5 15/14 17/10
29/17 29/23 32/8
remedy [2]   30/7 30/17
remote [3]   3/25 6/11 10/24
renege [1]   16/17
repeatedly [2]   3/13 17/12
reply [1]   9/13
reported [1]   34/9
reporter [17]   4/15 6/4 6/14 7/16 9/6
10/7 10/10 10/23 12/2 13/1 14/21
15/11 16/10 16/15 17/4 18/1 34/17
reporter's [11]   1/14 3/3 3/24 9/11 14/22
14/25 16/9 16/12 16/20 17/14 19/1
reporters [5]   4/4 4/19 11/17 14/9 17/18
represent [2]   19/11 20/5

**R**

representation [3]  19/22 21/15 22/2
represented [1]  12/24
requested [1]  17/8
require [1]  12/17
required [2]  3/18 5/23
requirements [2]  13/6 14/19
requires [1]  15/23
resolve [2]  21/10 24/2
respect [1]  19/5
respond [2]  6/7 8/1
responding [1]  31/17
response [1]  20/6
result [2]  3/7 21/6
review [1]  23/25
revisit [1]  18/25
right [12]  2/15 12/19 12/20 18/19 23/14
 23/15 28/15 28/22 29/4 29/5 31/18
 32/21
rights [19]  5/5 5/5 5/6 5/7 5/8 13/15
 16/20 18/16 21/16
ROBERT [2]  1/19 2/18
role [1]  14/10
Room [1]  1/23
Rule [5]  13/6 13/9 14/19 30/17 31/16
ruled [1]  23/11
rules [2]  14/14 18/8
ruling [5]  3/11 3/12 5/4 20/4 33/2

**S**

SAGER [6]  1/19 2/17 7/2 7/20 7/23
 8/21
Sager's [2]  8/5 13/8
said [11]  3/24 4/14 5/6 5/10 8/22 8/23
 9/21 10/25 11/9 11/10 27/5
same [4]  3/19 3/21 5/8 5/25
Santa [2]  1/10 1/17
say [10]  9/24 10/4 10/6 10/13 10/21
 10/21 21/6 22/1 25/14 28/8
saying [9]  3/19 6/23 7/13 7/16 10/17
 10/20 12/4 20/17 20/24
says [6]  3/13 10/11 11/1 11/15 21/13
 23/7
schedule [1]  29/3
scope [1]  15/1
screening [1]  24/8
seat [1]  9/17
Section [1]  34/7
see [7]  7/18 19/1 23/25 27/15 32/22
 32/23 33/7
seek [1]  12/22
seeking [1]  17/14
seeks [1]  12/21
seem [1]  27/4
Seems [1]  22/5
selection [1]  23/16
sending [1]  14/10
sense [2]  3/6 22/4
sent [2]  6/15 14/5
separate [1]  26/21
September [2]  10/10 13/2
September 29th [1]  13/2
serious [1]  4/7
seriously [3]  29/18 31/8 31/10
serve [1]  5/8
served [2]  12/20 27/5
serving [1]  24/1
set [1]  15/6
sever [1]  30/8
several [1]  8/21

she [2]  7/2 27/5
she's [1]  7/18
Sheriff [5]  4/14 6/24 8/7 9/4 26/13
Sheriff's [1]  16/4
shield [4]  12/17 15/18 18/2 18/9
Shoen [4]  17/5 17/12 17/19 17/23
should [7]  7/9 11/22 12/3 12/16 20/1
 23/25 32/5
shouldn't [2]  3/19 11/1
show [1]  12/9
showing [1]  17/7
shows [2]  9/15 20/10
side [2]  12/9 28/21
signed [1]  8/12
significant [1]  16/2
significantly [1]  30/7
similar [2]  17/17 31/7
simplify [1]  30/15
simply [3]  5/8 5/13 20/13
since [3]  9/8 14/24 18/10
Sir [1]  23/11
situation [4]  3/17 4/4 4/10 26/8
small [1]  6/25
so [27]  3/17 6/24 7/8 7/19 9/1 9/22
 10/8 10/23 11/16 12/8 18/19 19/14
 19/16 19/25 20/8 21/6 21/10 21/18
 22/1 25/5 26/24 27/18 27/18 29/8
 30/17 31/14 32/8
solves [1]  21/20
some [13]  3/23 7/19 8/23 11/3 13/7
 23/5 25/7 28/16 28/16 29/12 31/2 31/5
 32/9
somebody [2]  28/9 32/12
somehow [2]  26/10 26/13
someone [3]  4/24 8/24 28/7
something [14]  4/24 7/8 12/13 21/7
 22/7 22/8 22/17 23/21 26/17 27/10
 27/15 31/8 31/9 32/14
soon [1]  28/20
sorry [3]  25/23 31/20 32/17
sort [1]  5/11 12/9 20/22
sought [4]  14/17 15/8 15/12 15/13
source [2]  16/11 16/16
sources [1]  17/9
South [1]  1/20
Spar [2]  29/6 29/16
Spar's [1]  29/12
Special [4]  6/15 13/20 13/25 14/10
specific [3]  10/18 14/17 26/14
specifically [1]  9/23
specificity [1]  13/12
split [1]  14/24
Spring [2]  1/23 1/4
stand [5]  7/3 9/15 19/1 20/14 21/21
standard [6]  12/16 13/8 13/9 13/10
 17/24 27/24
standards [1]  18/8
start [3]  23/18 23/20 24/18
started [1]  5/12
state [2]  2/6 18/3
statement [11]  4/12 4/22 4/25 5/15
 6/12 8/22 9/4 13/23 30/9 30/11 33/2
statements [12]  5/17 6/13 13/1 13/16
 14/6 14/9 18/17 31/21 32/1 32/2 33/3
 33/6
states [7]  1/1 1/6 1/2 1/3 14/2 34/8
 34/12
statutory [1]  18/7
stenographically [1]  34/9
Steven [2]  8/8 8/9

sticking [1]  32/12
still [2]  29/8 33/6
stop [1]  32/12
stops [1]  23/6
story [1]  14/3
streamline [1]  30/15
Street [3]  1/23 1/4 1/20
stress [2]  17/13 29/8
stressed [1]  15/21
strike [1]  28/7
submit [1]  12/18
subpoena [8]  2/16 12/21 12/21 13/5
 14/18 15/8 15/12 17/20
subpoenaed [2]  19/6 22/9
subsequent [1]  3/1
substance [1]  10/5
substitute [1]  18/12
such [2]  16/19 30/4
sufficient [2]  24/4 24/14
suggest [1]  21/7
suggests [2]  10/12 11/7
Suite [4]  1/4 1/9 1/16 1/20
Superior [1]  27/5
superseding [2]  13/18 13/22
supplement [1]  33/8
supplemental [1]  12/15
supposed [2]  28/17 28/19
Supreme [4]  5/2 15/17 17/16 18/5
sure [5]  20/8 26/16 28/1 31/23 32/13

**T**

take [6]  2/16 5/3 9/15 24/2 31/19 33/7
taken [2]  13/19 28/17
takes [1]  29/18
talk [7]  4/22 7/2 9/3 23/15 29/9 31/1
 31/14
talking [2]  6/22 7/14
talks [1]  10/10
Tanaka [3]  8/8 8/9 27/4
tangential [1]  6/3
target [1]  5/12
tell [4]  21/23 24/17 26/17 27/11
tentative [4]  18/20 29/7 29/8 29/11
tenuous [3]  3/25 6/11 10/25
terms [3]  21/16 21/20 31/16
test [15]  6/20 6/20 6/21 9/2 15/2 15/6
 15/10 17/5 17/13 17/17 17/19 17/21
 17/22 22/23 22/24
testify [11]  4/9 4/13 4/18 6/6 7/10 7/21
 7/22 8/11 9/9 15/3 15/11
testifying [2]  8/17 14/22
testimony [27]  3/18 3/24 5/11 8/15 8/18
 9/16 9/24 10/25 11/23 12/5 12/6 12/22
 14/1 14/13 14/17 15/7 15/13 15/15
 16/10 16/19 18/23 18/25 20/19 22/22
 23/8 29/6 29/10
tests [1]  15/5
than [4]  3/14 25/18 29/14 31/17
thank [13]  2/17 9/18 12/19 22/18 23/11
 23/12 23/13 23/14 28/13 32/21 32/25
 33/9 33/10
that [211]
that's [30]  3/18 4/2 4/9 7/6 10/1 10/3
 10/12 10/13 11/18 11/18 12/1 12/13
 12/14 18/20 20/21 20/24 21/6 21/12
 21/25 22/9 25/2 25/17 26/14 27/8
 27/17 30/20 31/9 32/16 32/18 32/19
their [8]  9/3 24/19 24/21 25/8 26/7
 26/12 26/15 31/6
theirs [1]  31/5

**T**

them [11]  4/22 4/24 8/11 11/13 21/5
25/14 31/6 32/6 32/7 32/9 33/6
themselves [1]  24/18
then [33]  4/1 4/18 4/25 5/20 9/5 10/19
10/23 11/21 11/22 11/23 12/6 19/15
19/18 20/11 20/15 21/9 21/19 21/25
22/3 22/7 23/8 23/24 24/2 24/4 24/6
24/18 27/22 28/1 28/6 28/9 28/20
30/11 32/7
there [14]  3/19 4/18 6/20 7/18 10/3
15/5 15/9 15/11 16/18 25/25 26/8
28/15 31/18 33/6
there's [7]  2/15 5/15 10/5 10/11 12/12
13/7 20/5
therefore [6]  14/18 15/23 16/15 16/25
17/20 18/19
Thereupon [1]  33/11
these [8]  6/6 7/21 14/1 14/5 20/23
24/23 26/21 26/23
they [32]  3/17 4/7 4/9 4/22 4/25 5/13
5/15 5/17 8/19 8/20 9/2 9/24 10/2
10/12 10/19 10/22 11/5 12/1 12/10
12/11 12/14 19/16 21/23 22/13 26/14
26/18 26/22 27/6 27/21 29/11 30/1
32/7
they'll [1]  4/23
they're [7]  5/16 10/17 11/4 22/13 22/21
26/5 26/11
thing [5]  3/19 7/11 19/20 22/11 29/5
things [3]  5/18 5/23 31/3
think [27]  6/19 6/24 7/11 7/19 9/22
10/24 11/4 19/25 20/22 22/3 23/17
23/20 26/11 27/8 27/12 28/24 28/25
30/25 31/4 31/7 31/9 31/11 31/13
31/14 32/4 32/16 32/18
third [3]  17/4 18/1 27/2
this [49]
those [24]  3/25 5/18 12/10 14/6 21/1
21/5 21/14 22/2 22/23 23/25 24/1 24/2
24/2 24/5 29/15 30/8 30/16 31/21 32/1
32/2 32/3 32/12 33/3 33/8
though [5]  5/10 25/14 26/10
thoughts [4]  30/2 30/18 31/5 31/6
threat [1]  26/14
threaten [1]  10/3
three [5]  6/16 10/8 13/11 15/5 22/23
through [4]  19/10 26/3 26/3 31/14
Thursday [2]  1/16 2/1
ties [2]  24/25 26/24
till [1]  32/9
tilt [1]  9/5
time [11]  14/8 23/19 23/19 23/23 24/5
24/10 24/15 27/2 27/22 31/2 32/5
time-qualification [1]  23/23
time-qualified [3]  24/5 24/10 24/15
time-qualify [1]  23/19
Times [5]  10/7 13/3 14/16 20/20 20/25
TINOS [2]  1/12 2/11
tip [1]  9/10
Title [1]  34/8
today [1]  28/18
together [1]  27/10
told [3]  6/24 14/4 14/7
Tom [2]  8/8 8/12
tomorrow [2]  29/1 32/14
too [1]  21/4
took [1]  29/13
topics [1]  5/19
touch [1]  29/6

tracked [1]  14/6
training [3]  28/7 28/22 32/24
transcript [3]  1/14 34/9 34/11
treated [2]  26/11 26/12
TREMAINE [1]  1/19
trial [14]  2/15 8/17 12/14 12/21 12/22
15/4 15/4 15/15 19/7 27/4 29/11 30/7
30/16 32/7
trials [1]  26/21
tried [1]  30/13
true [3]  25/17 27/8 34/8
try [5]  10/23 12/15 21/7 30/9 30/11
trying [1]  20/13
Tuesday [5]  19/17 20/15 21/19 21/20
22/9
TV [1]  26/3
twice [2]  19/13 20/13
two [8]  4/15 9/19 19/4 24/22 26/20
26/21 32/2 33/6
typical [1]  27/21

**U**

U.S [5]  1/22 2/25 12/8 19/8 34/17
ultimate [1]  3/6
unavailable [1]  17/8
under [14]  14/14 14/22 15/10 21/16
understand [4]  19/7 20/3 27/24 28/15
understanding [7]  7/13 8/9 8/16 8/19
25/15 26/13 27/22
understood [1]  20/18
UNITED [6]  1/1 1/6 1/2 1/3 34/8 34/12
unjustified [1]  16/7
unless [5]  4/22 8/10 11/24 12/17 21/21
unlikely [1]  30/3
unpublished [1]  11/18
unreasonable [1]  13/9
unring [1]  23/8
until [1]  22/21
up [13]  2/16 8/5 9/14 10/22 12/6 20/10
20/22 23/4 26/16 27/10 27/15 31/19
31/23
upon [1]  17/7
urge [3]  5/3 6/4 12/8
urges [1]  18/1
urging [1]  13/7
us [3]  24/17 31/24 32/4
USA [1]  2/5
use [10]  8/19 10/23 13/8 13/9 24/20
25/2 25/2 25/15 26/1 26/25
used [7]  25/21 25/22 25/24 26/19 27/6
27/8 27/9

**V**

versus [1]  2/5
very [14]  2/22 3/11 5/7 6/3 6/25 7/1
8/15 11/8 14/7 16/2 17/16 29/10 29/18
32/21
view [5]  18/21 29/7 29/7 29/12 31/25
violate [1]  9/12
violation [1]  18/18
violent [1]  4/6
virtually [2]  3/2 4/18
visible [1]  4/6
visit [2]  10/11 13/20

**W**

Wacker [1]  1/12
waiting [1]  24/12
want [17]  4/21 5/11 5/15 5/17 8/19 9/15
11/17 12/1 27/10 28/1 28/7 28/24 29/7

29/11 30/25 31/23 33/7
wanted [4]  7/23 8/5 31/23 33/5
wanting [1]  28/16
wants [6]  7/2 8/15 20/12 20/14 29/9
33/4
was [31]  2/23 3/5 3/7 3/11 3/12 4/8
7/17 8/22 8/23 9/23 10/2 10/2 10/5
10/13 12/9 13/20 14/4 15/8 15/12
17/12 17/13 17/19 18/10 20/19 20/19
20/23 21/23 28/12 28/15 28/17 29/5
wasn't [4]  8/24 9/25 12/11 12/12
watching [1]  26/3
Water [2]  1/8 1/15
way [6]  12/3 12/4 20/5 23/17 30/25
31/11
we [52]
we'd [2]  23/9 31/4
we'll [9]  20/15 22/17 24/2 24/9 24/16
29/2 31/1 31/10 32/22
we're [12]  6/21 7/14 21/4 21/25 22/7
23/17 23/20 24/21 26/25 27/20 28/22
33/7
we've [4]  20/8 24/22 26/19 26/20
week [2]  32/9 32/10
weighs [2]  16/10 17/2
weight [2]  29/14 30/4
well [10]  16/1 18/16 20/17 22/25 23/15
26/16 29/2 29/10 31/25 32/11
were [13]  4/5 4/8 4/9 5/13 7/22 10/1
10/2 10/6 10/13 16/13 26/22 28/19
31/22
West [1]  1/12
WESTERN [1]  1/3
what [44]
what's [3]  11/9 11/10 14/2
whatever [4]  5/19 19/12 19/23 20/12
when [18]  2/23 7/17 10/18 11/16 12/11
13/23 14/3 16/5 18/5 19/15 19/16
19/18 21/5 21/24 26/18 26/21 28/25
32/3
where [15]  3/3 3/18 4/4 4/13 7/16
11/16 11/23 16/15 17/19 18/22 21/24
23/9 25/18 26/1 32/6
whether [10]  4/14 4/24 7/20 14/25 15/2
18/7 19/22 20/1 31/9 31/21
which [21]  3/13 3/23 4/1 11/20 12/15
15/5 15/7 15/10 17/5 18/22 19/5 19/7
21/13 22/1 23/19 24/6 24/23 27/23
29/22 30/1 32/8
while [4]  3/17 13/7 16/18 24/12
who [12]  2/12 4/8 7/17 8/24 11/16
21/23 24/1 24/15 24/15 27/5 27/20
29/9
whole [2]  11/25 16/14
why [3]  2/16 26/14 31/22
will [28]  4/19 4/20 7/3 12/25 14/15
18/11 18/25 19/11 19/22 20/15 21/15
22/2 22/8 23/19 24/7 24/11 24/18
24/25 25/6 25/7 25/14 26/11 27/14
27/16 29/24 31/8 32/6 32/7
William [1]  8/8
willing [1]  7/20
wish [3]  2/21 6/9 19/9
without [6]  5/22 11/12 12/6 21/14 30/13
33/4
witness [8]  5/22 9/3 9/9 10/16 12/10
19/9 19/19 20/11
witnesses [2]  4/5 4/20
won't [1]  9/22
words [1]  4/1

## W

work [6]  21/7 22/7 22/7 22/17 23/17
29/2
working [1]  32/13
worms [1]  12/7
would [30]  5/23 6/4 6/21 7/16 7/20 8/14
9/5 9/10 9/24 11/21 11/24 17/24 19/5
19/9 19/9 19/12 19/16 20/7 20/9 20/11
21/6 22/12 30/6 30/8 30/11 30/12
30/15 31/6 31/16 32/12
WRIGHT [1]  1/19
writing [1]  32/14
wrongdoings [1]  4/5
www.lisamariecsr.com [1]  1/24

## Y

year [1]  10/15
years [3]  4/15 4/24 18/10
Yes [2]  6/10 30/22
York [1]  19/13
you [45]
you'll [1]  32/22
you're [6]  10/16 11/11 20/4 25/8 28/10
28/10
your [51]
Your Honor [28]  2/12 2/22 6/19 7/8
7/12 7/22 7/25 8/6 9/13 9/19 19/4
19/20 19/24 20/21 21/22 22/19 23/5
25/5 25/13 27/3 28/12 28/14 28/20
29/3 30/19 30/21 31/13 32/20