# EXHIBIT B

No. 17-50192

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEROY BACA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Central District of California
Honorable Percy Anderson, District Judge Presiding

<u>APPELLANT'S OPENING BRIEF</u>

BENJAMIN L. COLEMAN
COLEMAN & BALOGH LLP
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0420

Attorneys for Appellant Leroy Baca

his rebuttal summation with Rhambo's comments thereby adding to the prejudice, as they were the last arguments that the jurors heard. *Zapata v. Vasquez*, 788 F.3d 1106, 1122-23 (9th Cir. 2015); *United States v. Sanchez*, 659 F.3d 1252, 1261 (9th Cir. 2011); *United States v. Mitchell*, 172 F.3d 1104, 1111 (9th Cir. 1999).

Finally, the prosecution's case was far from overwhelming, as the first jury, which also requested a readback of Rhambo's testimony, RT 2120 (Dec. 12, 2016), deadlocked 11-1 for acquittal. At the first trial, the jury was allowed to hear Mr. Baca's response to Rhambo. These circumstances again demonstrate that the erroneous exclusion of the evidence was not harmless. *Thompson*, 37 F.3d at 454 (error not harmless where defendant allowed to introduce evidence at first trial resulting in hung jury and evidence then excluded at second trial); *see Paguio*, 114 F.3d at 935; *Schuler*, 813 F.2d at 982.

**III. The district court erroneously empaneled an anonymous jury under *United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996) and *United States v. Wecht*, 537 F.3d 222 (3d Cir. 2008), requiring reversal of all counts of conviction.**

### A. Introduction and standard of review

The district court held prior trials where LASD officials were defendants in related cases and did not use an anonymous jury, but, over Mr.

Baca's objection, it used an anonymous jury in his case.[14] The district court reasoned that the case involved a conspiracy of law enforcement officers, Mr. Baca likely had connections to officers with the ability to access jurors' privation information, ER 1-2, and two jurors had expressed apprehension about access to private information in prior trials. ER 332. The order also stated that Mr. Baca was alleged to have interfered with the judicial process, the charges carried potential 5-10 years of imprisonment, and there had been media coverage. ER 2.

The district court erred by empaneling an anonymous jury, particularly under the reasoning in *United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996) and *United States v. Wecht*, 537 F.3d 222 (3d Cir. 2008). This Court has stated that abuse of discretion review applies, *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003), but has not been presented with the argument that an anonymous jury implicates First Amendment concerns thereby making a *de novo* standard more appropriate. *See Wecht*, 537 F.3d at 234. Furthermore, after *Shryock*, an *en banc* panel decided *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009)

---

[14]    At a December 1, 2016 hearing before the first trial, the district court announced its intention to use an anonymous jury, and defense counsel expressed his concerns that the parties would not receive the names of the jurors and it would have a prejudicial effect on the jurors. ER 332-34. The government then filed a request for an anonymous jury, to which Mr. Baca objected. CR 180. Mr. Baca renewed his objection at the beginning of the first trial, ER 328-29, and again before the second trial. ER 293-94.

(*en banc*), which explained that a mixed question of law and fact requiring "judgment about the values that animate legal principles," such as the anonymous jury inquiry, favors more independent appellate review. Under either standard, reversal is required, as the district court made legal errors in its analysis and its application of the anonymous jury standard was illogical and without support in inferences that could be drawn from the facts in the record. *Id*. at 1261-62; *see Taylor v. Maddox*, 366 F.3d 992, 1001 (9ᵗʰ Cir. 2004).

### B. There was error under *Sanchez* and *Wecht*

An anonymous jury is "an unusual measure" that must be supported by "strong" justifications. *Shryock*, 342 F.3d at 971. *Sanchez* and *Wecht* demonstrate that the requisite strong justifications did not exist in this case.

In *Sanchez*, 74 F.3d at 564-65, the district court used an anonymous jury for the trial of an officer who threatened to arrest prostitutes to coerce them to engage in sex acts. The district court relied on "the potential fears of jurors adjudicating the guilt or innocence of a police officer" and stated there was nothing "more frightening to the populous than having a rogue cop on their hands." *Id.* The Fifth Circuit reversed, as nothing showed that the defendant would attempt to harm the jurors, and the "decision erroneously rested on the 'mere allegations or inferences of potential risk.'" *Id.* at 565.

38

In *Wecht*, the Third Circuit reversed a district court's attempt to empanel an anonymous jury for the high-profile corruption trial of Dr. Cyril Wecht, the well-known coroner for Allegheny County, Pennsylvania. The district court reasoned that an anonymous jury would prevent the media from harassing the jurors, but the Third Circuit held that the "prospect that the press might publish background stories about the jurors is not a legally sufficient reason to withhold the jurors' names from the public." *Wecht*, 537 F.3d at 240. The Third Circuit explained that even though the case involved a prominent defendant, the district court's explanation "amount[ed] to the sort of 'conclusory and generic' finding that we have held to be insufficient to overcome the presumption of openness." *Id.* The district court in *Wecht* also reasoned that friends or enemies of the defendant may seek to influence the jurors, but the Third Circuit again found this explanation conclusory and explained that such "reasoning would justify anonymity in virtually every jury trial, whether or not it attracts media attention, since almost all defendants have friends and enemies who might be inclined to influence jurors." *Id.* at 241. The Third Circuit rejected the district court's other similar reasoning as "speculation" and explained that disclosing the names of the jurors actually diminishes the possibility of juror bias or tampering because it enhances the ability to investigate such matters. *Id.* at 241-42.

39

The showing here was as deficient, if not more deficient, than the ones in *Sanchez* and *Wecht*. Unlike *Sanchez*, there was no allegation that Mr. Baca had engaged in any violence against members of the public. Although Mr. Baca had been retired for three years, the district court speculated that he was "likely" to have connections to deputies with the ability to access private information. It was pure speculation that current LASD personnel would seek to help a retired sheriff in such a manner, similar to the speculation in *Wecht*, and the district court did not explain what information could be accessed that private investigators or the government could not access in any case. The fact that perhaps two out of hundreds of potential jurors expressed unspecified concerns at other trials is not cause for an anonymous jury. As *Wecht* commented, if that were the standard, every trial in the land would be by an anonymous jury.

The district court reasoned that Mr. Baca was charged in a conspiracy to obstruct justice that included hiding an informant and intimidating a FBI agent, but the informant was in the custody of the LASD, serving over 400 years for violent crimes, and was isolated for a short time in 2011 after it was determined that a cell phone, with pictures of drugs, had been smuggled into him. The informant was later produced to the FBI, as were hundreds of thousands of documents in response to the federal investigation, and the indictment itself

40

alleged that the brief conspiracy terminated by at least September 2011, six years before the trial. The asserted intimidation of the FBI agent also occurred six years earlier and did not involve any violence; deputies approached the agent and stated that they would seek an arrest warrant for her violation of state law. Mr. Baca immediately informed the U.S. Attorney that no such arrest would be sought.

The relevant standard is whether the defendant participated in a group with the capacity to harm jurors, *Shryock*, 342 F.3d at 971, and nothing in the record supported such a finding. The conspiracy charge did not justify an anonymous jury, as the relevant factor considers whether the defendant was involved with "organized crime," a term covering violent gangs like the Mexican Mafia, not any purported "organized" conspiracy. *Shryock*, 342 F.3d at 971-72. The charges were not for violent crimes, or even civil rights violations, and related to an interview and a short-lived conspiracy occurring six years before the trial, a brief period in Mr. Baca's 50-year career. The civil rights charges in *Sanchez* were far worse, as that defendant was accused of raping five women by using his authority to make arrests to effectuate the sexual assaults.

The district court stated that there was the potential for a lengthy sentence, but the charges were lower level Class C and D felonies, 18 U.S.C. § 3559(a), with Guidelines far below the range of sentences that would justify an

41

anonymous jury. *See Shryock*, 342 F.3d at 972 (sentences of 25 years to life). Indeed, the government had offered Mr. Baca a deal for 0-6 months in custody. The district court's "finding" was thus based on a misunderstanding of the governing standard. Once again, if the penalty range in this case could justify an anonymous jury, then virtually every federal criminal case would be by anonymous jury given the current state of federal sentencing laws and the flexibility given to prosecutors to proliferate charges through multiple counts.

The district court mentioned that the case had attracted publicity, which could lead to harassment of jurors. *Wecht* rejected such a generalized rationale. *Wecht*, 537 F.3d at 240 and n.34. Furthermore, despite several earlier publicized trials in related cases *without* anonymous juries, the district court did not cite a single incident where a juror was harassed by anyone -- the defendants, other LASD personnel, or the press. If an anonymous jury can be employed for the trial of a retired Sheriff on charges that he briefly engaged in non-violent conduct several years earlier, then it can be employed in virtually any case.

Finally, the district court at least erred by failing to disclose the identities of the jurors to counsel, hampering the ability to select a jury. *Sanchez*, 74 F.3d at 565. A "name and address open countless avenues of . . . out-of-court investigation." *Smith v. State of Illinois*, 390 U.S. 129, 131 (1968). With the

42

internet, a name can reveal much more than the limited information disclosed during voir dire, which is not always accurate. *See Warger v. Shauers*, 135 S. Ct. 521 (2014). Disclosing the jurors' identities to counsel could not have resulted in juror intimidation.

## C. The error was structural and otherwise requires reversal

Mr. Baca contends that the error in empaneling an anonymous jury was structural and therefore requires automatic reversal of all counts of conviction. As explained in *Wecht*, 537 F.3d at 234 n.23 and 239, an anonymous jury implicates both the First Amendment right to public access and a defendant's Fifth and Sixth Amendment rights. As a result, it is similar to the right to a public trial, *see Presley v. Georgia*, 558 U.S. 209, 213 (2010); *Waller v. Georgia*, 467 U.S. 39 (1984), which is a structural error that requires automatic reversal. *United States v. Withers*, 638 F.3d 1055, 1063 (9th Cir. 2011). Furthermore, errors related to jury selection are not typically amenable to harmless error analysis. *See Crittenden v. Chappell*, 804 F.3d 998, 1002-03 (9th Cir. 2015); *United States v. Annigoni*, 96 F.3d 1133, 1144-44 (9th Cir. 1996) (*en banc*). Accordingly, this Court should hold that an anonymous jury error requires automatic reversal.

Even if not structural, *Sanchez* supports reversal because the "defendant has a right to a jury of known individuals not just because information such as was

43

redacted here yields valuable clues for purposes of jury selection, but also because the verdict is both personalized and personified when rendered by 12 known fellow citizens." *Sanchez*, 74 F.3d at 565. As in *Sanchez*, the anonymous jury question was not close. Furthermore, the first jury deadlocked 11-1 for *acquittal*, and the second jury deliberated over the course of three days. Thus, the evidence was far from overwhelming, an important factor in the harmless error analysis, *United States v. Leal-Del Carmen*, 697 F.3d 964, 976 (9th Cir. 2012); *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (*en banc*),[15] and defense counsel may have found at least one juror who would have voted for a different result in this close case had he not been hampered in his jury selection. *United States v. Kohring*, 637 F.3d 895, 906 (9th Cir. 2011).

**IV. Under this Court's common law and supervisory powers, the district court erred by refusing Mr. Baca's request for an *Allen* charge and declaring a mistrial at the first trial, thereby requiring dismissal of Counts 1-2; alternatively, retrial on Counts 1-2 violated the Double Jeopardy Clause.**

### A. Introduction and standard of review

Mr. Baca proceeded to a first trial on Counts 1-2 in December of 2016. Closing arguments concluded during the afternoon of the tenth day of trial, and the

---

[15] This Court has also recognized this principle in habeas corpus cases, where the defendant has the burden of proving prejudice under a more difficult standard. *Kennedy v. Lockyer*, 379 F.3d 1041, 1056 and n.18 (9th Cir. 2004); *see Wharton v. Chappell*, 765 F.3d 953, 978 (9th Cir. 2014).

No. 17-50192

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LEROY BACA,

*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 16-66-PA*

## GOVERNMENT'S ANSWERING BRIEF

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
Assistant United States Attorney
Criminal Appeals Section

1000 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-3898
Email: bram.alden@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

that defendant made false statements to the FBI—a charge not even prosecuted during the first trial. As explained in Part III.B.4 & n.2, *supra*, the government made multiple other changes at the second trial and introduced substantial evidence of defendant's guilt. On the record as a whole, any error was harmless, *see Torres*, 794 F.3d at 1063-64, particularly when amplified by the plain-error standard.

## C.  The District Court Did Not Prejudicially Abuse Its Discretion by Withholding Juror Names

The district court empaneled a jury using a procedure in which jurors were identified by number rather than name. (ER 332.) Information about jurors was not otherwise limited: all prospective jurors filled out a questionnaire and were subject to voir dire. (*Id.*) The court explained before defendant's first trial that juror names would be withheld because "at least two" jurors in "at least two" of the trials of defendant's co-conspirators expressed a "fear of intimidation" based on "the nature of the[] charges" and the "ties to law enforcement." (ER 334.) Before the second trial, the court issued written findings supporting its decision to withhold juror names. (CR 350, ER 1-2.)

To safeguard against any prejudice, the district court instructed all potential jurors that its "standard practice is not to use juror names"

60

but to instead identify jurors based on the last five digits of their juror badge numbers. (GER 2-4.) The court advised that in the "age of social media," it used numbers "to protect jury privacy, to protect the integrity of the system and to ensure that both sides receive a fair trial." (GER 3-4.) This procedure, the court admonished, "has nothing to do with the issues in this case and has nothing to do with the guilt or innocence of the defendant." (*Id.*)

### 1. *Standard of Review*

The decision "to empanel an anonymous jury is entitled to deference and is subject to abuse-of-discretion review." *United States v. Shryock*, 342 F.3d 948, 970-71 (9th Cir. 2003); *United States v. Thornton*, 1 F.3d 149, 154 (3d Cir. 1993) (appellate court "must be 'particularly deferential' to the district court's 'substantial discretion' to empanel an anonymous jury").

### 2. *The District Court's Findings Justified Withholding Juror Names*

An anonymous jury is permissible so long as "(1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of

infringement upon the fundamental rights of the accused." *Shryock*,

342 F.3d at 971. The court "should make its decision based on the

totality of the circumstances," including:

> (1) the defendants' involvement with organized crime; (2) the
> defendants' participation in a group with the capacity to
> harm jurors; (3) the defendants' past attempts to interfere
> with the judicial process or witnesses; (4) the potential that
> the defendants will suffer a lengthy incarceration if
> convicted; and (5) extensive publicity that could enhance the
> possibility that jurors' names would become public and
> expose them to intimidation and harassment.

*Id.* The list is "neither exclusive nor dispositive." *Id.*

The district court found that all of the *Shryock* factors, and others,

supported an anonymous jury. (ER 1-2.) Defendant was "alleged to

have engaged in an organized criminal conspiracy in which [he] had the

ultimate power and decision-making authority"; "defendant [was]

extremely likely to have present connections to law-enforcement officers

with the ability to access jurors' private information"; jurors had

articulated safety concerns at two co-conspirators' trials; defendant

allegedly "interfered with the judicial process and witnesses by hiding a

federal informant, disobeying a federal writ for testimony, tampering

with witnesses, and intimidating federal officers"; if convicted,

defendant would be exposed to "a lengthy period of incarceration"; and

defendant's case had "attracted publicity" and was likely to be closely followed by the media, which enhanced the risk of juror "intimidation and harassment." (*Id.*) The court also found that the anonymous jury would protect defendant's right to a fair trial and the integrity of the judicial process and would "ensure that the jurors [were] not exposed to the litigation history of the case." (ER 2.)

Under abuse-of-discretion review, defendant must establish that the district court's findings were clearly erroneous, i.e., "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263. In evaluating those findings, this Court considers both "evidence available at the time the district court empaneled the anonymous jury, and all relevant evidence introduced at trial." *Shryock*, 342 F.3d at 971. Defendant makes no argument that the district court clearly erred, and no such argument would be viable.

Defendant takes issue with the finding that he was likely to have connections to officers with the ability to access jurors' private information (AOB 40), but that finding was eminently reasonable. Defendant spent decades working for LASD, served as sheriff for 15

63

years, and had commanded 18,000 employees.  (GER 8.)  His
subordinates obstructed justice at his direction, including by conducting
surveillance on FBI agents, following Agent Marx to her home, and
using a GPS tracker to monitor their fellow deputy.  (GER 367-70.)
That law-enforcement officers would have an enhanced capacity to
track jurors and that defendant was likely to have retained LASD
connections was plausible, logical, and supported by the record and
common sense.  The court's concern was magnified by jurors' prior
reports of privacy and safety fears during co-defendants' trials.  (ER
1.)[11]

Defendant also appears to contest the district court's findings that
he was charged with having overseen an organized criminal conspiracy
that obstructed justice and interfered with the judicial process.  (*See* ER
1-2; AOB 40.)  But those findings were a straightforward reading of the

---

[11] Defendant claims that only two prior *jurors* expressed fears
(AOB 37, 40), but the district court's finding was that fears were
expressed at two prior *trials* (ER 1, 334).  The court did not say how
many jurors raised concerns.  Defendant also claims that juror concerns
were "unspecified," (AOB 40), but the court made clear that concerns
were related to "safety" and "defendant's co-conspirators' ability to
access [jurors'] private information" (ER 1).

indictment (ER 427-41), and the accuracy of the charges was confirmed at trial: defendant, whose department was plagued by allegations of violent civil-rights abuses, conspired to hide an informant from the FBI, ignored a court order to produce the informant to the grand jury, impeded the cooperation of an LASD deputy, threatened to arrest an FBI agent, and demanded that the federal government drop its investigation or prepare to "gun up" for battle. That defendant and his 18,000 subordinates operated under color of law does not undercut the conclusion that he "participated in a group with the capacity to harm jurors." (AOB 41.)

The finding that defendant faced a potentially "lengthy period of incarceration" (ER 2) was also correct. Defendant's aggregate statutory maximum sentence was 20 years, and his guidelines range was 41-51 months. 18 U.S.C. §§ 371, 1001, 1503(b)(3). (GER 655.)[12] There is no threshold sentence necessary to permit the use of an anonymous jury;

---

[12] Although he attempts to downplay the severity of his crimes, defendant operated as if he were above the law, committing "a gross abuse of public trust" that "undermined public confidences in law enforcement generally." (GER 655-62.) *See Foley v. Connelie*, 435 U.S. 291, 299 (1978) ("Clearly the exercise of police authority calls for a very high degree of judgment and discretion, the abuse or misuse of which

the "potential" for "lengthy incarceration" is merely one of the "neither exclusive nor dispositive" factors. *Shryock*, 342 F.3d at 971. Thus, the district court did not "misunderstand[] ... the governing standard" (AOB 42), let alone clearly err.

The significant media attention commanded by this case (ER 2) further justified the use of an anonymous jury. *Shyrock*, 342 F.3d at 971. Whether or not jurors were harassed at the trials of defendant's subordinates (AOB 42), the court plausibly found that publicity surrounding the trial of the man at the very top of the conspiracy enhanced "the *possibility*" of juror harassment and intimidation. *Id.* (emphasis added). That a "'name and address open countless avenues of ... investigation'" (AOB 42 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968))—a proposition exponentially truer in the internet age—is precisely the point. *Smith* recognized that defendants may be entitled to names and addresses of *government witnesses* for cross-examination.

---

can have serious impact on individuals."); *United States v. Castro-Ponce*, 770 F.3d 819, 823 (9th Cir. 2014) ("Obstruction of justice is a serious charge[.]").

390 U.S. at 130-31.  Anonymous juries safeguard *jurors* from comparable investigation.

The court also "took reasonable precautions" to ensure that defendant was not prejudiced by use of an anonymous jury.  *Shryock*, 342 F.3d at 972.  Just as in *Shryock*, the court "instructed the jury that the reason for their anonymity was to protect their privacy," "that the use of anonymous juries was commonplace," and that "the reasons for the use of such a jury here had nothing to do with [defendant's] guilt or innocence."  *Id.* at 972-73.  (GER 2-4.)  Indeed, the court here went further, telling jurors that numerical identification was its "standard practice" and would "protect the integrity of the system" and "ensure that both sides receive a fair trial."  (*Id.*)

The two out-of-circuit cases defendant cites do not advance his position.  (AOB 37 (citing *United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996) and *United States v. Wecht*, 537 F.3d 222 (3d Cir. 2008).)  Under plain-error review, defendant's reliance on out-of-circuit authorities reveals the emptiness of his claim.  *See United States v. Liew*, 856 F.3d 585, 596 (9th Cir. 2017) (plain error requires "clear or controlling authority").  Moreover, defendant's precedents are readily

distinguishable. In *Sanchez*, the defendant was a "renegade policeman" who acted alone; there was no organized conspiracy, "no evidence that [the defendant] had attempted to interfere with the judicial process or witnesses," and "no indication that jurors in th[e] case would be subjected to … extensive publicity." 74 F.3d at 563, 565. In *Wecht*, a 2-1 panel majority held that media intervenors had a First Amendment right[13] to juror names where a county coroner was indicted for "us[ing] his public office … for private financial gain"; the defendant was not alleged to have participated in a criminal conspiracy; there was nothing "unusual about [the] case"; and the district court's decision was based principally on "assertions that [the defendant] offered in *opposition* to jury anonymity." 537 F.3d at 224, 240-42.

Here, in a case that attracted substantial publicity, defendant was one of the nation's most powerful law-enforcement officers when he directed a conspiracy to obstruct justice. "An obstruction of justice

---

[13] To the extent defendant suggests that *he* had a First Amendment right to juror names (*see* AOB 37), that unpreserved claim is reviewed for plain error, if at all, *see United States v. Mak*, 683 F.3d 1126, 1133 (9th Cir. 2012), and is not supported by *Wecht*'s recognition that *media-intervenors* may have such a right, 537 F.3d at 233.

charge, particularly one involving jury tampering, has always been a crucial factor" supporting the use of an anonymous jury, *United States v. Vario*, 943 F.2d 236, 240 (2d Cir. 1991), and courts have upheld the use of anonymous juries in similar and less compelling circumstances than those here, *see, e.g.*, *United States v. Brown*, 303 F.3d 582, 601-03 (5th Cir. 2002) (state insurance commissioner convicted of making false statements to the FBI in connection with public-corruption scheme); *United States v. Dakota*, 197 F.3d 821, 827 (6th Cir. 1999) (defendants charged with paying and receiving kickbacks).  Withholding juror names was well within the district court's discretion.

### 3.    *Withholding Juror Names Was Harmless*

Even where a district court errs by empaneling an anonymous jury, reversal requires a showing of prejudice.  *United States v. White*, 698 F.3d 1005, 1017 (7th Cir. 2012).  None of the structural-error cases defendant cites (AOB 43) involved anonymous juries, and no case holds that the improper selection of an anonymous jury falls into the "highly exceptional category" of structural errors, *United States v. Davila*, 133 S. Ct. 2139, 2149 (2013).  The alleged error here was harmless in light of the substantial evidence of defendant's guilt and the district court's

instructions to the jury regarding the use of juror numbers.  That the first jury deadlocked 11-1 in favor of acquittal (AOB 44) confirms harmlessness, because the first jury was also selected anonymously (ER 328-29).

## D.    The District Court Did Not Abuse Its Discretion by Declaring a Mistrial When the First Jury Was Deadlocked

Defendant's first trial ended with a hung jury, following two days of jury selection, eight days of evidence and argument, and four days of deliberations.  (ER 316-17, 547; CR 192, 194, 206, 208, 209, 210, 211; GER 861-95.)  Before he was retried, defendant unsuccessfully moved to dismiss Counts One and Two on double-jeopardy grounds.  (ER 288-91.)

The mistrial was precipitated by a note from Juror No. 12 on the afternoon of the fourth day of deliberations.  The juror requested to meet with the court "regarding an issue in the deliberation room."  (ER 519.)  With both parties present, the court consulted with the juror, admonishing her not to reveal "how the jury stands[,] numerically or otherwise."  (ER 519-522.)  Despite that admonishment, Juror No. 12 claimed that "one specific juror" was not following the jury instructions because "he admits that there's doubt and yet is deciding one way," and

No. 17-50192

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEROY BACA,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Central District of California
Honorable Percy Anderson, District Judge Presiding

APPELLANT'S REPLY BRIEF

BENJAMIN L. COLEMAN
COLEMAN & BALOGH LLP
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0420

Attorneys for Appellant Leroy Baca

the jury in Mr. Baca's case returned a guilty verdict immediately after hearing the readback of Rhambo's testimony. The combination of these factors demonstrates prejudice under any standard. In sum, this Court should reject the government's claim of harmless error after it fought so hard to exclude the evidence. *Leal-Del Carmen*, 697 F.3d at 973-74 ("The Assistant United States Attorney must have believed the [statements erroneously excluded based on hearsay] made a difference, else he wouldn't have worked so hard to keep the jurors from hearing them.").

### III. The district court erroneously empaneled an anonymous jury under *United States v. Sanchez*, 74 F.3d 562 (5th Cir. 1996) and *United States v. Wecht*, 537 F.3d 222 (3d Cir. 2008), requiring reversal of all counts of conviction.

The government erroneously asserts that the district court issued written findings supporting its decision to use an anonymous jury before the second trial. GAB 60. The district court did not issue written findings until March 26, 2017, *after* the second trial had concluded. ER 1-2; CR 350. The written findings were not simply post-hoc, they were flawed.

The government concedes that Mr. Baca's claim was generally preserved (with one exception discussed later) and urges abuse of discretion review. GAB 61. The government, however, does not address *Hinkson*, which

16

explained that a mixed question of law and fact requiring "judgment about the values that animate legal principles" favors independent review, and such a description fits the anonymous jury inquiry, particularly because it "implicate[s] constitutional rights." *Hinkson*, 585 F.3d at 1260.

Even under traditional abuse of discretion review, reversal is required. The government attempts to shift the standard to clear error and asserts Mr. Baca has not argued that the district court clearly erred. GAB 63. However, Mr. Baca has contended that the district court made both legal errors at the first *de novo* prong of the abuse of discretion test, *Hinkson*, 585 F.3d at 1261-62, and illogical and unsupported inferences at the second prong of the test. *Id.* at 1263. The government also ignores Mr. Baca's citation to *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), which explains that supposed fact-finding can amount to clear error if it is infected with legal mistakes, particularly when the lower court makes purported findings without conducting an evidentiary hearing, as was the case here.

On the merits, the government fails to offer a developed response to Mr. Baca's contention that the district court should have at least disclosed the jurors' identities to the attorneys so they could perform jury selection. *See United States v. Barragan*, 871 F.3d 689, 712 (9th Cir. 2017) (using anonymous jury in

17

Mexican Mafia case but disclosing jurors' identities to the attorneys "in advance to do background checks, without divulging those names to their clients").[7] For this reason alone, there was error, as there could be no possible fear of juror intimidation by the attorneys. The government argues that anonymous juries safeguard jurors from investigation, GAB 66-67, but, even in the most dangerous cases, Congress has respected a defendant's right to investigate prospective jurors. *See* 18 U.S.C. § 3432 (requiring names and addresses of veniremen to be provided at least three days *before* the commencement of a capital trial). The government does not explain why shielding jurors from investigation "in the internet age . . . is precisely the point." GAB 66. The alleged privacy right of a juror to prohibit a defendant and even his attorney from viewing information on the internet that the entire world can see does not outweigh long-established jury-trial rights in this context.[8]

_____

[7]     The government relies on *United States v. Brown*, 303 F.3d 582, 602 (5th Cir. 2002), but the district court in that case allowed "extensive voir dire" and used "an exhaustive 42-page juror questionnaire." Here, the district court did not allow extensive, if any, attorney-conducted voir dire, and it appears that the only questionnaire was a standard one limited to hardship excuses. RT 5 (Feb. 22, 2017, Volume 1).

[8]     Speaking of the internet, the government does not logically explain why using an anonymous jury would "ensure that the jurors were not exposed to the litigation history of the case." GAB 63. A juror, whether named or anonymous, could find out about the litigation history with a few taps of his

18

The government repeats the district court's rationale that Mr. Baca was charged with an "organized criminal conspiracy," GAB 64, but never directly responds to his argument that this was "legal" error because the relevant factor is whether the defendant was involved with "organized crime," a term covering violent gangs like the Mexican Mafia. *United States v. Shryock*, 342 F.3d 948, 971-72 (9th Cir. 2003). Even if "organized crime" means any conspiracy, "'something more' than the organized-crime label is required in order to justify juror anonymity." *United States v. Mansoori*, 304 F.3d 635, 651 (7th Cir. 2002).

In *Mansoori*, the Seventh Circuit held that the district court abused its discretion in empaneling an anonymous jury in a drug case even though it involved "a large-scale, gang-related operation with ready access to firearms . . . ." *Id.* at 651. The Seventh Circuit explained: "True, the defendants may have had the ability to intimidate jurors through associates who were not incarcerated, but that is true of many defendants. What demonstrates the need for jury protection is not simply the means of intimidation, but some evidence indicating that intimidation is *likely*. No such evidence is presented here. Nor is there evidence that the defendants had engaged in a pattern of violence unusual enough to cause

phone. The only thing that anonymity does is frustrate efforts to investigate such juror taint. *United States v. Wecht*, 537 F.3d 222, 241-42 (3d Cir. 2008).

19

jurors to fear for their safety." *Id.* (emphasis added) (citations omitted).  The government has not identified any violence, let alone a pattern of unusual violence, and does not even mention a single fact since the time of the mere one-month period of activity way back in 2011 that could possibly demonstrate the *likelihood* of juror intimidation.[9]

The government argues it was reasonable to infer that Mr. Baca, although retired for three years, maintained connections to officers who could access jurors' private information.  GAB 63.  The government has still failed to explain what "private information" could be accessed by officers that could not be accessed by any private investigator.  Straining reason, the government claims officers could "track" jurors with GPS monitoring, but it does not explain what possible benefit Mr. Baca could have obtained by such efforts, nor has it identified a single officer who would have been willing to do so.  GAB 64.

The government can only speculate about imaginary officers, not coconspirators, because the latter were in custody or had been offered substantial

---

[9]     In addition to ignoring the dated nature of the allegations and the responsiveness to the federal investigation in the ensuing years, the government spins various facts without providing the context.  For example, the government mentions that Mr. Baca told the FBI to prepare to "gun up" for battle, GAB 65, but omits that, despite this mere hyperbole, all parties left the meeting shaking hands and looking forward to future cooperation.  RT 2189.

20

benefits to testify for the government. Putting aside the speculative nature of these imaginary officers, the government merely argues it was reasonable to infer that Mr. Baca still had connections to them and they had the ability to investigate jurors, but it does not logically establish or even argue the needed connection between these two purported facts – whether officers were *likely* to do so. *Mansoori*, 304 F.3d at 651; *United States v. Sanchez*, 74 F.3d 562, 565 (5th Cir. 1996). In any event, the relevant factor considers whether these imaginary officers were likely "to harm jurors[,]" *Shryock*, 342 F.3d at 971, not investigate them, and the government does not even make such an argument. There was not a hint of juror intimidation in prior related trials without anonymous juries.

The government maintains that jurors in the prior trials expressed "privacy and safety fears" and disputes a mere two had done so. GAB 64 and n.11. The district court specifically stated "two separate jurors[,]" ER 334, and the problem is that it did not provide specifics about these jurors and what they exactly said, making it impossible for this Court to credit this rationale on this record. *Wecht*, 537 F.3d at 240. Perhaps these jurors wanted to get out of jury duty, or had some beef with law enforcement, or simply raised a tentative concern that was easily allayed with a response from the judge. And even if two (or three or four) out of hundreds of potential jurors expressed a concern, that is not cause

21

for an anonymous jury. In virtually every trial, a handful of potential jurors may fear being contacted by a party, or his or her associates. *Id.* at 241.

The government doubles-down on the district court's rationale that Mr. Baca was facing lengthy incarceration, GAB 65, which was an erroneous legal interpretation of this factor. *Shryock*, 342 F.3d at 971-72. The lower-level felonies in this case, with a relatively average if not light guidelines range, are not the type of penalties that would justify an anonymous jury, as they are "hardly unusual" and would mean that this factor weighs in favor of an anonymous jury in virtually every case. *Mansoori*, 304 F.3d at 651. Ironically, the government touts the "aggregate statutory maximum sentence" of 20 years, GAB 65, which is hardly unusual for a federal case, but later argues that it is "misleading" to combine statutory maximum penalties because there is no "realistic possibility" a defendant would receive such an aggregate sentence. GAB 86, 88.

As for the "media attention" given to the case, GAB 66, the government has no real response to *Wecht*, 537 F.3d at 240 and n.34, which rejected a similar "conclusory and generic" reliance on publicity. "The participation of jurors 'in publicized trials may sometimes force them into the limelight against their wishes,' but '[courts] cannot accept the mere generalized privacy concerns of jurors' as a sufficient reason to conceal their identities in

22

every high-profile case." *Id.* (citation omitted). The government attempts to limit *Wecht* as purely a First Amendment case and claims Mr. Baca has no such right, GAB 67-68, but First Amendment and Sixth Amendment protections are coextensive in this context. *See Presley v. Georgia*, 558 U.S. 209, 212-13 (2010) (public trial right during jury voir dire).[10]

Finally, this Court should reject the government's harmless-error contention. The government asserts that "no case" holds the error is structural, but it cites "no case" that explicitly addresses the issue. GAB 69. The government has no response to Mr. Baca's contention that this error is akin to public trial and jury selection errors that are deemed structural or are otherwise not amenable to harmless error analysis. In any event, the error was not harmless. The district court's instructions, GAB 69-70, did not address Mr. Baca's ability to select a jury or restore his right to a personalized verdict by "known fellow citizens." *Sanchez*, 74 F.3d at 565. The government claims it presented "substantial evidence" of

---

[10]     The government simultaneously contends that First Amendment issues should be reviewed for plain error. GAB 68 n.13. However, "it is claims that are deemed waived or forfeited, not arguments." *Pallares-Galan*, 359 F.3d at 1095; *see United States v. Guzman-Padilla*, 573 F.3d 865, 877 n.1 (9th Cir. 2009). Mr. Baca's reliance on *Wecht* is simply further argument in support of his consistent claim that it was error to use an anonymous jury. Consideration of the First Amendment interests is a legal question, and given Mr. Baca's objections in the district court, the government will not suffer prejudice if this Court considers those interests when deciding this claim. *See Flores-Montano*, 424 F.3d at 1047.

23

guilt, GAB 69, but Mr. Baca was nearly acquitted at the first trial and the jury engaged in extensive deliberations at the second trial. *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (*en banc*). The government argues that the near acquittal actually demonstrates the error was harmless. GAB 70. The fact that the government's case was so weak that Mr. Baca was almost able to overcome an anonymous jury and win the first trial does not support the government's claim of harmless error. *See United States v. Kallin*, 50 F.3d 689, 695 (9th Cir. 1995).

**IV. Under this Court's common law and supervisory powers, the district court erred by refusing Mr. Baca's request for an *Allen* charge and declaring a mistrial at the first trial, thereby requiring dismissal of Counts 1-2; alternatively, retrial on Counts 1-2 violated the Double Jeopardy Clause.**

The government begins with double jeopardy rather than supervisory powers. This Court, however, should "avoid constitutional questions when an alternative basis for disposing of the case presents itself." *United States v. Sandoval-Lopez*, 122 F.3d 797, 802 n.9 (9th Cir. 1997) (avoiding double jeopardy question by granting relief on alternative basis). Thus, this Court should start with supervisory powers before proceeding to double jeopardy.

The government does not dispute that a district court's rulings regarding jury instructions need not rise to a constitutional violation to establish

24